**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CLS BANK INTERNATIONAL,<br><br>Plaintiff,<br><br>v.<br><br>ALICE CORPORATION PTY. LTD.,<br><br>Defendant. | Case No. 07-CV-00974-RMC |
| ALICE CORPORATION PTY. LTD.,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>CLS BANK INTERNATIONAL,<br><br>Counterclaim-Defendant,<br><br>and<br><br>CLS SERVICES LTD.,<br><br>Counterclaim-Defendant. | |

**ALICE CORPORATION PTY. LTD.'S REPLY MEMORANDUM**
**IN FURTHER SUPPORT OF ITS MOTION TO DISMISS COUNT III**

Defendant/Counterclaim Plaintiff Alice Corporation Pty. Ltd. ("Alice"), by and through counsel, respectfully submits this Reply Memorandum in further support of its Motion to Dismiss Count III of the Complaint filed by CLS Bank International ("CLS Bank"). Nothing in CLS Bank's opposition changes its failure to plead inequitable conduct with the particularity required by Federal Rule of Civil Procedure 9(b). The allegation contained in Paragraph 32 of the Complaint that Alice withheld material prior art is deficient and the detail referenced in CLS

Bank's opposition cannot save its original pleading. As for the allegations in Paragraph 33, CLS Bank claims no ability to replead the hopelessly vague allegation that Alice failed to disclose the true inventor of the subject matter of its amended claims with the specificity required by Rule 9(b). And CLS Bank's reliance on its bare allegation that Alice did not invent the subject matter of the amendment cannot save its deficient pleading. Indeed, the only factual basis for the allegation contained in Paragraph 33—that Alice amended its patent claims based on information that it learned about the CLS System—fails to state a claim. Count III of CLS Bank's Complaint must be dismissed.

## ARGUMENT

### I. Paragraph 32 of the Complaint Cannot Support a Claim of Inequitable Conduct Based on a Failure to Disclose Material Prior Art.

CLS Bank's allegation that "Alice and/or the inventor failed to disclose material prior art to the U.S. Patent & Trademark Office ("PTO") . . . including but not limited to material information known to them respecting the Swiss Interbank Clearing (SIC) system" cannot meet the heightened pleading requirement of Rule 9(b) applicable to claims of inequitable conduct.[1] (Compl. ¶ 32.). Its reference to the SIC system is both too general and too qualified to meet the higher standard of Rule 9(b).

CLS Bank argues that Paragraph 32 discloses the nature of the prior art withheld, the operative time and place of the failure to disclose, and the perpetrator. Opp. at 4. Thus, CLS

---

1 CLS Bank states that "it is not yet established whether Rule 9(b) applies to inequitable conduct claims." Pl.'s Mem. of P&A in Opp. to Def.'s Mot. to Dismiss Count III of the Compl. ("Opp.") at 3 n.4. CLS Bank cites no case that has declined to apply Rule 9(b) to an inequitable claim, and the Federal Circuit itself has stated, "We have held that 'inequitable conduct, while a broader concept than fraud, must be pled with particularity.'" *Cent. Admixture Pharm. Servs. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347 (Fed. Cir. 2007) (quoting *Ferguson Beauregard/Logic Controls, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003)). Clearly, Rule 9(b)'s heightened pleading requirement applies to claims of inequitable conduct.

Bank asserts, Alice "knows very well what is at issue" and "need not search the world to find the SIC prior art that it failed to disclose." *Id.* at 5–6. CLS Bank places far too much weight on far too general a reference. Its allegation that Alice failed to disclose material prior art is plainly deficient because it: (1) makes only a general reference to the SIC system, rather than to a particular piece of prior art; and (2) is qualified by the language "including, but not limited to," such that Alice cannot know what other, undisclosed prior art CLS Bank purports to base its claim of inequitable conduct on.

