# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLS BANK INTERNATIONAL, | ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 07-CV-00974-RMC ) |
| ALICE CORPORATION PTY. LTD., | ) ) |
| Defendant. | ) ) |
| ALICE CORPORATION PTY. LTD., | ) ) |
| Counterclaim-Plaintiff, | ) ) |
| v. | ) ) |
| CLS BANK INTERNATIONAL, | ) ) |
| Counterclaim-Defendant, | ) ) |
| and | ) ) |
| CLS SERVICES LTD., | ) ) |
| Counterclaim-Defendant. | ) ) |

**PLAINTIFF AND COUNTERCLAIM-DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF THEIR MOTION TO DISMISS THE COUNTERCLAIMS OR,
ALTERNATIVELY, FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ........................................................................................................... 3

ALICE'S COUNTERCLAIMS SHOULD BE DISMISSED, WITH PREJUDICE ...................... 3

   A.    Alice's Counterclaims Fail To Plead Sufficient Facts To State A Claim ...................... 3

   B.    Alice's Counterclaims Should Be Dismissed With Prejudice Or, Alternatively,
By The Grant Of Summary Judgment ........................................................................ 8

         1.   As A Matter Of Law, "Control" And "Beneficial Use" Are Irrelevant To
Patent Infringement Where All Components Of The Accused System Are
Located Outside Of The United States .................................................................. 9

         2.   There Is No Basis For Alice To Claim That There Is A Backup To The
CLS Core System Located In The United States ................................................. 16

   C.    The Counterclaims Should Be Dismissed Without Engaging In Lengthy And
Expensive Discovery .................................................................................................. 20

CONCLUSION ........................................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Anticancer Inc. v. Xenogen Corp.,*
 2007 U.S. Dist. LEXIS 59811 (S.D. Cal. Aug. 13, 2007) ..................................... 6

*Aro Mfg. Co. v. Convertible Top Replacement Co.,*
 365 U.S. 336 (1961) ............................................................................................. 9

* *Bell Atlantic Corp. v. Twombly,*
 127 S. Ct. 1955 (2007) ................................................................................ *passim*

*Brown v. Duchesne,*
 60 U.S. 183 (1856) ....................................................................................... 12, 13

*Burke v. Gould,*
 286 F.3d 513 (D.C. Cir. 2002) ........................................................................... 20

*Byrd v. United States EPA,*
 174 F.3d 239 (D.C. Cir. 1999) ........................................................................... 20

*Chavous v. Dist. of Columbia Fin. Responsibility & Mgmt. Assistance Auth.,*
 201 F.R.D. 1 (D.D.C. 2001) ............................................................................... 20

*Cleveland County Ass'n. for Gov't v. Cleveland County Bd. of Comm'rs.,*
 142 F.3d 468 (D.C. Cir. 1998). ......................................................................... 20

*Conley v. Gibson,*
 355 U.S. 41 (1957) ............................................................................................... 4

* *Decca Ltd. v. United States,*
 544 F.2d 1070 (Ct. Cl. 1976) ....................................................................... 3, 13

* *Deepsouth Packing Co. v. Laitram Corp.,*
 406 U.S. 518 (1972) ............................................................................... 3, 11, 12

*Dow Jones & Co. v. Int'l Sec. Exch., Inc.,*
 451 F.3d 295 (2d Cir. 2006) ................................................................................ 6

*Elegant Moments, Inc. v. Dimick,*
 2006 U.S. Dist. LEXIS 64120 (M.D. Pa., Sept. 7, 2006) ................................. 22

*Hutchins v. Zoll Med. Corp.,*
 492 F.3d 1377 (Fed. Cir. 2007) ........................................................................... 9

*McCarty v. Lehigh Valley R.R. Co.,*
 160 U.S. 110 (1895) ............................................................................................. 9

<u>Page(s)</u>

\* *McZeal v. Sprint Nextel Corp.*,
    __ F.3d __, 2007 U.S. App. LEXIS 22025 (Fed. Cir. Sept. 14, 2007) .................. 1, 4, 5, 6

\* *Microsoft Corp. v. AT&T Corp.*,
    127 S. Ct. 1746 (2007) ......................................................................... 3, 11, 12

\* *NTP, Inc. v. Research in Motion, Ltd.*,
    418 F. 3d 1282 (Fed. Cir. 2005) ................................................................. 3, 14

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ................................................................. 9

*Riggiladez v. Harvey*,
    2007 U.S. Dist. LEXIS 70078 (D.D.C. Sept. 21, 2007) ....................................... 6

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
    36 F. Supp. 2d 810 (C.D. Ill. 1998),
    *aff'd*, 215 F.3d 1246 (Fed. Cir. 2000) ....................................................... 23

*Singh v. S. Asian Soc'y of the George Washington Univ.*,
    2007 U.S. Dist. LEXIS 36620 (D.D.C. May 21, 2007) ......................................... 21

*United States v. Wash. DOT*,
    450 F. Supp. 2d 1207 (W.D. Wash. 2006) .................................................... 22

*Vivid Techs., Inc. v. Am. Sci. & Engr., Inc.*,
    200 F.3d 795 (Fed. Cir. 1999) ................................................................. 21, 22

## STATUTES

35 U.S.C. § 271(a) ....................................................................................... 11

Fed. R. Civ. P. 12(b)(6) ................................................................................. 1

## MISCELLANEOUS

Fed. R. Civ. P. App. Form 16 .......................................................................... 5

*Webster's Third New Int'l Dictionary* (2002) ..................................................... 11

Plaintiff and Counterclaim-Defendant CLS Bank International ("CLS Bank") and Counterclaim-Defendant CLS Services Ltd. ("CLS Services U.K.") respectfully submit this reply memorandum in further support of their motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Counterclaims of Defendant and Counterclaim-Plaintiff Alice Corporation Pty. Ltd. ("Alice"), for failure to state a claim, or, alternatively, for summary judgment.

