**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CLS BANK INTERNATIONAL, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 07-CV-00974-RMC |
| ALICE CORPORATION PTY. LTD., | ) |
| Defendant. | ) |
| ALICE CORPORATION PTY. LTD., | ) |
| Counterclaim-Plaintiff, | ) |
| v. | ) |
| CLS BANK INTERNATIONAL, | ) |
| Counterclaim-Defendant, | ) |
| and | ) |
| CLS SERVICES LTD., | ) |
| Counterclaim-Defendant. | ) |

**UPDATED JOINT REPORT PURSUANT TO FED. R. CIV. P. 26(f)**
**AND LOCAL CIVIL RULE 16.3(d)**

In view of the Court's Order dated January 2, 2008 relating to then-pending motions to dismiss, and this Court's Order for Initial Scheduling Conference dated January 7, 2008, CLS Bank International ("CLS Bank") and CLS Services Ltd. ("CLS Services UK") (collectively "CLS"), and Alice Corporation Pty. Ltd. ("Alice"), having held further meetings of counsel

31606530

pursuant to Fed. R. Civ. P. 26(f) and Local Civil Rule 16.3, respectfully submit this Updated

Joint Report of those meetings.

## I.    GENERAL DESCRIPTION OF THE CASE

This is an action brought by CLS Bank against Alice for a declaratory judgment of patent

non-infringement, invalidity and unenforceability under the U.S. Patent Laws, Title 35 U.S.C.

§ 100 *et seq.* Alice has filed counterclaims against CLS Bank and CLS Services UK alleging

patent infringement.

Alice is an Australian corporation which owns three U.S. patents:  U.S. Patent Nos.

5,970,479, 6,912,510 and 7,149,720 (collectively, the "Alice Patents").  CLS Bank is an "Edge

Act Corporation," organized under Section 25A of the Federal Reserve Act, as amended, and is

authorized by statute to engage in international banking activities.  CLS Services UK is a private

limited company organized under the laws of the United Kingdom and Wales, with offices in the

United Kingdom.

**CLS's Statement of the Case:**

In its Complaint, CLS Bank alleges that, through a contractual arrangement with CLS

Services UK, it provides a "continuous linked settlement service" to settle payment instructions

relating to underlying foreign exchange transactions for other banks (the "CLS Service").  The

CLS Service offered by CLS Bank utilizes computer hardware and software (the "CLS System").

CLS Bank alleges that the relevant components of the CLS System and the relevant steps of the

CLS Service, for purposes of evaluating allegations of infringement of the Alice patents, are

found in the United Kingdom.

In Count I of the Complaint, CLS Bank seeks a declaratory judgment of non-

infringement of the Alice Patents.  As a threshold matter, infringement of a U.S. patent can only

take place in the United States.  35 U.S.C. § 271(a).  CLS alleges that the components of the

computer system for settling instructions related to foreign exchange transactions that is the object of Alice's infringement counterclaims are located in the United Kingdom, and the elements of the accused process for settling instructions related to foreign exchange transactions utilizing the foregoing system are performed in the United Kingdom.  (See Complaint ¶¶ 11-12, 19-20.)  CLS contends that, on the basis of this threshold extraterritoriality issue, Alice does not have a viable claim of patent infringement.

CLS also contends that even if the accused CLS activity (i.e., the accused system or process) were found *in the United States*, CLS would still be entitled to a declaratory judgment of non-infringement.  This is because as an underlying substantive matter, and as further alleged in Count I of the Complaint, the manufacture, use, sale, or offer for sale of the CLS System, and CLS's activities with respect to the CLS Service, in any event have not infringed and do not infringe the claims of the Alice Patents.  (See Complaint, ¶¶ 21-22.)[1]

In Count II of the Complaint, CLS Bank further alleges that the Alice Patents are invalid for failure to comply with the conditions for patentability set forth in Title 35 of the United States Patent Code, including anticipation or obviousness, and indefiniteness of the claimed inventions.  (See Complaint ¶ 27.)

In Count III of the Complaint, CLS Bank also alleges that the Alice patents are unenforceable due to the inequitable conduct of Alice and/or the inventor of the Alice Patents. In particular, CLS Bank alleges that Alice and/or its inventor failed to disclose material prior art to the US Patent & Trademark Office ("PTO") during prosecution of the patent applications, including information known to them respecting the Swiss Interbank Clearing (SIC) system. Furthermore, Alice and/or the inventor sought to amend their patent claims during prosecution,

---

[1]    Alice's suggestion (at p. 6 below) that "CLS all but admits infringement that its system infringes Alice's patents " is absolutely untrue.

based on information they obtained concerning the CLS System and CLS Service, without

disclosing to the PTO that the subject matter sought in the proposed amendments was not

invented by Alice or its named inventor.  (See Complaint ¶¶ 31-33.)

**Alice's Statement of the Case:**

Alice is an innovator in financial markets.  It was founded in Melbourne, Australia in

1995.  The Company has applied for and obtained patents on its financial market innovations.

Alice is not a "patent troll," as CLS implies, but is a market development company and has been

for many years.  Alice's patent portfolio – which includes only the inventions of Alice's CEO,

Ian Shepherd – developed organically as the result of a multimillion dollar effort to bring to

market innovations that he conceived in the early 1990s.

