IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLS BANK INTERNATIONAL,<br><br>   Plaintiff,<br><br>v.<br><br>ALICE CORPORATION PTY. LTD.,<br><br>   Defendant. | )<br>)<br>)<br>)<br>) Case No. 07-CV-00974-RMC<br>)<br>)<br>)<br>)<br>) |

**RESPONSE OF CLS TO ALICE'S MAY 19, 2008 MEMORANDUM ON SCOPE OF DISCOVERY CONCERNING CONTROL AND BENEFICIAL USE**

CLS respectfully submits this Response to Alice's Memo dated May 19, 2008 ("Alice's Memo") on the scope of discovery concerning "control and beneficial use." As discussed below, Alice distorts and ignores the meaning of *Renhcol v. Don Best Sports,* 2008 WL 1885522 (E.D. Tex. Apr. 28, 2008), which fully supports CLS' position on the limited scope of discovery during this phase of the litigation. In addition, Alice misstates the nature of its own system patent claims, which must establish the boundaries of permissible discovery here. Alice also inappropriately seeks to re-open discovery issues resolved by the Court.

**I. DISCOVERY ON "CONTROL AND BENEFICIAL USE" SHOULD BE LIMITED TO OPERATION OF COMPONENTS CORRESPONDING TO A CLAIMED ELEMENT OF THE PATENTED INVENTION.**

In CLS' May 19, 2008 Memorandum, we discussed the legal principles set forth in *NTP v. RIM*, 418 F.3d 1282, 1317-18 (Fed. Cir. 2005), *cert. denied*, 546 U.S. 1157 (2006), and in *Decca Ltd. v. U.S.*, 544 F.2d 1070, 1074-75 (Ct. Cl. 1976) (on which *RIM* relied), establishing that "control and beneficial use" of a system having both U.S. and foreign components can occur through operation in the U.S. of a component of the accused system corresponding to a claimed element of the patented invention.

31651974.DOC

Alice's Memo relies almost completely on the recent Texas District Court decision in *Renhcol,* but focuses only on a question raised there regarding location of the components, and completely ignores the overriding discovery implication of the case – namely that the scope of "control and beneficial use" discovery should be limited to the *operation of components of the accused system corresponding to a claimed element of the patented invention.*

As *Renhcol* noted, "[i]n *NTP*, the defendant's customers were users of a claimed system for transmitting messages because *they controlled the transmission of messages within the system by manipulating a system component.*" 2008 WL 1885522, at *3 (quoting *epicRealm v. Autoflex,* 492 F. Supp. 2d 608, 614-15 (E.D. Tex. 2007). *Renhcol* accordingly concluded that "the situs of use and the person who uses a device that allegedly infringes a claimed invention depends on *who controls the allegedly infringing characteristics of the accused device* and the location of that person" (citing *NTP v. RIM*, 418 F.3d 1317, and *epicRealm*, 492 F. Supp. 2d at 614-15). *Renhcol*, at *6. The Court found, respecting the facts of its case, that "*use* of the claimed computer storage medium . . . and the claimed programmed computer . . . *require control of the operation* of the accused computer and computer storage medium, *specifically control of the execution of the code located on the accused computer and computer storage medium.*" *Id.*[1]

Simply put, *Renhcol* fully supports CLS' position that discovery on "control and beneficial use" should be limited to facts concerning "control of the operation" of a computer system corresponding to the elements of Alice's system claims. See *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 344 (1961) ("if anything is settled in the patent law, it is that the combination patent covers only the totality of elements in the claim").

---

[1] The Court in *Renhcol* said control was achieved by "upload" and "download" of claimed "prediction information [to/from] the accused websites." *Renhcol*, at *6.

Instead of addressing the proper application of *Renhcol* to the discovery issues here, Alice focuses on a portion of the *Renhcol* decision which concludes that in certain circumstances there can be use in the U.S. of a computer system located entirely outside the U.S. (as opposed to a system having some U.S. and some non-U.S. components) – in particular, where U.S. consumers "control execution of the allegedly infringing computer storage medium's code." *Renhcol,* at *6. But *Renhcol*'s discussion about location is irrelevant to the current discovery dispute, as CLS has already agreed to produce documents respecting its system components and operations at *all* locations, whether in the U.S. or abroad.[2]

## II.  ALICE MISSTATES THE NATURE OF ITS PATENTED INVENTION

Alice misstates the scope of its system patent claims that are at issue, and focuses on matters that are *not* covered by those system claims.

Alice's system claims are limited to a computer system configured to (1) receive and manipulate account data and (2) generate an instruction based on that data. Alice sets forth an unsupported history of what its inventor "believed" was necessary to modernize central banks, his "idea" to develop "a hybrid financial instrument . . . to manage risk," that he "conceived an electronic settlement mechanism," and had an alleged purpose of overcoming "Herstatt risk" (Alice's Memo, pp. 4-6) – concerns not found in the patent claims at issue.