Contrary to CLS Bank's assertion, *Stowe Woodward, LLC v. Sensor Products, Inc.*, 230 F.R.D. 463, 467–68 (W.D. Va. 2005) and *Intex Recreation Corp. v. Team Worldwide Corp.*, 390 F. Supp. 2d 21, 23-24 (D.D.C. 2005) are directly on point. In *Stowe Woodward*, the defendant alleged inequitable conduct based on the failure to disclose "US Patent No. 5,583,303, actions taken by foreign patent offices, and/or industry publications or products, including at least those of Interlink." 230 F.R.D. at 466. Despite the specific identification of the '303 patent and the reference to the "Interlink" product, the court found that the allegation was "too vague to provide meaningful guidance to [plaintiff] in formulating its response" and dismissed the claim of inequitable conduct. *Id.* at 470. Likewise, in *Intex*, "[t]he Amended Complaint allege[d] [defendant] 'willfully or with gross negligence during the prosecution of the application that became the '469 Patent failed to disclose to the [PTO] material prior art, including United States Patent No. 5,367,726 . . . which misled the PTO." 390 F. Supp. 2d at 21. The court held that plaintiff's allegation of inequitable conduct was only sufficient to the extent that it referenced a *particular* prior art, i.e. the '726 patent. *Id.* at 21, n.3. Here, Paragraph 32 of CLS Bank's Complaint is even more general than the allegations made in either *Stowe Woodward* or *Intex*—it simply refers to "information known to them respecting the Swiss Interbank Clearing (SIC)

system." Alice has no possible way to know to which particular "information" CLS Bank is referring. CLS Bank's failure to reference any particular prior art requires that its claim of inequitable conduct be dismissed.

Nor are *Stowe Woodward* and *Intex* isolated cases. Vague allegations similar to CLS Bank's are routinely dismissed as inadequate to support a claim of inequitable conduct. *See Heraeus Electro-Nite Co. v. Midwest Instrument Co., Inc.*, No. 06-355, 2006 U.S. Dist. LEXIS 76452, at *17 (E.D. Pa. Oct. 18, 2006) (allegations that patentee engaged in "inequitable conduct in failing to disclose the best mode of practicing the invention as contemplated by the inventor" and that patentee engaged in inequitable conduct through its "own commercial practices" insufficient); *Magari, L.L.C. v. Crane Co.*, No. 1:03-CV-01255-JDT-TWL, 2004 U.S. Dist. LEXIS 24283, at *36 (S.D. Ind. Sept. 29, 2004) (finding too vague allegation that patentee "withheld material prior art in its possession including . . . prior art concerning Watt's Hydroguard(R) 430 valves"); *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, No. 00-C-2447, 2003 U.S. Dist. LEXIS 11487, at *5 (N.D. Ill. July 3, 2003) (allegation that "inventors . . . failed to disclose to the [PTO] various 'on-sale' and 'public use' activities involving the subject matter claimed" insufficient); *Point DX Inc. v. Voxar Ltd.*, No. 1:01-CV-01130, 2002 U.S. Dist. LEXIS 19169, at *5–*6 (M.D.N.C. Sept. 20, 2002) (allegation that patent application was missing prior art "in the areas of volume rendering, three-dimensional walk-through animation of human organs, 'fly-through, and center line calculation" insufficient). CLS Bank's vague reference to the SIC system is plainly inadequate.

CLS Bank now appears to set out the basis for its allegation that Alice engaged in inequitable conduct by failing to disclose material prior art, referencing Chapter 9 of a book entitled *Payment Systems in Eleven Developed Countries* (3d ed. 1989) that discusses the SIC

system "in detail." Opp. at 5. If CLS Bank believes the failure to disclose this chapter to the PTO supports a claim of inequitable conduct, it should have alleged this in its Complaint. CLS Bank's belated reference to this prior art in opposition to Alice's motion cannot save Count III from dismissal.

## II. Paragraph 33 of the Complaint Cannot Support a Claim of Inequitable Conduct Based on a Failure to Disclose Inventorship.

Paragraph 33 of the Complaint does not support CLS Bank's claim of inequitable conduct based on a failure to disclose inventorship. The only fact alleged in Paragraph 33 is that Alice amended its claims based on information it learned about the CLS System.[2] As explained in Alice's Motion to Dismiss, the law permits this behavior. *See Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988). CLS Bank now appears to argue that its allegation that Alice did not invent the subject matter of those amended claims supports an inequitable conduct claim. CLS Bank's theory remains both inadequate as a matter of pleading and legally implausible.