## PRELIMINARY STATEMENT

Alice's Opposition to CLS Bank and CLS Services U.K.'s motion to dismiss Alice's counterclaims fails to remedy its insufficient pleading, and fails to offer a viable basis for amendment of its counterclaims. Accordingly, Alice's counterclaims should be dismissed, with prejudice. Alternatively, given the absence of a genuine issue of material fact respecting the location of the CLS core system outside the United States, including the core system computers and coupled data storage units, summary judgment should be granted dismissing the counterclaims.

Alice does not dispute that infringement of a United States patent can only take place in the United States. Despite Alice's protest, its counterclaims fail to provide the minimal factual allegations required to state a plausible claim of infringement in the United States. Alice wrongly suggests that the Supreme Court's recent pronouncements in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) can be ignored, incorrectly states that its counterclaims give CLS "notice sufficient to answer" (Opp. Mem. at 1), and misinterprets the recent Federal Circuit decision in *McZeal v. Sprint Nextel Corp.*, __ F.3d __, 2007 U.S. App. LEXIS 22025, at *1 (Fed. Cir. Sept. 14, 2007). As discussed below, the "notice" Alice supposedly provided in correspondence and in a proposed license agreement refers to a CLS Services U.K. system which is located entirely in the U.K. and which cannot be the basis of a valid patent infringement claim in the United States.

With regard to CLS Bank and CLS Services U.K.'s alternative motion for summary judgment, Alice's Rule 56(f) Affidavit does not create a genuine issue of material fact to preclude summary judgment, and is inadequate to support Alice's request for discovery. A review of the publicly available information appended to the Rule 56(f) Affidavit of Alice's counsel reveals that such information is consistent with CLS Bank and CLS Services U.K.'s position and with the supporting affidavit of James Hughes submitted by CLS Bank and CLS Services U.K. Indeed, as discussed below, the very information submitted by Alice with its Rule 56(f) Affidavit establishes that the planned backup facility for the CLS core system in the U.K., which is the principal focus of Alice's attempt to contradict the Hughes Declaration and create a material fact issue, cannot be located in the United States due to technological factors requiring closer proximity to the existing U.K. core system facilities.

In the event that this Court nevertheless permits discovery relating to CLS Bank and CLS Services U.K's alternative motion for summary judgment, such discovery should be narrowly limited to the extraterritoriality issue raised by CLS Bank and CLS Services U.K.'s motion. As discussed below, the only relevant issue on this threshold motion concerning extraterritoriality is the location of the CLS core system computer and coupled data storage unit.

Alice seriously overreaches when it suggests that it must be permitted to conduct discovery "concerning the design, function, processing, control, ownership, beneficial use and location of the CLS system and all of its components" (*see, e.g.*, Alice Rule 56(f) Aff. at ¶¶ 4, 9; Opp. Mem. at 3, 17), in order to respond to CLS Bank and CLS Services U.K.'s motion. Details of the design, function and processing of the CLS system which might be relevant to a substantive determination of non-infringement *if the system were located in the United States* are simply irrelevant to the extraterritoriality issue raised by the present motion. Moreover, as a

matter of law, questions of control, ownership and beneficial use of the system are irrelevant where, as here, all of the components of the potentially accused system are located outside of the U.S. Alice's arguments misinterpret decisions of the Federal Circuit and its predecessor court in *NTP, Inc. v. Research in Motion, Ltd.*, 418 F. 3d 1282 (Fed. Cir. 2005), and *Decca Ltd. v. United States*, 544 F.2d 1070 (Ct. Cl. 1976), and ignore the Supreme Court's decisions in *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 1746, 1758 (2007) and *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 527, 532 (1972) regarding the strict territorial limitations of U.S. patent law.

As Alice cannot state a viable claim of infringement against either CLS Bank or CLS Services U.K., Alice's counterclaims should be dismissed with prejudice. Alternatively, CLS Bank and CLS Services U.K. should be granted summary judgment dismissing the counterclaims.

## ARGUMENT

## ALICE'S COUNTERCLAIMS SHOULD BE DISMISSED, WITH PREJUDICE

Alice's counterclaims do not plead facts sufficient to state a claim for patent infringement in the United States, and its opposition fails to offer a *bona fide* basis for amending the counterclaims or for otherwise continuing this action. Accordingly, the counterclaims should be dismissed.

### A.    Alice's Counterclaims Fail To Plead Sufficient Facts To State A Claim

Contrary to Alice's contention, its counterclaims are not sufficiently pled to withstand dismissal.

Alice's suggestion that *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1969 (2007), "did not alter the basic principle of notice pleading" (Opp. Mem. at 10), ignores the Supreme Court's clear enunciation of a new standard for determining whether the factual allegations in a

pleading provide sufficient notice of the claim, and ignores the fact that Alice's counterclaims do not in any event satisfy basic principles of notice pleading.

It is undeniable that in *Bell Atlantic*, the Supreme Court characterized as "best forgotten" the formulation of the standard set out in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that a plaintiff can avoid dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atlantic*, 127 S. Ct. at 1969, 1978-79. The Supreme Court stated in *Bell Atlantic* that a party cannot avoid dismissal for failure to state a claim unless it has alleged sufficient facts "to render [its] entitlement to relief plausible," and not merely conceivable. *Id.* at 1965, 1973 n. 14, 1974. Accordingly, the Court dismissed the plaintiff's antitrust claims because he failed to allege sufficient facts to render "plausible" his claims of a conspiratorial agreement involving Bell Atlantic and other telephone companies. Here, Alice's bare-boned pleading, which does not even try to identify any allegedly infringing CLS Bank or CLS Services U.K. product, system or method found in the United States, fails the "plausibility" test of *Bell Atlantic*.