Alice's patent portfolio includes three patents that address the exchange of an obligation

between third parties:  U.S. Patent No. 5,970,479, issued October 19, 1999 (the '479 Patent);

U.S. Patent No. 6,912,510, issued June 28, 2005 (the '510 Patent); and U.S. Patent No.

7,149,720, issued December 12, 2006 (the '720 Patent) ( the "Alice Patents").  The Alice Patents

include both "method" claims, *i.e.*, claims to a series of steps that constitute a process by which

obligations are exchanged between parties, and "system" claims, *i.e.*, claims to a data processing

system that enables the exchange of an obligation between parties.  The claims set out the details

of the inventive means by which parties can exchange an obligation where the exchange is

administered by a supervisory institution, eliminating the risk that one party to the exchange will

default before the other party performs.  By way of illustration only, the Alice Patents claim

systems and methods by which a supervisory institution maintains shadow accounts for each of

the parties to a foreign exchange transaction, ensures that both parties to the exchange have

sufficient funds in their respective shadow accounts, debits and credits the shadow accounts, the

debits and credits constituting irrevocable, time-invariant obligations on the parties' respective central bank accounts, thereby managing (and minimizing) the risk that one party to an exchange transaction might fail to honor its obligations after the counterparty had already performed.

CLS Bank was established in November 1999 as an Edge corporation under Section 25A of the United States Federal Reserve Act. As an Edge corporation, CLS Bank is supervised and regulated as a bank by the Federal Reserve and is permitted to engage in international banking activities. It is headquartered in New York and maintains an account with the Federal Reserve. CLS Services is a sister company to CLS Bank incorporated in the United Kingdom. CLS Bank and CLS Services are wholly owned subsidiaries of CLS Group (held through a shell corporation).

A simplified summary of CLS's "continuous linked settlement service," implemented through the CLS System and related processes that read on the Alice Patents, follows:

CLS Bank's primary business is to settle foreign exchange transactions. For each currency in which CLS Bank settles foreign exchange transactions, it maintains an account with the relevant central bank for the currency. "Settlement Members," the banks who are shareholders of CLS Group and have exclusive access to the CLS System, may submit payment instructions to the system at any time. The CLS System authenticates, validates, and matches the instructions before providing the matched instructions to CLS Bank for settlement. CLS Bank settles each payment instruction individually on its settlement date if the requisite funding obligations have been met.

Funding requirements are calculated on a multilaterally netted basis, taking into consideration all the Settlement Members' payment instructions for each currency scheduled for settlement on that date. Based on this information, CLS Bank issues instructions to each

Settlement Member at the beginning of each day requiring Settlement Members to make certain pay-ins to the CLS central bank accounts for each currency. CLS Bank maintains a multi-currency account for each Settlement Member that tracks the pay-ins made by settlement members to CLS's central bank accounts. Before settling a matched payment instruction, CLS Bank verifies that each Settlement Member's multi-currency account has sufficient funds to complete the transaction. Only then does CLS Bank make the appropriate debit and credit across each Settlement Member's multi-currency account.

Settlement of payment instructions of the Settlement Members across the books of CLS Bank, and funding between the Settlement Member and CLS Bank in central bank money, are final and irrevocable once the relevant accounts have been so debited and credited. CLS Bank makes Pay-Outs to each Settlement Member at the end of each day by issuing instructions to transfer funds from the CLS Bank's central bank accounts to the central bank accounts of the Settlement Members. Consequently, each Settlement Member will have a zero balance in its account, and CLS Bank will have no funds in its central bank accounts, at the end of each business day.

The CLS System infringes Alice's patents in violation of 35 U.S.C. § 271 *et seq.* Alice engaged in prolonged, and ultimately fruitless, negotiations with CLS to license its invention. CLS Bank filed this declaratory judgment action on May 24, 2007. Alice answered and counterclaimed for infringement against both CLS Bank and CLS Services.

CLS erroneously contends that it does not infringe the Alice Patents because the location of some of the physical components of the CLS System allegedly reside in the U.K. CLS all but admits that its system infringes Alice's patents, but claims that the location of the computer hardware and software places its infringement beyond the reach of U.S. patent law. CLS's

conception of location as the dispositive issue in this case is unsupported by law.  To take the most obvious example, the infringement of a system under Section 271(a) of the patent statute does not require that all components of the system be located in the United States.  *See NTP., Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1317 (Fed. Cir. 2005) (finding that the wireless Blackberry email devices infringed patent even though a component or step of the patented system—a relay tower in Canada—was located or performed abroad).  As the Federal Circuit explained when addressing this very question:

> The use of a claimed system under section 271(a) is the place at which the system as a whole is put into service, *i.e.*, the place where control of the system is exercised and beneficial use of the system obtained.

*Id.*; *see also id.* at 1316 ("[I]nfringement under section 271(a) is not necessarily precluded even though a component of a patented system is located outside the United States.").  The physical location of the components of a system is secondary to who controls the system and who enjoys the beneficial use of the system, which obviously needs to be developed in discovery.  As to infringement of a method under Section 271(a), it is far too early to accept CLS's unilateral construction of the claims of Alice's patents.  Indeed, there are particular characteristics of the CLS method that do not make conclusions about where it is performed obvious.  The scope of Alice's invention must be defined before the Court can accept CLS's unilateral assertion that Alice's patented method is performed abroad.