Significantly, Alice also asserts that "[i]n the Shepherd invention, the key to eliminating the risk is creating a *supervisory institution* to *execute the payments* between the parties"

---

[2]   CLS also submits that the "entirely outside the U.S." aspect of *Renhcol* may be limited to its unique facts, and is in any event inconsistent with the appellate decisions in *RIM*, and *Decca* – both of which based findings of use in the U.S. on control through operation of a U.S. component – and inconsistent as well with the presumption against extraterritorial application of the U.S. patent laws. See *Microsoft v. AT&T Corp.*, 127 S. Ct. 1746, 1751, 1758-59 (2007). However, resolution of this apparent inconsistency, on which further briefing would be required, is unnecessary at this juncture, since that issue is unrelated to the discovery issues currently before the Court.

(Alice's Memo, p. 6), and goes on to further discuss actions of the "*supervisory institution*" (*id*., p. 7). But Alice's *system patent claims* that are at issue here do not mention a "supervisory institution."[3]

The difference between what Alice now suggests, and what its system patent claims actually recite, is significant here – because the scope of discovery should be directed to "control and beneficial use" of the patented data processing system, rather than unpatented concepts involving the business of a "supervisory institution."

### III. ALICE INAPPROPRIATELY DISCUSSES DISCOVERY ISSUES WHICH HAVE PREVIOUSLY BEEN RESOLVED BY THE COURT, OR ARE NOT IN DISPUTE

Alice inappropriately raises various issues already resolved by the Court:

1. Addressing "The Discovery Necessary," Alice says it "has sought discovery related to the design and development of the CLS System" (Alice's Memo, p. 16) – but that issue was properly resolved at the discovery conference (May 7, 2008 Tr., pp. 3-4).

2. Alice's supposed need for "information related to ownership of the system prior to 2002 (the date the system became operational)" (Alice's Memo, p. 16) was also properly resolved (see May 7, 2008 Tr., pp. 27-29).

3. Seeking additional discovery, Alice now suggests that CLS is liable for actions of its Settlement Members/shareholders (Alice's Memo, p. 17) – an issue with which CLS strongly disagrees.[4] Thus, supposedly, "Alice should be allowed discovery regarding the location from which the CLS Settlement Members input foreign currency exchanges into the CLS System . . . , who signed the agreements with CLS . . . , and where the CLS Settlement Members received the payments from the CLS System." (Alice's Memo, p. 17.) Aside from the fact that the CLS System does not make payment to any party, these discovery issues (the subject of Alice's Document Request No. 10) were also resolved by the Court (May 7, 2008 Tr., pp. 22-24.)

---

[3] The only mention of a "supervisory institution" is in some of Alice's *method* claims; but the current discovery dispute relates to the "control and beneficial use" issue, which involves only the *system* claims. See *RIM*, 418 F.3d at 1317-18.

[4] If the Court wishes to address this, CLS requests the opportunity to separately brief it.

31651974.DOC                              4

4. Alice raises a question about discovery as to "how the system is marketed" (Alice's Memo, p. 18). This issue (covered by Alice's Document Request No. 18) was also resolved by the Court (May 7, 2008 Tr., pp. 36-37).

Alice also says that it "requires discovery to determine the types of commands that can be initiated in the United States and executed by the CLS System" including "by the IBM Command Center and CLS Business Operations Center in the United States." (Alice's Memo, p. 16.) But this type of information is not in dispute. CLS long ago agreed to provide it.

The open issues on which the Court requested assistance involved CLS Bank's involvement in, or oversight of, setting prices, adding new currencies to the CLS Service, adding new Settlement Members or User Members, and issues of regulation by the Federal Reserve Bank. (See May 7, 2008 Tr., pp. 16-19, 24-25, 35-36, 37, discussing Alice's Document Request Nos. 2, 11, 14, 20.) CLS' involvement and/or decision-making respecting these non-patented aspects of the CLS System or Service is irrelevant, and Alice's attempt to pursue such discovery should be denied. (See CLS' May 19, 2008 Memorandum, pp. 8-10.)

Dated: May 28, 2008

Respectfully submitted,

_____
David O. Bickart (Bar # 355313)
KAYE SCHOLER LLP
901 Fifteenth Street, N.W.
Washington, DC 20005-2327
(202) 682-3503

William A. Tanenbaum (WT-9960)
Steven J. Glassman (SG-1616)
Stephen J. Elliott (SE-5437)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022-3598
(212) 836-8000

Counsel for CLS Bank and CLS Services U.K.