First, CLS Bank's claim of inequitable conduct alleged in Paragraph 33 is not pled with the requisite particularity. CLS Bank asserts in its Opposition that the "nature" of the information allegedly left out of Alice's patent application is "Alice's and/or the inventor's failure to disclose that he [sic] did not invent [the] subject matter sought in [the] proposed amendments." Opp. at 10; *see also* Opp. at 1. Neither the Complaint nor CLS Bank's Opposition, however, contains any clue as to who invented the subject matter of the amended claims, or indeed, what was invented by this third party. CLS Bank's allegations do not provide Alice with sufficient notice to determine what CLS Bank is alleging. Is CLS Bank alleging that

---

2 Paragraph 33 of the Complaint states, "Alice and/or the inventor also sought to amend their patent claims during prosecution, based on information they obtained concerning the CLS System and CLS Service, without disclosing to the PTO that the subject matter sought in the proposed amendments was not invented by Alice or the named inventor of the Alice patents."

the creator(s) of the CLS system, the SIC system, or some other third party should have been a named inventor of the patent(s) containing the amended claims, that Alice knew this was the case, and that Alice withheld this information from the PTO with deceptive intent? Putting aside the sheer implausibility of such an allegation, if that is what CLS Bank means, then it fails to allege which other individual(s) were inventors or co-inventors of the subject matter contained in the amended claim(s), and that Alice (1) knew who these individual(s) were, (2) knew that these individual(s) were inventors or co-inventors of the subject matter contained in Alice's amended claim(s), and (3) failed to disclose to the PTO the true inventorship of the subject matter contained in the amended claims with deceptive intent. Indeed, not only has CLS Bank failed to directly allege that Mr. Shepherd is not an inventor of the subject matter in the claims at issue, it fails to allege facts from which one could *infer* that he is not an inventor, that he or Alice knew he was not an inventor, or that he or Alice knew of other purported inventors. *See M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*, 439 F.3d 1335, 1341 (Fed. Cir. 2006) ("There still must be a factual basis, however, for a finding of intent.").

Second, as the allegations of Paragraph 33 now stand, CLS Bank fails to state an inequitable conduct claim. Merely alleging (as CLS Bank appears to do in Paragraph 33) (1) that Alice amended its claims in view of the CLS System and (2) that CLS Bank or some other entity invented the subject matter of its amended claims fails to state an inequitable conduct claim. As explained in Alice's Motion, *Kingsdown Med. Consultants, Inc. v. Hollister Inc.* explicitly holds that a patentee may amend claims during prosecution to cover a competitor's product. 863 F.2d 867, 874 (Fed. Cir. 1988). While "[a]ny such amendment . . . must comply with all statutes and regulations," amending a claim based on information learned in the marketplace does not violate any statute, regulation, or other legal principle. *Id.*

None of the cases cited by CLS Bank support a finding of inequitable conduct if it turns out later—unbeknownst to the patentee at the time of the amendment—that someone else in fact was the inventor or a co-inventor of the subject matter of the amended claim. Rather, *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.* involved a patentee's failure to name several individuals who had "worked in close collaboration with the named inventors in the development" of the subject matter of the three patents. 225 F.3d 1315, 1319 (Fed. Cir. 2000). And in *Frank's Casing Crew*, a patent's named inventors had engaged in a pattern of deceitful behavior to deliberately conceal the fact that one of their employees had, in fact, invented the method claimed in the patent. *Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*, 292 F.3d 1363, 1371 (Fed. Cir. 2002). Hence, both cases involved situations in which the patentee knew that other individuals were properly inventors or co-inventors and failed to disclose that fact to the PTO. CLS Bank has neither alleged nor articulated a basis on which one could infer those facts here.

The *Rambus* case, cited at length by CLS Bank, is also clearly distinguishable. In *Rambus*, a patent holder joined a standard-setting trade association for the sole purpose of obtaining an illegal monopoly: "after Rambus' efforts to have [the trade association] adopt its [product] as the industry standard were unsuccessful, Rambus attended [trade association] meetings for the purpose of learning the standards that were to be adopted . . . and then steered its patent prosecution in such a way as to encompass products made in compliance with those standards." *Rambus, Inc. v. Infineon Techs. AG*, 330 F. Supp. 2d 679, 684–85 (E.D. Va. 2004). A jury had found Rambus guilty of fraud, and the company was accused of violating the federal anti-trust laws. *Id.* at 683–84. Here, CLS Bank has not alleged that Alice engaged in a pattern of anti-competitive behavior or that the information Alice obtained concerning the CLS System was

not publicly available, let alone facts that would support a finding that Alice obtained the information through fraud. *See* Compl. ¶ 33. Indeed, the *Rambus* court specifically distinguished *Kingsdown* on the ground that "Kingsdown itself dealt with what was already in the marketplace, not with an industry standard that is under development." *Rambus*, 330 F. Supp. 2d at 692. Thus, even if the reference in Paragraph 33 to "information [Alice or Mr. Shepherd] obtained concerning the CLS System and CLS Service" was sufficient to meet the Rule 9(b) particularity requirement, it fails to state an inequitable conduct claim.[3]

## III. Intent was not Alleged and Cannot be Inferred from CLS Bank's Allegations.

CLS Bank's failure to allege that Alice intentionally misled or deceived the PTO or, alternatively, allege facts that would support an inference of intent requires Count III to be dismissed. Nowhere in Paragraphs 32 and 33 is intent expressly alleged. While intent may be inferred in certain circumstances, here—even taking all inferences in CLS Bank's favor—there is simply no way to infer from its allegations that Alice intended to deceive or mislead the PTO.