Alice mistakenly relies on *McZeal v. Sprint Nextel Corp.*, __ F.3d __, 2007 U.S. App. LEXIS 22025, at *1 (Fed. Cir. Sept. 14, 2007), for the proposition that Alice's entirely conclusory pleading satisfies the notice requirements for a patent case, notwithstanding the Supreme Court's holding in *Bell Atlantic*. (*See* Opp. Mem. at 11-12.) Alice wrongly asserts that in *McZeal*, the court sustained a complaint which "merely pled jurisdiction, ownership of a specific patent, and that the defendants infringed . . . ." (*Id.* at 12.) Quite to the contrary, the pleading in *McZeal* was very specific in identifying the Sprint Nextel product or device that allegedly infringed. The court observed that McZeal had filed a 95-page complaint (plus exhibits), which had multiple paragraphs that "described the means by which Sprint Nextel

allegedly infringes . . . ." *McZeal*, 2007 U.S. App. LEXIS 22025 at *7. Indeed, the opinion quotes at length from paragraphs 14, 28, 56 and 57 of McZeal's Complaint respecting how the Motorola i930 "International Walkie Talkie" cell phone allegedly infringes McZeal's patent claims. *Id.* at *7-9.

   In stark contrast, and as we observed in our moving brief, Alice's counterclaims do not contain any allegation whatsoever as to what, if any, CLS Bank or CLS Services U.K. product, system or method is found in the United States, let alone infringes any Alice patent.

   Further, the Federal Circuit decision in *McZeal* relies heavily on the fact that McZeal was a *pro se* plaintiff, who (applying regional 5th circuit law) was to be given "leeway" on procedural matters, and whose pleadings "should be held to a lesser standard than those drafted by lawyers when determining whether the complaint should be dismissed for failure to state a claim." *Id.* at *5. The Federal Circuit remanded the case "[b]ecause McZeal met the low bar for *pro se* litigants." *Id.* at *3. Plainly, Alice Corp. and its counsel, two substantial and distinguished law firms, cannot take refuge in the lower *pro se* standard, and must instead be held to a higher standard.

   Alice does not even satisfy the minimalist pleading requirements of Fed. R. Civ. P. App. Form 16 respecting patent infringement claims, which it cites. (*See* Opp. Mem. at 11.) As the court observed in *McZeal*, Form 16 requires at least an identification of the device which is alleged to infringe -- plainly identified in *McZeal*, 2007 U.S. App. LEXIS 22025 at *7-9. There is no such identification by Alice here.[1]

---

[1]  Alice creates a total *red herring* when it states that "*Bell Atlantic* . . . does not stand for the proposition that patentees must set forth every claim from each of their patents and match them specifically to acts perpetrated by alleged infringers prior to any discovery." (Opp. Mem. at 12.) While such allegations would have been desirable, CLS Bank and CLS Services U.K.'s motion did not insisted on that degree of detail in the pleading.

Alice's opposition memorandum also ignores *Anticancer Inc. v. Xenogen Corp.*, 2007 U.S. Dist. LEXIS 59811, at *6-10 (S.D. Cal. Aug. 13, 2007), cited in CLS Bank and CLS Services U.K.'s moving brief (CLS Mem. at 12), which explicitly held that the *Bell Atlantic* standard applies to patent infringement actions. Alice similarly ignores other cases cited by CLS Bank and CLS Services U.K. that have recently applied the *Bell Atlantic* standard in dismissing various complaints. (*See id.* at 13.) And in *Riggiladez v. Harvey*, U.S. Dist. LEXIS 70078, at *11 (D.D.C. Sept. 21, 2007), decided after *McZeal* and cited by Alice (*see* Opp. Mem. at 10), the court cited *Bell Atlantic* and granted a motion to dismiss due to the lack of facts to support a plausible claim.[2] Applying the same standard, dismissal is appropriate here as well.

Remarkably, Alice suggests that adequate notice of the CLS Bank or CLS Services U.K. product or system that supposedly infringes Alice's U.S. patents is found in correspondence mentioned in the counterclaims and incorporated by reference -- specifically a draft license agreement that the parties were allegedly negotiating:[3]

> Alice's counterclaims referred to correspondence exchanged between the parties concerning the patents at issue, including a draft license agreement the parties were negotiating. Countercls. ¶ 12. The content of documents incorporated by reference are considered when addressing a motion to dismiss for failure to state a claim [citations omitted]. The license agreement provided to CLS and referenced

---

[2]    Even before *Bell Atlantic*, courts recognized that mere conclusory allegations of infringement are insufficient to meet the Rule 12(b)(6) standard. *See, e.g., Dow Jones & Co. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 307 (2d Cir. 2006) ("The mere assertion that [defendants'] intended use of the [plaintiff's] marks would constitute trademark infringement and dilution, without any factual allegations concerning the nature of the threatened use, does not give the defendants fair notice of the claims against them and does not show, by facts alleged, that [plaintiff] is entitled to relief. As to the trademark claims, [plaintiff's] complaint, 'consists of conclusory allegations unsupported by factual assertions' and therefore it 'fails even the liberal standard of Rule 12(b)(6)'") (citations omitted).

[3]    The parties were hardly "negotiating" a license agreement. Rather, Alice merely provided license agreement drafts to CLS' counsel (*see* Alice Rule 56(f) Aff. Ex. 11 at 1), which CLS rejected (*see* Countercls. ¶ 17).

in Paragraph 12 of Alice's counterclaim specifically states the "Licensed Service" is "the service performed by CLS Bank of administering the exchange of foreign exchange transaction settlement obligations between CLS Settlement Members." *See* Countercls. ¶ 12; Carlson Aff. Ex. 11.

(Opp. Mem. at 13-14.)

But Alice's reference to a draft license agreement hardly passes muster as an allegation of patent infringement by CLS Bank or CLS Services U.K. in the United States. A proposed license agreement is, on its face, not a charge of patent infringement. Moreover, the very next paragraph of Alice's draft license agreement contained in Exhibit 11 to Alice's Rule 56(f) Affidavit dealt with a system *located in the United Kingdom*. It reads as follows:

> **Licensed System** means *the system* developed by International Business Machines Corporation for CLS Group and which, at the Effective Date, *CLS Services* administers to allow CLS Bank to provide Licensed Services.