Nor is infringement limited to Section 271(a).  There are other sections, such as Section 271(f)(2) prohibits exporting a component of a patented invention that is "especially made or especially adapted for use in the invention…knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States…."  35

U.S.C. § 271(f)(2); *see also* 35 U.S.C. § 271(f)(1) (prohibiting supply of all or a substantial portion of the components of a patented invention in a manner that induces combination of components outside the United States in a manner that would result in infringement if combined within the United States). Likewise, Section 271(g) sets forth a basis for infringement that includes situations where the patented process is used abroad, but where the product made by the patented process is imported, sold or used within the United States.

These statutory provisions demonstrate that location is not dispositive, and that questions beyond the physical location of CLS's computer hardware and software must be answered before the question of infringement can be decided. That is why Alice, in opposing CLS's motion for summary judgment, sought discovery concerning the design, function, processes, ownership, control and beneficial use of the CLS System, in addition to the location of all of its physical components. These are some of the hallmarks of infringement and Alice is entitled, at a minimum, to a full and fair opportunity to conduct discovery on the question of infringement before any dispositive motion is decided. Having chosen to initiate litigation and seek a declaratory judgment, CLS should not now be heard to complain about having to litigate the status of the Alice Patents and whether CLS has infringed those patents.

## II. MOTIONS

There are no pending motions at this time.

At the outset of the case, Alice filed a motion to dismiss Count III of CLS Bank's Complaint on the ground, *inter alia*, that it fails to plead patent unenforceability due to inequitable conduct with specificity. CLS Bank and CLS Services UK filed a motion to dismiss, or alternatively for summary judgment, as to all counts of Alice's Counterclaims, on the ground that the counterclaims fail to state a claim or, alternatively, because neither CLS Bank nor CLS Services UK performs any accused activity within the United States that could possibly infringe

the Alice Patents.  On January 2, 2008, this Court issued an Order denying the motions and

stating that "[t]here are too many questions of fact for any decisions to be rendered at this point."

The Court's Order further stated:  "Together, the parties and the Court will address the scope of

discovery and how to litigate this case in a cost-effective way.  The case will be set for an Initial

Scheduling Conference by the Deputy Clerk of this Court."

## III.    STATEMENT PURSUANT TO LOCAL CIVIL RULE 16.3(d)

The parties have conferred and discussed the matters provided for in Federal Rule 26(f)

and Local Civil Rule 16.3(c), and disagree in a variety of areas regarding the scope and timing of

discovery.

**CLS's Position:**

**<u>Overview:</u>**  CLS Bank and CLS Services UK believe that in order to litigate this case in a

cost-effective way, the scope of initial discovery should be limited to the easily-resolved

threshold question of whether any system or method that Alice may allege to be infringing is

found only outside the United States, beyond the territorial reach of the U.S. patent laws.

Resolution of this issue would moot the rest of the case, and eliminate the need for costly

discovery on substantive patent infringement, patent validity, and enforceability issues raised by

the remaining pleadings in this case.

Infringement of a U.S. patent can only take place in the United States.  Discovery on the

threshold question of where the components of the allegedly infringing CLS system are located,

and where the steps of the allegedly infringing CLS Service are performed, would quickly

establish that the accused system and method are implemented through computer hardware and

software (the "CLS core system") located entirely outside the United States, beyond the

territorial reach of the U.S. patent laws.  CLS believes that discovery respecting the location of

the CLS System components, including "design, function[al] and process" documents which

show the location of system components, will be sufficient to resolve the extraterritoriality issue, as to both the system and method claims of the Alice Patents.

The Alice Patents' *system* claims cover an apparatus with specifically defined elements -- broadly, a "data storage unit" "coupled" to a "computer" configured to perform certain tasks. To the extent that CLS has equipment that could conceivably correspond to these elements, initial discovery will confirm that it is located entirely outside of the United States.[2]

Alice now suggests that location is not dispositive as to its system claims, supposedly because "infringement of a system under Section 271(a) of the patent statute does not require that all components of the system be located in the United States." (*See* p. 7 above). But the law is clear that there can be no infringement when *every* component of the accused system is located outside the United States. *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 1746, 1751 (2007) (it is "not an infringement to make or use a patented product outside of the United States" (quoting *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 527 (1972)); *see also id.* (no infringement was found in *Deepsouth* because the patented machine was "assembled and used outside the United States").[3] Since focused discovery would quickly establish that every component of the accused CLS system is located outside this country, location is indeed a dispositive issue.

---

[2]      In its opposition to CLS' previously-filed motion to dismiss, Alice claimed that there is a backup to the accused CLS system located in the United States, and that CLS's "prior public statements" support an inference that CLS Bank's facilities in New York are capable of settling trades and apparently serve as a backup to the core system." However, CLS believes that discovery into the location of CLS core system components, including possible backups, would quickly demonstrate that such a backup is not, and indeed cannot be, located in the United States.

[3]      Other cases support the same conclusion. *See* Plaintiff and Counterclaim-Defendants' Reply Memorandum in Support of their Motion to Dismiss the Counterclaims or, Alternatively, for Summary Judgment, at 9-13.

Alice's further suggestion that "who controls the system and who enjoys the beneficial use of the system" is important and needs to be developed in discovery (p. 7 above) completely overlooks the fact that those issues come into play only in cases where at least some component of the accused system is located in the United States.  *See, e.g.*, *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1315 (Fed. Cir. 2005) (the only case cited by Alice "involve[d] a system that is partly within and partly outside the United States").