The general reference in Paragraph 32 to the SIC system provides no basis for concluding that Alice or Mr. Shepherd intentionally misled or deceived the PTO. To infer intent, an allegation of inequitable conduct must include the specific prior art withheld, an indication that the patentee was aware of the prior art, and an indication that the patentee knew that the failure to disclose was material or meant to mislead the PTO. *See Critikon, Inc. v. Becton*

---

[3] The other cases cited in Part II.A. of CLS Bank's Motion merely offer the obvious conclusion that a party may not violate the law when amending patent claims. *See Reiffin v. Microsoft Corp.*, 1998 U.S. Dist. LEXIS 10518, at *17–19, 48 U.S.P.Q.2d 1274 (N.D. Cal. 1998) (noting that a patent may not "run afoul of the written description requirement" when amending claims), *rev'd on other grounds*, 214 F.3d 1342 (Fed. Cir. 2002); *Total Containment v. Environ Prods.*, 921 F. Supp. 1355, 1383 (E.D. Pa. 1995) (claims submitted during reexamination of a patent must raise a "substantial new question of patentability" rather than merely account for a "potentially infringing apparatus"). These cases do not support CLS Bank's legal theory that Alice's reliance on publicly available information about the CLS System in amending its patent claims gives rise to an inequitable conduct claim.

*Dickinson Vascular Access*, 120 F.3d 1253 (Fed. Cir. 1997) (inferring intent where the patentee knew of a specific prior art that went directly to an issue cited by the patent examiner as important during the course of the patent prosecution). The reference in Paragraph 32 to the SIC system includes none of these and is therefore insufficient to infer that Alice intended to mislead or deceive the PTO. *See also Cent. Admixture Pharm. Servs. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) (finding insufficient the allegation that "by manipulation of various measurements and units, the patentee sought to mislead the Patent and Trademark Office regarding the relationship between the claimed invention and the prior art"); *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1381 (Fed. Cir. 2006) (holding that intent could not be inferred from allegation that "[patentee] was motivated to extend its patent monopoly beyond the '596 patent term by patenting the enantiomer, and it need to conjure up 'unexpected' results").

As to Paragraph 33, CLS Bank argues that intent can be inferred because "issues related to inventorship are *always* material to the PTO." Opp. at 11. While inventorship may be material, as described in Part II, *supra*, the allegations in Paragraph 33 are both vague and legally insufficient. There are simply no facts pled to support the inference that Mr. Shepherd or Alice knew that Mr. Shepherd did not invent the subject matter of his amended claims or that they knew the identity of potential co-inventors. Indeed, CLS Bank does not even identify the information about the CLS System that Alice or Mr. Shepherd purportedly relied on in amending the claims, nor how they would glean from this information that other individuals were prior inventors or co-inventors of the subject matter. It is thus impossible to infer an intent to mislead the PTO from the allegations of Paragraph 33.

The failure to either allege intent expressly, or allege any facts from which intent could be inferred, require Count III to be dismissed.

## CONCLUSION

For the foregoing reasons, Alice respectfully requests that the Court dismiss Count III of CLS Bank's Complaint.

Dated: September 19, 2007

Respectfully submitted,

ALICE CORPORATION PTY. LTD.,

By its attorneys,

Paul Martin Wolff (D.C. Bar No. 90217)
Bruce R. Genderson (D.C. Bar No. 961367)
Ryan T. Scarborough (D.C. Bar No. 466956)
M. Jesse Carlson (D.C. Bar No. 490196)
WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

Mark F. Evens (D.C. Bar No. 343723)
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-2600
Facsimile: (202) 371-2540

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of September, 2007, a true copy of the foregoing DEFENDANT ALICE CORPORATION PTY. LTD.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS COUNT III was served upon the following by electronic means through ECF:

David O. Bickart, Esq.
KAYE SCHOLER LLP
901 15th Street, N.W.
Suite 1100
Washington, DC 20005-2329
Fax: (202) 414-0310

M. Jesse Carlson