*See* Alice Rule 56(f) Aff. Ex. 11 (Draft License at 4) (emphasis added).

CLS Services does not have offices in the United States, and the only CLS Services system is in the United Kingdom. Accordingly, this draft license agreement, if anything, put CLS Bank and CLS Services U.K. on notice only that a system *in the United Kingdom* was the object of Alice's interest and financial demands. This type of insupportable demand ultimately led CLS Bank and CLS Services U.K. to seek declaratory judgment of non-infringement regarding Alice's U.S. patents. It certainly does not provide the notice of infringing activity *in the United States* that is required by *Bell Atlantic* and its progeny for a U.S. patent infringement case.

Alice has failed to meet the requirements of *Bell Atlantic*, and its counterclaims should therefore be dismissed.

**B.     Alice's Counterclaims Should Be Dismissed With Prejudice Or, Alternatively, By The Grant Of Summary Judgment**

It is apparent that Alice did not have a good faith basis for asserting its counterclaims for patent infringement. Alice's counterclaims contain no factual allegations respecting any system or method in the U.S. that infringes Alice's U.S. patents. Alice's denial of knowledge or information sufficient to form a belief as to the truth of the allegations in CLS Bank and CLS Services U.K.'s complaint respecting the location of its systems and performance of its methods in the United Kingdom and *outside the United States* speaks volumes about the lack of any basis for Alice's accusations and counterclaims. Even more importantly, the absence of any concrete facts in Alice's opposition papers or in Alice's Rule 56(f) Affidavit to raise a genuine issue of material fact, respecting the location or performance of any potentially infringing CLS Bank or CLS Services U.K. system or method, belies any real basis for continuing this lawsuit.

Alice's only purported factual bases for repleading are that publicly available information attached to its Rule 56(f) Affidavit supposedly demonstrates that (1) "CLS controls the settlement of and/or settles foreign currency transactions in the United States", and (2) CLS purportedly "has a backup system that operates parallel to the system in England." (Opp. Mem. at 16.) These same issues are the basis of Alice's opposition to CLS Bank and CLS Services U.K.'s alternative motion for summary judgment. (*See* Opp. Mem. at 21-26.)[4] But each of these

---

[4]     In opposition to summary judgment, Alice also briefly suggests that a possible issue of *past* infringement, as opposed to current infringement, has not been ruled out by the Hughes Declaration submitted in support of CLS Bank Services U.K.'s motion. (*See* Opp. Mem. at 23.) Alice's point is specious. The CLS core system addressed in the Hughes Declaration has always been located in the United Kingdom, and there is no basis for Alice to allege any different location in the past than in the present. Moreover, the materials submitted with Alice's Rule 56(f) Affidavit relate only to a "planned" back-up facility (as opposed to a different past location). As discussed *infra* at § B(2), that planned facility is not and cannot be located in the United States.

purported bases for opposition to the motion of CLS Bank and CLS Services U.K. is either incorrect as a matter of law, or contrary to fact and unsupported by the materials proffered by Alice.

      1.     As A Matter Of Law, "Control" And "Beneficial Use" Are Irrelevant To Patent Infringement Where All Components Of The Accused System Are Located Outside Of The United States

Alice wrongly contends that there can be infringement of its systems claims, regardless of the location of all system components outside of the United States, if "control of the system is exercised, and beneficial use of the system obtained" in the United States. (*See* Opp. Mem. at 23-24.) Alice's argument is incorrect as a matter of law. Moreover, it effectively asks the court to create an exception to the territorial limits of the U.S. patent laws that is unprecedented and unworkable.

Alice does not, and cannot, dispute that its patented system is defined by, and limited to, the "elements" of its patent claims. (*See* Opp. Mem. at 3 n.1, citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005)); *see also McCarty v. Lehigh Valley R.R. Co.*, 160 U.S. 110, 116 (1895) ("[I]f we once begin to include elements not mentioned in the claim, . . . we should never know where to stop"); *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 339 (1961) ("[T]he claims made in the patent are the sole measure of the grant"). Thus, Alice is not entitled to exclude the CLS parties from using, in the United States or anywhere else, equipment or systems that are not within the scope of Alice's patent claims. *Aro*, 365 U.S. at 344 ("if anything is settled in the patent law, it is that the combination patent covers only the totality of elements in the claim").

Further, in order to find infringement of its system claim under any prong of Section 271(a), a patentee must point to some apparatus that includes each element of its patent claim. *See Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1380 (Fed. Cir. 2007) ("Patent

infringement requires that every element and limitation in a correctly construed claim is embodied in the accused system . . . ."). Here, Alice did not receive a patent to "settlement" or to a "settlement system" generally. Rather, the Alice patent covers an apparatus with specifically defined elements -- a "data storage unit" with particular characteristics "coupled" to a "computer" configured in a particular way.[5] (See, e.g., Opp. Mem. at 5.) As the Hughes Declaration makes clear, to the extent CLS has equipment that might correspond to these elements, it is located entirely within the United Kingdom. (See Hughes Decl. ¶ 34.)[6]

As shown below, where every part of an accused system that corresponds to an element of a claimed system is located outside of the United States, infringement under Section 271(a) cannot occur, and thus summary judgment is appropriate without inquiry into the "ownership, control and beneficial use" of the accused system. Importantly, the only cases on which Alice relies address a different situation, where some parts of the accused system that correspond to elements of the claimed system are located in the United States, while others are

---

[5]    Alice chides the CLS parties for "unilaterally" interpreting Alice's patent claims. (See Opp. Mem. at 3.) Alice then, however, proceeds to describe these claims in terms nearly identical to the construction used in the Hughes Declaration. Compare, e.g., Opp. Mem. at 5 (claim 68 of the '720 patent recites "a data storage unit . . . and a computer coupled to the data storage unit" configured to "store[] . . . account information" for two accounts, "adjust the . . . accounts" and "generate an instruction to the exchange institution to adjust the exchange institution accounts") with Hughes Decl. ¶ 33 (claim 68 of the '720 patent recites "a computer system and coupled storage devices" configured to "maintain accounts for two parties," "adjust the parties' accounts" and "provide instructions to another institution to adjust accounts maintained at that institution." It is clear that the statements of the Hughes Declaration are applicable to Alice's system claim even under Alice's (overly) broad construction.