Moreover, insofar as Alice may also assert its patented *method* claims, they are limited by the principle that a method patent cannot be used within the United States as required by Section 271(a) unless *each of the steps* is performed within the United States.  *NTP*, 418 F.3d at 1318 (finding of infringement of NTP's method claims was "precluded by the location of RIM's Relay" — which performed one element of the claimed methods — "in Canada").  Discovery will quickly confirm that *all* of the steps of the accused method are performed outside the United States.  Under these circumstances, infringement of the method claims under Section 271(a) cannot occur, regardless of the "ownership, control and beneficial use" of the system.

Perhaps recognizing the infirmity of its claims under Section 271(a), Alice now, for the first time, raises the possibility of infringement under export provisions of the patent statute, Section 271(f), as a basis for additional unfocused discovery.  (*See* pp. 7-8 above).  Alice's counterclaims did not even mention such a possibility.  *See* Counterclaim ¶¶ 23, 30, 37, 44, 51, 58 (alleging that "CLS Bank has committed acts of infringement by making, using, selling, and/or offering to sell products or services within the United States, or by importing products into the United States.").  Alice has no basis for asserting an export claim, and is simply seeking to engage in an unwarranted fishing expedition.  Alice's other attempt to expand discovery, by invoking Section 271(g) relating to the import of products made by a patented process, makes no

sense.  The accused CLS system does not produce any "products" that might be imported; it simply settles payment instructions relating to foreign exchange transactions.[4]

Accordingly, initial discovery focused on the location issue would be dispositive, and would be the most efficient way to proceed.  Moreover, Alice will not be prejudiced by initial discovery focused on the extraterritoriality issue, as such discovery would be needed in any event.  And even if the case were to survive resolution of this threshold issue, and a few witnesses needed to be deposed further on other issues, CLS would cooperate to make them readily available.

**Attempts to Reach Agreement on the Scope of Discovery  Respecting the Extraterritoriality Issue:**  Despite the fact that CLS believes that discovery directed to the location issue would quickly and efficiently resolve the entire case without inquiry into the "ownership, control and beneficial use" of the accused system, it has offered to provide Alice with discovery in these areas in order to reach an agreement regarding the scope of initial discovery.  In the discussions between the parties leading to this report, CLS Bank and CLS Services UK asked Alice to provide categories of documents it would seek relating to "ownership, control and beneficial use," as well as "design, function and process."  Alice asked for:

- Documents relating to the architecture and operation of the CLS Service, including documents describing the system, its location, software, hardware, setup and operation.

---

[4]     Focused initial discovery would still be beneficial and cost effective even if it simply limited the case to infringement under 271(f) or 271(g).  Any remaining discovery that might be needed to establish or negate the existence of such a claim would necessarily be very limited, given the particular requirements of those provisions.

- Documents relating to system backup and continuity, including documents describing backup systems and plans, as well as the processes and people use to provide business continuity for the CLS Service.

- Auditing documents, including documents describing the results of audits of the function and operation of the CLS Service.

- Documents showing the relationship among the various CLS entities, including agreements, board minutes, rules and annual reports, as well as emails and other materials indicating any informal relationship among these entities.

- Agreements between the CLS entities and important vendors and regulators.

- Agreements between CLS Bank and its members and users, as well as member handbooks and rules.

In order to reach an agreement, CLS Bank and CLS Services UK agreed to provide virtually *all* of the foregoing materials that Alice stated it would need to resolve the extraterritoriality issue.[5]  Moreover, CLS Bank and CLS Services UK agreed to provide these documents on a rolling basis, within 30-60 days, and to make witnesses on these issues available for deposition, if necessary, in the  ensuing 30-60 days, to resolve the extraterritoriality issue.  At that point, Alice changed its mind, purportedly because it felt the limits (based on its own requests) were "too abstract" and because it thought that the willingness of the CLS Bank and CLS Services UK to provide these materials over the next 30-60 days was "unrealistic."  Instead, Alice stated that it would not accept any limits on initial discovery, and would oppose any effort by CLS Bank or CLS services to limit initial discovery to the threshold extraterritoriality issue.

**Alice's Position:**

CLS now seeks through a scheduling order what it was denied in its motion.  CLS chose to bring this lawsuit.  Before a single document was exchanged in discovery, CLS immediately

---

[5]       CLS did not agree to provide historical documentation regarding the creation of the CLS System because such materials are likely to be voluminous, are difficult to retrieve, and are irrelevant to both location *and* control.

moved to dismiss Alice's counterclaims or, alternatively, for summary judgment as to Alice's counterclaims. At that time, CLS contended that discovery was unnecessary and touted an untested declaration from one of its employees as being dispositive of Alice's infringement claims. The Court correctly rejected CLS's motion and indicated that discovery should proceed.