[6]    Should this litigation proceed beyond resolution of the instant motion to dismiss, or alternatively, for summary judgment, CLS Bank and CLS Services U.K. will contend that, when the language of Alice's claims is properly construed, neither CLS Bank nor CLS Services U.K. uses any system, in the United Kingdom or elsewhere, that includes the elements of Alice's claims.

not. Only in those circumstances have courts looked to "ownership, control and beneficial use" to pinpoint a nominal location for purposes of the infringement analysis.

The patent statute requires that, in order to infringe the "use" prong of Section 271(a) – the only one Alice asserts in opposing summary judgment on its '720 system patent (*see* Opp. Mem. at 24) – an accused device must be "use[d], . . . within the United States." 35 U.S.C. § 271(a).[7] For this reason, where the accused system or device is used outside the United States, there is no infringement under Section 271(a). *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 1746, 1751 (2007) (it is "not an infringement to make or use a patented product outside of the United States" (quoting *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 527 (1972)); *see also id.* (no infringement was found in *Deepsouth* because the patented machine was "assembled and used outside the United States"). As the Supreme Court stated in *Deepsouth*, the patent laws:

> are intended to grant a patentee a monopoly only over the United States market; they are not intended to grant a patentee the bonus of a favored position . . . in international commerce. . . . To the degree that the inventor needs protection in markets other than those of this country, [Section 271] reveals a congressional intent to have him seek it abroad through patents secured in countries where his goods are being used.

*Deepsouth*, 406 U.S. at 523, 531.

Because "the presumption that United States law . . . does not rule the world applies with particular force in patent law," the Supreme Court has repeatedly warned that exceptions to the territorial limitations should only be created by Congress, and not by the courts. *Microsoft*, 127 S. Ct. at 1759; *Deepsouth*, 406 U.S. at 531 ("We would require a clear and

---

[7]     According to common usage, the adverb "within" means "inside the bounds of a place or region," and as a preposition is "used as a function word to indicate enclosure or containment," such as "in the limits . . . of . . . not beyond," or "enclosed or confined by." *Webster's Third New Int'l Dictionary* 2627 (2002). Thus, the requirement in Section 271(a) that use of a patented invention occur "within the United States" means in a geographically enclosed or confined manner, "inside the bounds of" and "not beyond" the United States.

certain signal from Congress before approving the position of a litigant who . . . argues that the beachhead of [patent] privilege is wider . . . than courts had previously thought."). For this reason, as pointed out in the CLS parties' opening brief (CLS Mem. at 21), "*[a]ny doubt*" that the accused activities fall outside the statute's reach "*would be resolved by the presumption against extraterritoriality.*" *Microsoft*, 127 S. Ct. at 1758 (emphasis added).[8]

The strict territorial limitation of the patent laws was long ago applied by the Supreme Court, in circumstances that have resonance here. In *Brown v. Duchesne*, 60 U.S. 183 (1856) (cited with approval in *Microsoft*, 127 S. Ct. at 1752, 1758 and in *Deepsouth*, 406 U.S. at 531) the patent claimed a device used on sailing ships. The accused device was built in France and fitted (in France) onto ships registered under the flag of that country. *Brown*, 60 U.S. at 193. The plaintiff, however, asserted infringement by "use" of the device whenever the ship entered or left a U.S. port. *Id.* at 193, 196-97. The Supreme Court held that the infringement claim should be dismissed. It applied the principle against extraterritorial application of the patent laws, stating that "these acts of Congress do not, and were not intended to, operate beyond the limits of the United States." *Id.* at 195. Further, the Court found, "we are satisfied that no sound rule of interpretation would justify the court in giving to the general words used in the patent laws the extended construction claimed by the plaintiff." *Id.* at 198. As a result, the Court held that

> the use of such [a patented] improvement in the construction,
> fitting out, or equipment of such vessel, while she is coming into or

---

[8]     In *Microsoft*, for example, the Court applied the presumption against extraterritoriality to hold that the phrase "supplied from the United States" should not be construed to include duplication copies abroad from originals made in, and exported from, the United States. 127 S. Ct. at 1758. Likewise, in *Deepsouth* the Court used the presumption to determine that a system claim was not infringed where all of the elements of the claimed system were made by the accused infringer in the United States, and then exported for assembly and use abroad. *Deepsouth*, 406 U.S. at 528.

> going out of a port of the United States, is not an infringement of
> the rights of an American patentee, provided it was placed upon
> her in a foreign port, and authorized by the laws of the country to
> which she belongs.

*Id.* at 198-99.

Here, even more than in *Brown*, the infringement claim should be dismissed

because it is based on an accused system built and located entirely in a foreign country. The

presumption against extraterritorial application of the U.S. patent laws precludes a "use"

infringement claim based on such a system.

The cases on which Alice relies (see Opp. Mem. at 24-25), do not create an

exception to the presumption against extraterritorial application of the patent laws. Rather, these

cases recognize that when some, but not all, of the parts of an accused device that correspond to

elements of a claimed system are located in the United States, while others are not, a nominal

location of the system must be established for purposes of the infringement analysis. Here, in

contrast, the entirety of the CLS core system is located outside the United States.