Undaunted, CLS again returns to its mantra that the location of the components of the CLS System is the only relevant question in this case and that perfunctory discovery on topics of CLS's choosing will be sufficient. That mantra rests on a fundamental misunderstanding of patent law, as explained in Alice's Statement of the Case and discussed at length by the Federal Circuit. *See NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1317 (Fed. Cir. 2005) ("The use of a claimed system under section 271(a) is the place at which the system as a whole is put into service, *i.e.*, the place where control of the system is exercised and beneficial use of the system obtained."). CLS's formulation of the extraterritoriality issue as coextensive with the location of its various servers fails to recognize that the infringement depends on who exercises control over the patented system, who enjoys the overall beneficial use of the patented system, and where the patented system is, as a whole, put into use. CLS's reliance on *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 1746 (2007), is misplaced—it does not relate to a system controlled from the United States nor a system whose use benefits a U.S. corporation operating under the laws of the United States. Moreover, CLS's position also ignores other sections of 271, including (f) and (g).[6] Moreover, it rests on: (1) CLS's unilateral construction of the claims in

---

[6]  Alice's reference to 271(f) and 271(g) by no means reflects a lack of confidence in its claims under 271(a). Alice simply wishes to bring to the Court's attention the fact that CLS's inaccurate recitation of the legal issues presented by this case ignores other provisions of 35 U.S.C. § 271 that may be applicable, and to highlight the difficulty in artificially limiting discovery based on the unilateral assertion of a defendant. To the extent that CLS is arguing that Alice did not specifically allege infringement under Section 271(f), CLS ignores the express reference to infringement under "§ 271 *et seq.*"

Alice's patents; and (2) CLS's unilateral definition of the issue of infringement. Alice should be allowed to litigate this case as it would any other patent dispute.

CLS's return to its myopic focus on location inaccurately states the law. Truncating discovery in this case to the issue as framed by CLS would deny Alice a full and fair opportunity to litigate this case. Alice was thus compelled to bring the appropriate standard for determining infringement of a system under Section 271(a) to the Court's attention by citing *NTP, Inc. v. Research in Motion, Ltd.* CLS's inaccurate interpretation of that case and citation to inapposite case law in the preceding section is nothing more than a last-ditch attempt to relitigate its motion for summary judgment. Suffice it to say, this filing is neither the time nor the place to extensively brief the legal issues in this case. Alice will respond to CLS's legal arguments after it has had the opportunity to conduct full and fair discovery, and not now in response to CLS's unilateral and untested assertions regarding the CLS System.

CLS's recitation of the parties' discussions concerning discovery is as one-sided as it is inaccurate. Contrary to CLS's contention, Alice never "changed its mind" concerning the scope of discovery because it never agreed to CLS's unilateral demand to limit discovery to a topic of CLS's choosing. Alice repeatedly told CLS that it is opposed to bifurcating discovery because that will inevitably lengthen the discovery process, resulting in multiple depositions of many of the same witnesses and delaying the ultimate resolution of this case.

During the parties' discussions, Alice indicated that, in order to prove infringement, it intended to pursue discovery concerning at least the design, function, processes, ownership, control and beneficial use of the CLS System, in addition to the location of all of its physical components. CLS initiated the conference it describes above by asking Alice to give some

---

in paragraphs 23, 30, 37, 44, 51, and 58. To the extent those references are not clear enough, Alice can easily cure any deficit in the pleading by amending its counterclaims.

specific examples.  Alice provided several examples of the kind of discovery it expects to receive in this litigation.  For example, Alice informed CLS that it intends to request documents relating to the following topics:

- CLS System architecture, including location, design and operation of the hardware and software;

- CLS System back-ups and business continuity processes;

- The creation of the CLS System and its hardware and software;

- Audits of the CLS System regarding its functionality and operation;

- The relationship between CLS Bank / Services / Group with each other – not just contracts, but informal documents and emails evidencing the degree of control exercised by CLS Bank over the CLS System, including risk management, payment instructions, debits and credits, etc.;

- The relationship between CLS Bank / Services / Group with third parties, such as IBM, the Fed (and other central banks), SWIFT, AT&T, etc.; and

- The relationship and interaction between CLS Bank / Services / Group and Settlement Members who use the CLS System, including member handbooks, rules, agreements, board of directors minutes, annual reports, emails and other communications.

Despite Alice's explicit statement that these were only examples and were not exhaustive, CLS now contends that Alice's discovery should be artificially limited before a single discovery request has been exchanged.

CLS's proposed discovery schedule is neither cost-effective nor realistic and unfairly prejudices Alice's ability to prove infringement.  It is premised on the misguided notion that the location of a server is dispositive of Alice's infringement claims, when the question of infringement is more encompassing.  It is premised on a discovery schedule that can be measured in weeks or, at most, a few months.  And it is premised on providing limited categories of documents that do not go to the heart of ownership, control, and use of the CLS System.  If Alice is not permitted to conduct discovery into the core issues surrounding infringement—namely,

design, function, processes, ownership, control and beneficial use of the CLS System, in addition to the location of all of its physical components—then it will be severely prejudiced and justice will not be served. CLS's entire approach to this dispute begs a more fundamental question: if CLS was so concerned with the cost of litigation and the case so open and shut, why file a lawsuit in the first place?

The most efficient and cost-effective way to resolve this case is to conduct it no differently than any other patent dispute. Discovery should proceed; at the conclusion of the discovery period, the Court should then conduct a *Markman* hearing to construe the claims, address any dispositive motions, and move forward with a trial. That is the normal path for patent cases, and there is no reason to veer from that path in this case.

**A.     Areas of Agreement**

- The parties agree that the case should not be assigned to a magistrate judge for trial.

- The parties agree that settlement is unlikely at the present time and that the action would not benefit from ADR at this time. This case may benefit from ADR after discovery has been conducted.