For example, in *Decca Ltd. v. United States*, 544 F.2d 1070 (Ct. Cl. 1976), the

patent claimed a radio location finding system that included three broadcasting stations as

elements of the claim. *Id.* at 1074. In the accused system, owned and operated by the United

States, two of the broadcasting stations were located in the United States but the third station was

located in Norway. *Id.* The issue before the Court of Claims was whether the accused system

was used within the United States; to do this the court had to determine the "location of the

whole [system] for purposes of the United States Patent Law." *Id.* Noting that "the whole

[accused] system must be *deemed, at least for purposes of litigating the patent* here involved, to

be a unity," the court only examined the ownership, control and use of the system to determine

whether "the location of that unity must be *deemed* to be in United States territory." *Id.* at 1075

(emphasis added). Based on that analysis, the Court concluded that control and beneficial use of the accused system was exercised by one of the U.S. stations corresponding to an element of the patent claim. *Id.* at 1074.

Likewise, *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005), "involve[d] a system that is partly within and partly outside the United States". *Id.* at 1315. In *NTP*, the claims specifically covered an "electronic mail system" with one or more "originating processors," as well as various "switches" and "destination processors." *Id.* at 1294-95, 1298-99. The accused apparatus was the Blackberry system, in which handheld devices (the claimed "processors") were located in the United States, but a critical relay (the claimed "switch") was located in Canada. The Federal Circuit distinguished the case before it from *Deepsouth*, where infringement was not found because the patented invention (an assembly of components) was made and located "wholly outside the United States." *Id.* at 1315. Relying on *Decca*, in which some components were located in the U.S. and one component was outside the U.S., the court looked to the "place where control of the system is exercised and beneficial use of the system obtained" to determine whether "the location of the use of the communication system as a whole occurs in the United States." *Id.* at 1317. The Court concluded that there was enough evidence for a jury to conclude that control and beneficial use of the system was exercised by use of the handheld devices located in the United States, which corresponded to an element of the patent claims. *Id.* at 1317.

Alice reaches the wrong conclusion from *NTP's* statement that "[w]hen RIM's United States customers send and receive messages *by manipulating the handheld devices in their possession in the United States,* the location of the use of the communication system as a whole occurs in the United States." *Id.* at 1317. (*See* Opp. Mem. at 24.) From this, Alice

incorrectly concludes that "[t]hus, when it comes to evaluating Alice's systems claim, the location of the components is irrelevant if CLS Bank exercises control of and/or derives beneficial use from the system in the United States." (Opp. Mem. at 25.) To the contrary, as the foregoing analysis shows, the handheld devices in the United States were in fact a component of the claimed system in *NTP*, by which control over the system was exercised in the United States. The location of the component was thus hardly irrelevant.

Here, the Hughes Declaration makes clear that even under an overly broad construction, the only CLS apparatus that even potentially might incorporate the elements of Alice's system claim -- a data storage unit and coupled computer configured in a particular manner -- is the CLS core system, located only, and entirely, at the two IBM data centers in the United Kingdom. (Hughes Decl. ¶ 34.) There is no element of the CLS core system corresponding to these elements through which control might be exercised, or beneficial use obtained, within the United States.[9]

Finally, it should be noted that Alice's position regarding the "irrelevance" of the location of accused system components is not only incompatible with caselaw and the Supreme Court's repeated admonitions regarding the territorial limits of the U.S. patent laws, but would also wreak havoc in a world of computers connected through networks, including the Internet. For example, suppose a U.S. resident uses her laptop computer to order, over the Internet, a product through a Canadian retailer that uses a server-based inventory management system located entirely in Toronto, but which has been patented in the United States. Is that a "use" of the patented system that renders the Canadian company vulnerable to a Section 271(a)

---

[9]     The CLS parties should not be precluded from using non-patented equipment in the United States that is not encompassed by Alice's claim, simply because that equipment may interact with the CLS core system.

infringement action, and extensive discovery regarding the "ownership, control and beneficial use" of the system? Is it sufficient even if the order is made from Montreal, but as the result of an e-mail request from a friend in the United States? CLS Bank and CLS Services U.K. respectfully submit that this Court should not, in the absence of any indication of Congressional intent or any applicable precedent, create a *de facto* expansion of the territorial limits of the U.S. Patent laws to encompass systems located entirely outside of the United States.

    2.    There Is No Basis For Alice To Claim That There Is A Backup To The CLS Core System Located In The United States

Alice incorrectly contends that CLS's "prior public statements contradict the Hughes Declaration" and "support an inference that CLS's facilities in New York are capable of settling trades and apparently serve as a backup to the core system." (Opp. Mem. at 21.) Alice's contention is belied by statements in its own exhibits, which demonstrate that such a backup *cannot* be located in the United States.

The documents on which Alice relies establish that it would be impossible to place a backup CLS core system in the United States, as any site in this country would be too far from the CLS core systems located in the IBM Data Centers in the United Kingdom to allow the synchronization required for a backup system.

To avoid the loss of any settlement data in the event of a CLS core system failure, the CLS parties employ "synchronous data mirroring" ("SDM") between the two CLS core system computers in the U.K., to ensure that any data processed in one is also always available in the other. (*See* Carlson Aff. Ex. 5 at 26; *id*. at 22 (SDM ensures the data in two systems is "confirmed, complete and identical").) Thus, if the primary CLS core system fails, the backup system can immediately begin to process Instructions at the precise point at which the primary system left off, using exactly the same data.

The key to SDM is that, when the primary computer sends data to be stored, or "mirrored" in the backup system, it does not process additional data until it receives confirmation from the backup system that the data has been stored. (*See* Carlson Aff. Ex. 5 at 26 ("With this capability we do not say that we've completed the update of [data in one IBM Data Center] until we know, with certainty, that the data update has taken place in both.").) The transmission of messages back and forth between a primary and backup system that is required for SDM introduces a lag that slows processing by the primary, and the lag time increases with the distance between the primary and backup.