- The parties agree that in order for discovery to go forward, a protective order will be necessary. The protective order will include a provision allowing the parties to request the return of inadvertently produced privileged documents. The parties will attempt to agree on a protective order prior to the February 21, 2008 hearing.

**B.     Areas of Disagreement**

**1.     The Scope of Initial Discovery**

**CLS's Position:** CLS Bank and CLS Services UK believe that this case is likely to be disposed of on the basis of the threshold issue concerning whether the components of the accused system are located in the United Kingdom, and whether the steps of the accused method are performed in the United Kingdom.

The scope of initial discovery should accordingly be limited to the threshold issue of whether any systems or methods that Alice may allege to be infringing are located outside of the United States, beyond the territorial reach of the U.S. patent laws. As a practical matter, initial discovery should be limited, at most, to the areas designated by Alice in the parties' meetings leading up to this report, as set forth at pages 12-13 above. This discovery can be performed, and the extraterritoriality issue resolved, relatively quickly. As pointed above (at p.12), Alice will not be prejudiced by focused initial discovery directed to the issue, because such discovery would be necessary in any event. But, because the extraterritoriality issue is likely to be dispositive, it would be more efficient and cost effective to resolve it early on.

Alice's change of heart and apparent rejection of a limit on initial discovery would result in a fishing expedition which is inappropriate and unnecessary to resolve the threshold issue presented by CLS Bank and CLS Services UK, and would waste the time and resources of the parties.

**Alice's Position:**

Having sued Alice, CLS again seeks to limit discovery to a topic of its choosing. Having lost its motion to dismiss or alternatively for summary judgment, CLS again refuses to recognize the reality that Alice has stated a claim for *patent infringement*. CLS should not be allowed to define Alice's counterclaims in a manner to its liking and limit discovery in this case to the issue as framed by CLS. Limiting discovery to a topic of CLS's choosing, where that topic is inaccurately defined by CLS, is fundamentally unfair. Nor would limiting discovery be cost effective. Should CLS's confidence in its position prove false, discovery would have to restart, witnesses would have to be re-deposed, and the case would not have progressed substantially from where its stands at the present moment. Further, CLS's repeated assertions that discovery

will be completed quickly confirms that CLS hopes to engage in only a perfunctory exercise that will deny Alice the ability to prove up its counterclaims by artificially limiting the scope of discovery. Alice does not believe that discovery should be phased or limited.

Should the Court be inclined to phase discovery, the threshold question is one of infringement. While the design, function, control, beneficial use and location of the CLS System and all of its components are part of that question, CLS should not be allowed to define the legal theories that Alice will assert to prove infringement by limiting Alice's access to discovery. CLS's contention that infringement hinges solely on the location of the servers and computers that run the CLS System is unsupported by the law. If there is any phasing of discovery, then the first issue to be considered is infringement, which is much broader than simply establishing the physical location of CLS's servers.

Again, Alice had no "change of heart." Alice strongly opposes any limitation on discovery based on the examples of the types of documents that it would request, which were provided in a good faith effort to address questions posed by counsel for CLS. CLS is now attempting to use the examples provided by Alice as a means to limit discovery to a topic of its choosing and the Court should reject this fundamentally unfair tactic. That Alice seeks to litigate this case as any other party involved in a patent dispute would does not provide a basis for CLS's cry of a "fishing expedition." If CLS did not want to litigate the question of its infringement and the status of Alice's patents, CLS should not have launched this boat by filing suit.

> **2.    Electronically Stored Information**

**CLS's Position:**

CLS Bank and CLS Services UK are abiding by, and will continue to abide by, their obligations with respect to the maintenance of electronic documents.

**Alice's Position:**

Alice intends to seek discovery of electronically stored information, including email and other documents and data stored on CLS computer systems.  Alice asks for the Court to order CLS to take steps to preserve all such electronically stored information during the pendency of this litigation.  Alice intends to seek the production of electronically stored information in native format.

> **3.**     **Deadline for Joinder, Amendment of Pleadings and Narrowing of Factual/Legal Issues**

**CLS's Position:**  CLS Bank and CLS Services UK believe that a deadline for amendment of pleadings should not be set at this time, as the parties cannot determine what, if any, issues may remain in the case until after completion of discovery on the extraterritorial issue.  The possibility of additional pleadings or parties will be affected by discovery, if any, on the patent validity and unenforceability issues, which should appropriately be deferred pending resolution of the threshold extraterritoriality issue.

**Alice's Position:**

Alice does not believe that the case should proceed any differently than a normal patent dispute.  As set out more fully in the schedule below, Alice proposes that any motion to join additional parties or amend the pleadings be filed no later than September 8, 2008.

> **4.**     **Initial Disclosures**

**CLS's Position:**  CLS Bank and CLS Services UK believe that initial disclosures should at this stage be limited to the issue raised by the scope of initial discovery -- namely, whether any systems or methods that Alice may allege to be infringing are located or performed in the United Kingdom, beyond the territorial reach of the U.S. patent laws.  CLS Bank and CLS Services are prepared to make this disclosure within one (1) week of the Rule 16 scheduling conference.

Alice states that it is "willing to comply with Rule 26(a)(1) and provide its [full] initial disclosures within two weeks." However, this gesture is effectively meaningless because Alice, which is essentially a patent holding company that does not make or use the systems or methods it has patented, has very limited documents and few if any employees to disclose beyond the named "inventor" in its patents.