As a matter of physics, and as revealed in Alice's exhibits, it would be impossible to place a backup CLS core system in the United States. SDM can only be used for systems within, at most, a few hundred miles of each other. *See id.* at 22 (SDM is limited to 150 kilometers); *see also id.* at 27 (CLS Bank cannot "overcome the speed of light issue, to actually extend synchronous data mirroring beyond . . . 100-150 kilometers"). The distance over which SDM is possible is far, far less than that which would be required to permit SDM between systems located in the U.K. and the United States -- the shortest distance between London and New York is approximately 3400 miles (5500 kilometers). *See id.* at 22 (as a technical matter, no one can do "this kind of mirroring trans-Atlantic").[10]

The Hughes Declaration does not claim that CLS Bank has no facilities in the United States. Rather, it points out that CLS Bank uses several types of facilities in this country, including (1) an "Operations Center" used to allow "administrative oversight of the CLS Service by permitting operators to review (remotely) information relating to the Instructions processed

---

[10]    A third IBM Data Center that CLS is currently building is necessarily constrained by this technological limitation, and accordingly cannot be located in the United States. *See, e.g.*, Carlson Aff. Ex. 10 at 77 (as of the fourth quarter of 2006 "a complete 'out of region' back-up solution [was] underway").

by the CLS core system in the U.K.," and (2) a "Business Continuity Office" which "contains computers and other equipment used to provide email and business services" to the CLS Group. (Hughes Decl. ¶ 26(b), (d).)  However, the Hughes Declaration makes clear that these facilities "cannot be used to settle Instructions" and that they "cannot serve as a backup for the CLS core system or the IBM Data Centers." *Id.*

Some documents on which Alice relies state that CLS Bank was "planning," "planned," or had "operation sites" or "capability" and had a "data center" in New York. (*See* Opp. Mem. at 21-22.)[11]  But these statements do not contradict the Hughes Declaration, or establish that a *backup CLS core system* is located in New York or elsewhere in the United States.  They simply reflect the fact that CLS Bank has an Operations Center in New York that is capable of providing "administrative oversight" of the CLS Service in the U.K., and likewise, that it has a Business Continuity Office in this country.  This is further demonstrated by the documents Alice cites, albeit in portions they failed to quote.  For example, in addition to stating that the CLS parties have "Operations" capability in the United States, the 2004 CLS Group Report (*see* Carlson Aff. Ex. 7), also states that the other site located in the United States was not for the CLS core system, but rather to allow the CLS Group to "run our internal applications" -- *i.e.*, the facility was (and is) a Business Continuity Office.  *Id.* at 6; *see also* Hughes Decl. ¶ 26(d).

---

[11]    *See, e.g.*, Opp. Mem. at 21 ("CLS was 'planning . . . to migrate one of [its operation sites] to New York, or possibly elsewhere'") (quoting Carlson Aff. Ex. 5 at 26); *id.* at 22 ("CLS stated in its 2004 Annual Report that '[a]n out of region Operations capability was established in New York that is working side by side with the London-based Operations team, both being individually capable of running the full service'") (quoting Carlson Aff. Ex. 7 at 6); *id.* ("'CLS has established a parallel operating and data center in New York'") (quoting Carlson Aff. Ex. 8 at 171).

Alice also attempts to create a factual issue by arguing, on the basis of statements in its exhibits, that "settlement" occurs "across the books and records of CLS Bank" in New York. (*See* Opp. Mem. at 7, 25.) Based on these statements Alice wrongly asks the Court to conclude that CLS must be conducting infringing activities in this country. Nothing of the sort may be inferred from these statements.

First, Alice has not patented "settlement." As noted earlier, Alice has a patent to a system comprising a particularly configured computer and coupled data storage device. To show infringement, Alice must establish where equipment that meets these requirements is located, not simply where "settlement" takes place.

Second, while there is no dispute that CLS Bank has offices in New York, that says nothing about the physical location of the "books and records" relating to its settlement activities. The location of such records cannot be inferred from the location of CLS Bank's headquarters. In the Internet world, data need not be physically maintained in a particular jurisdiction in order to be reviewable there. In this case, as Alice's documents state, "settlement" of the two payments relating to an underlying foreign exchange transaction occurs "by the simultaneous making of debits and credits to the Accounts of the respective . . . Members". (Carlson Aff. Ex. 3 at 7; *see also* Hughes Decl. ¶ 21.) As the Hughes Declaration states, the accounts of CLS Members are credited and debited on the CLS core system, *located entirely in the United Kingdom.* (Hughes Decl. ¶¶ 12, 24.) The Hughes Declaration also specifies that this information is available in the United States, at an "Operations Center," which "permit[s remote] review" of information processed by the CLS core system. (*Id.* at ¶ 26(b).) Thus, while the settlement records and Member Accounts of CLS Bank are not physically located or maintained in the United States, they can be reviewed in this country by CLS Bank and its U.S. regulator.

The statements on which Alice relies are thus consistent with the Hughes Declaration, and do not raise a genuine issue of material fact with respect to CLS Bank and CLS Services U.K.'s motion to dismiss, or alternatively for summary judgment.[12]

C.     **The Counterclaims Should Be Dismissed Without Engaging In Lengthy And Expensive Discovery**

Alice virtually concedes that its Rule 56(f) Affidavit does not raise a sufficient dispute to merit discovery here. Alice thus states that "to the extent that the publicly available information cited above and relied on by Alice is insufficient to create a genuine issue of material fact, Alice cannot fairly controvert the Hughes Declaration unless it is first given the opportunity to conduct discovery regarding the design, function, processes, ownership, control, beneficial use and location of the CLS System and all of its components." (Opp. Mem. at 17.) But if Alice's Rule 56(f) Affidavit and exhibits do not establish a bona fide issue for discovery, then Alice is simply not entitled to discovery in this case. *See, e.g., Byrd v. United States EPA,* 174 F.3d 239, 248 n.8 (D.C. Cir. 1999) (a party seeking discovery under Rule 56(f) must state "what facts he intended to discover that would create a triable issue"); see *also Chavous v. Dist. of Columbia Fin. Responsibility & Mgmt. Assistance Auth.,* 201 F.R.D. 1, 2 (D.D.C. 2001). (stay of discovery appropriate pending determination of dispositive motion).[13]