**Alice's Position:**

Alice proposes that initial disclosures be exchanged no later than March 6, 2008. CLS, after suing Alice and alleging its patents were invalid and obtained through inequitable conduct, now complains that Alice will have an easier time complying with its obligations under Rule 26(a)(1) given the relative size of the companies. CLS should have thought about its burdens in discovery before it sued Alice.

5.      **Scope and Timing of Discovery**

**CLS's Position:** As noted above, CLS Bank and CLS Services UK believe that the scope of initial discovery should be directed to the threshold extraterritoriality issue, which is likely to dispose of the entire case. More specifically, the scope of initial discovery should be limited to (1) the location of the CLS System components which are alleged by Alice to infringe Alice's system patent claims, and (2) the place of performance of the CLS Service steps which are alleged by Alice to infringe Alice's method patent claims. As a practical matter, discovery should be limited, at most, to the areas designated by Alice in the parties' meetings leading up to this report, as set forth at pages 12-13 above.

CLS believes that this discovery can be completed in three (3) months. Initial disclosures directed to this issue can be served within 7 days (i.e., by February 28). CLS believes that it can begin to provide document discovery on all of the areas identified by Alice within 30 days thereafter (i.e., by March 30), and complete such document discovery 30 days after that (i.e., by

April 29).  Depositions, if required on this issue, can be completed 45-60 days thereafter (i.e., by

June 15 - June 30).  Briefing and resolution of this threshold issue can then be completed in short

order, given the parties' extensive understanding and prior briefing on the subject.  In the event

that the case is not mooted, an appropriate schedule for completion of further discovery can then

be established.

Alice proposes a discovery schedule that is neither cost-effective nor efficient when early

resolution of the threshold extraterritoriality issue could well dispose of this case in its entirety.

Alice's proposal would give it a year-long, unfocused fishing expedition without resolution of

any issues until late in 2009.  Moreover, the time periods proposed by Alice are not based on any

realistic assessment of the scope of full discovery into the issues of infringement, validity and

enforceability of the Alice patents.[7]  Finally, Alice's contention that claim construction is

generally required before a dispositive motion has no bearing on resolution of the

extraterritoriality issue here.  Even under the broadest possible reading of Alice's system claims -

- a data storage unit and coupled computer configured to settle transactions -- the only

conceivably corresponding CLS system is located entirely outside the United States.

Construction of the claim elements that define the exact configuration, while necessary to resolve

the ultimate issues of infringement and validity, is not required to resolve the extraterritoriality

issue.

CLS Bank and CLS Services UK respectfully submit that an extended discovery schedule

should only be discussed, if necessary, after discovery on and resolution of the threshold issue of

---

[7]     Alice wrongly states that CLS "refused" to discuss Alice's proposed schedule (*see* p. 25
below).  To the contrary, Alice changed its position on focused initial discovery at the
last minute (*see* p. 13 above) and only provided its latest schedule proposal the day before
this Report was due, without soliciting further discussion.

extraterritoriality, and that it should be focused on addressing whatever claims, if any, remain at that time.

**Alice's Position:**

Alice does not believe that discovery should be limited or phased in any way.  Alice opposes any limitation of discovery premised on the examples of the types of documents that Alice would request that were discussed with counsel for CLS.  CLS's attempt to take advantage of the good faith discussions between counsel regarding discovery should be rejected.

In any event, CLS's proposal to have a "three month" discovery period followed by briefing on the issues as it has defined them is highly unusual and unworkable.  For starters, even under CLS's optimistic timeline, it will be at least six months before the Court is even in a position to rule on a dispositive motion.  Given that infringement does not turn solely on the location of a server, but depends on a number of other factors, this litigation will be substantially delayed if discovery is bifurcated in the manner suggested by CLS.

Moreover, the proposal to file a dispositive motion before the claims have been construed by the Court is highly irregular.  The claims are the part of the patent that defines the invention and serve as the boundaries of the property right belonging to Alice.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).  In almost every patent suit filed in the United States today, claims are interpreted or "construed" by the Court after completion of discovery and before the court entertains dispositive motions.  Otherwise, the Court will be making a decision without a full understanding of the boundaries of the claimed invention.  CLS's proposal fails to take into account this basic aspect of patent litigation.  Alice thus proposes the following discovery schedule:

- Initial disclosures shall be exchanged on March 6, 2008.

- The parties will be permitted to serve discovery requests beginning on March 13, 2008.

- Any motion to join another party or to amend a pleading shall be filed and served no later than September 8, 2008.

- Fact discovery shall close on February 20, 2009.

- The parties shall meet and confer for the purpose of preparing a Joint Claim Construction statement no later than February 27, 2009.

- The parties shall file a Joint Claim Construction Statement no later than March 13, 2009.

- Rule 26(a)(2) expert disclosures as to matters which the proposing party bears the burden of proof shall be made on March 20, 2009.

- Rule 26(a)(2) expert disclosures as to all proposed expert witnesses not previously identified shall be made no later than April 20, 2009.

- Expert discovery, including depositions, shall close on May 20, 2009.

- The parties shall file and serve opening briefs with supporting evidence and identification of any proposed *Markman* hearing witnesses no later than June 19, 2009.

- The parties shall file and serve answering briefs with any supporting evidence and identification of any proposed *Markman* hearing witnesses no later than July 20, 2009.