---

[12]   Alice also complains that the CLS parties did not file a Local Rule 1-9(h) statement with regard to their alternative motion for summary judgment. Such a statement does not appear to be necessary in connection with a Rule 12(b)(6) motion which, as here, may be converted to an alternative motion for summary judgment. In any event, it is within the Court's discretion to consider a motion for summary judgment without a Local Rule 1-9(h) statement. See *Burke v. Gould,* 286 F.3d 513, 519 (D.C. Cir. 2002); *Cleveland County Ass'n. for Gov't v. Cleveland County Bd. of Comm'rs,* 142 F.3d 468, 475 n. 12 (D.C. Cir. 1998).

[13]   Alice's suggestion that "CLS grudgingly concedes that Alice may be entitled to discovery" (*see* Opp. Mem. at 17), is incorrect.

With respect to the method claims of the '479 and '510 patents, Alice does not even attempt to assert a theory under which these claims might be infringed by the CLS parties. As demonstrated in CLS Bank and CLS Services U.K.'s moving papers, a method patent cannot be used within the United States as required by Section 271(a) unless *each of the steps* is performed within the United States. (*See* CLS Mem. at 18-19.) The Hughes Declaration establishes that the facilities that CLS Bank uses in the United States do not perform *any* of the steps required by Alice's method patent claims. *A fortiori*, Alice cannot establish that "each of the steps" of its patented methods is performed within the United States. (*See id.*) Alice does not refute any of these points, and thus these claims may be dismissed without further discovery.

If the Court were nevertheless to conclude that discovery relating to CLS Bank and CLS Services U.K.'s motion is required with respect to Alice's system claims, such discovery should be narrowly limited to the extraterritoriality issues raised by this motion (*i.e.*, the location of the CLS core system computers and coupled data storage devices, or any backups).

Alice wrongly suggests that a limitation on discovery to the threshold issues raised by this motion is "premature at this stage," that "there is no need for the Court to rule on the proper scope of discovery in deciding this Motion," and that "the Court should make no determination regarding the scope of discovery in deciding this Motion." (Opp. Mem. at 17, 18, 20.) To the contrary, if there is to be any discovery at all relating to the motion, it is essential that it be narrowly circumscribed, to avoid unnecessary burden and expense, and as a matter of sound case management in keeping with substantial precedent. See, e.g., *Vivid Techs., Inc. v. Am. Sci. & Engr., Inc.*, 200 F.3d 795, 803-04 (Fed. Cir. 1999); *Singh v. S. Asian Soc'y of The George Washington Univ.*, 2007 U.S. Dist. LEXIS 36620, at *19-20 (D.D.C. May 21, 2007)

(Collyer, J.), and other cases cited in CLS Bank and CLS Services U.K.'s moving brief at pages 22-23.

Alice's argument that a limitation on initial discovery relating to the motion is inappropriate because CLS Bank "invoked the jurisdiction of this Court" (*see* Opp. Mem. at 17, 18), makes no sense, and is also contrary to caselaw. CLS Bank's invocation of this Court's jurisdiction, by instituting a declaratory judgment action for purposes of resolving this matter, does not in any way detract from the need for, or benefits of, limiting discovery to the issues raised by this threshold dispositive motion. Such limitations are common for such motions, even those brought by plaintiffs in declaratory judgment actions. In *Vivid Techs.*, for example, the plaintiff brought an action for declaratory judgment that it did not infringe the defendant's patents. 200 F.3d at 799, 800. At the *plaintiff's request*, the district stayed discovery during an initial phase of the proceeding, and the Federal Circuit approved of this action. *Id.* at 800-01, 803-04; *see also United States v. Wash. DOT*, 450 F. Supp. 2d 1207, 1214 (W.D. Wash. 2006) (granting declaratory judgment plaintiff's motion for a protective order to limit discovery); *accord Elegant Moments, Inc. v. Dimick*, 2006 U.S. Dist. LEXIS 64120, at *26-30 (M.D. Pa., Sept. 7, 2006).

Alice attempts to distinguish *Rotec Indus., Inc. v. Mitsubishi Corp.*, 36 F. Supp. 2d 810, 813 (C.D. Ill. 1998), *aff'd*, 215 F.3d 1246 (Fed. Cir. 2000) – in which the court limited discovery to the issue of whether an act of infringement was committed in the United States – on the ground that the discovery issue there was supposedly "simpler" because the products there were "discrete physical items." (*See* Opp. Mem. at 19.) Alice's proposed distinction is specious; the location of the CLS core system, which also involves discrete physical items, is no more difficult an issue for discovery than the product at issue in *Rotec*. Moreover, even if there were

some more complexity to the threshold discovery, that would hardly justify full discovery on non-threshold issues of the type sought here by Alice. Discovery, if it is to occur at all, should be narrowly and carefully tailored to the threshold issues that can dispose of the entire case.

## CONCLUSION

For all of the foregoing reasons, as well as those stated in CLS Bank and CLS Services U.K.'s Memorandum of Points and Authorities in Support of Their Motion dated September 12, 2007, the motion of CLS Bank and CLS Services U.K. to dismiss Alice's counterclaims, or in the alternative for summary judgment, should be granted.

Dated:  October 15, 2007

Respectfully submitted,

David O. Bickart (Bar # 355313)
KAYE SCHOLER LLP
901 Fifteenth Street, N.W.
Washington, DC  20005-2327
(202) 682-3503

William A. Tanenbaum (WT-9960)
Steven J. Glassman (SG-1616)
Stephen J. Elliott (SE-5437)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022-3598
(212) 836-8000

Counsel for CLS Bank and CLS Services U.K.