- The parties shall file and serve reply briefs with any supporting evidence and identification of any proposed *Markman* hearing witnesses no later than August 3, 2009.

- A claim construction hearing shall occur on September 3, 2009 (and/or such other date as the Court may be available).

- Any dispositive motion shall be filed no later than 30 days after the Court's ruling on claim construction issues.

- The dates for trial, the pre-trial conference, exhibit lists and pre-trial briefing and motions shall be set at the time the Court rules on the dispositive motions filed by the parties.

Alice's proposed schedule is realistic and allows the parties to focus their efforts and resolve the case in a timely, cost-effective manner. CLS complains that Alice's schedule is "unfocused," does not take into account a "realistic" assessment of the full scope of discovery and repeats its invocation of the well-worn phrase "fishing expedition." CLS refused to engage in any discussions regarding a schedule that did not involve Alice's agreeing to CLS's unilateral demand that the issues be limited in a manner that pleased CLS. CLS should not be heard to complain regarding the schedule proposed by Alice when it refused discuss a realistic schedule and itself brought the litigation that has led to this discovery.[8]

Should the Court determine that the case should be phased in some manner, the limitations and time periods proposed by CLS are utterly unrealistic. CLS's contention that infringement hinges solely on the physical location of the servers and computers that run the CLS System is unsupported by the law. Alice would alternatively propose an eight-month period for fact and expert discovery on the issue of infringement. Seven days after the close of

---

[8]    CLS's assertion in footnote 7 that Alice "changed its position on focused initial discovery at the last minute" is simply untrue. Alice stated up front that it did not believe that the phasing of discovery was appropriate and never agreed to such a proposal. Alice merely attempted to respond in good faith to questions posed by counsel for CLS regarding the discovery Alice intended to seek.

discovery on the issue of infringement, Alice would provide CLS claim constructions of its choosing for the patents.  CLS would then file a dispositive motion on infringement based upon Alice's claim construction within thirty days.  Alice would then have thirty days to respond to CLS's motion and CLS would have ten days to file any reply.

### 6.  Expert Witness Reports and Information Pursuant to Rule 26(a)(2)

**CLS's Position:**  CLS Bank and CLS Services UK do not believe that expert discovery is needed on the threshold extraterritoriality issue in this case.  If the case continues and expert discovery on other issues (such as infringement, validity, and damages) becomes necessary, CLS Bank and CLS Services UK do not believe that the Rule 26(a)(2) requirements should be modified.

**Alice's Position:**

Given Alice's position regarding the schedule for this case, it does not believe that modification of the Rule is necessary at this time and proposes expert discovery as outlined above in its response to Part III.B.4.  Alice further disagrees with CLS's assertion that expert testimony is unnecessary to address the question of "extraterritoriality" as that term is inaccurately defined by CLS.  As noted above, the location of the server is not dispositive.  Expert testimony regarding, *inter alia*, the architecture of the CLS System, the software used by those systems, and the control, use and design of the systems will be required to address the threshold issue as defined by CLS.

### 7.  Bifurcation of Trial and/or Discovery

**CLS's Position:**  CLS Bank and CLS Services UK believe that discovery should be bifurcated and managed in phases.  First, initial discovery should only proceed on the threshold issue discussed above.  In the event that the case is not fully resolved based on the extraterritoriality issue, CLS Bank and CLS Services UK believe that trial and/or discovery

should be bifurcated or managed in additional stages -- first, in particular, on the substantive liability issues of patent infringement, patent validity and patent enforceability; and then, only if necessary, on damages and willful infringement.

**Alice's Position:**

Alice opposes bifurcation of discovery and trial. Litigating the case in the piecemeal fashion advocated by CLS is unworkable, inefficient and costly. CLS would have the parties repeatedly produce documents, depose witnesses, and engage experts, over an apparently indefinite period, as the issues in the case are taken up seriatim. Should the Court determine that phasing discovery in some way is appropriate, the threshold issue addressed should be infringement, not, as CLS would have it, the physical location of the computers that run the CLS System. Once the issue of infringement is decided, the case would proceed to trial on all other issues.

## IV.    OTHER MATTERS

At this time, the parties do not foresee other matters that need to be included in a scheduling order.

Dated: February 14, 2008

Respectfully submitted,

_____

David O. Bickart (Bar # 355313)
KAYE SCHOLER LLP
901 Fifteenth Street, N.W.
Washington, DC  20005-2327
(202) 682-3503

William A. Tanenbaum (WT-9960)
Steven J. Glassman (SG-1616)
Stephen J. Elliott (SE-5437)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022-3598
(212) 836-8000

*Counsel for CLS Bank International and
CLS Services Ltd.*

Respectfully submitted,

_____

Paul Martin Wolff (D.C. Bar No. 90217)
Bruce R. Genderson (D.C. Bar No. 961367)
Ryan T. Scarborough (D.C. Bar No. 466956)
M. Jesse Carlson (D.C. Bar No. 490196)
WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

_____

Mark F. Evens (D.C. Bar No. 343723)
STERNE, KESSLER, GOLDSTEIN & FOX
P.L.L.C.
1100 New York Avenue, N.W.
Washington, DC 20005
Telephone: (202) 371-2600
Facsimile: (202) 371-2540

*Counsel for Alice Corporation Pty. Ltd.*