IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLS BANK INTERNATIONAL, <br><br> Plaintiff, <br><br> v. <br><br> ALICE CORPORATION PTY. LTD., <br><br> Defendant. | Case No. 07-CV-00974-RMC |

### CLS RESPONSE TO ALICE'S MOTION TO PROVIDE CLS' CONFIDENTIAL INFORMATION TO KATHLEEN TYSON-QUAH

CLS submits this Response to Alice's Motion to Provide Highly Confidential Information to Alice's proposed expert, Kathleen Tyson-Quah. CLS' objection has two independent bases: (1) Tyson-Quah previously worked for CLS in connection with the design of the CLS System, and obtained confidential CLS information; and (2) Tyson-Quah sought to license CLS under her own patent, and is still involved in the prosecution of potentially competitive patent applications. CLS' concerns are exacerbated by Ms. Tyson-Quah's failure to disclose her prior work on the CLS project, in her CV submitted in this case. Surely Alice can find another expert, without a conflict of interest, who is not so tainted.[1]

### I.  TYSON-QUAH'S PRIOR WORK FOR CLS DISQUALIFIES HER FROM NOW OBTAINING AND USING CLS' PROTECTED INFORMATION

In light of Ms. Tyson-Quah's prior work for CLS, Alice's attempt to provide her with CLS Protected Information, in her proposed capacity as an expert for Alice, represents a conflict of interest and should not be permitted.

---

[1] Indeed, it is questionable whether Alice needs any expert at all during this phase of the litigation. The pending issues respecting the location and control of the CLS System are factually straightforward, and hardly require expert testimony. Moreover, the "control" question is essentially a legal issue. Ms. Tyson-Quah's alleged "expertise" relates more to substantive issues which may be addressed, if at all, in the later aspects of the case.

31719282.DOC                                       1

Tyson-Quah previously worked directly on the CLS project, both with CLS' founding group of banks, and for an IBM team which did substantial work with CLS in connection with the design and operation of the CLS System. She now concedes that she obtained CLS confidential information in connection with that work.

Tyson-Quah's CV, submitted in connection with Alice's designation of her as an expert to receive CLS Protected Information under the Protective Order, did not even mention her prior work on the CLS project. Subsequently, an independent investigation by CLS uncovered the website for Ms. Tyson-Quah's consulting firm, KTQ Consulting Ltd. (www.ktqc.com), which explicitly states:

> "Recent projects have included:
> • Bid process support and functional solution design for CLS Bank, including implications for participant risk management, credit management, correspondent banking arrangements, liquidity management and residual domestic payments processing."

(See Exhibit A hereto.)

After CLS brought Ms. Tyson-Quah's website to the attention of Alice's counsel in an August 22, 2008 objection letter (Exhibit B hereto), Alice submitted an affidavit which amplifies the problem. Tyson-Quah admits that in January 1997, she "acted as an independent consultant to the Group of Twenty, a predecessor group of banks who founded CLS, to review proposed CLS settlement arrangements." (Alice Memo, p.2.) She acted "in a personal capacity to the Group of Twenty, a predecessor group of banks who founded CLS, to advise them concerning settlement finality. [She] was engaged by Rob Close, who was then Group of Twenty Programme Director, to review proposed CLS settlement arrangements." (Tyson-Quah Aff., ¶ 9.)[2] Mr. Close is now the CEO of CLS Bank

---

[2] Whether and how CLS provides "settlement finality" has been raised by Alice as an issue relating to the substantive infringement of Alice's patent, and these questions may be directly at issue on the merits in this litigation.

31719282.DOC                                              2

Tyson-Quah was also engaged by IBM in 1998, first to consult in conjunction with IBM's response to a CLS Request for Proposal, "which proposed solution architecture and application functionality for the CLS System," subsequently to work on IBM's "functional requirements team," and then on "proprietary IBM offerings for banks integrating to CLS." (Alice Memo, p.2.) These "functional requirements" were embodied in confidential CLS Functional Requirements Specifications (FRS) that discuss system inputs, settlement instructions, risk management and other functions which still exist today, and which have been and will continue to be the subject of discovery in this litigation.[3]

Alice's memo proclaims that "anything that Ms. Tyson-Quah learned about the CLS System back in 1998 is indubitably stale given the passage of time." (Alice Memo, p.2.) But this assertion is contradicted by Tyson-Quah's website, which states that she herself considers her work for CLS Bank to be "recent." In any event, the information she obtained in the course of her work for CLS and IBM relates to key aspects of the CLS System that may be involved in this case, and her retention by Alice presents a clear conflict of interest.[4]

Surely, Alice can find an expert who did not have such a prior involvement with CLS.[5]

---

[3] In light of the 5-page limitation on submissions relating to the present motion (and notwithstanding Alice's submission of voluminous exhibits to supplement its 5-page memo), we have not attached confidential FRS documents. However, CLS is prepared to submit such documents to the Court, under seal, if it wishes to see them.

[4] CLS would also be prejudiced if Tyson-Quah serves as a testifying expert in this case. While Alice now minimizes the relevance of Tyson-Quah's work for CLS and IBM to this litigation, it will likely attempt to play up her supposed familiarity with the CLS system, and her status as a former employee, should she be permitted to testify.

[5] Ms. Tyson-Quah states that she complied with a provision in her agreement with IBM, which "required me to return or destroy CLS documents in my possession" and that she "do[es] not presently have any confidential information about CLS in [her] possession." (Tyson-Quah Aff. ¶11.) However, her destruction of confidential CLS documents hardly solves the problem here. Ms. Tyson-Quah cannot eliminate the previously obtained information from her mind. Moreover, while her 3-year contractual confidentiality obligation to *IBM* may have ended, but that does not alter the fact that Tyson-Quah

## II. TYSON-QUAH'S ATTEMPTED LICENSING, AND PROSECUTION, OF PATENTS SHE CLAIMS RELATE TO THE BUSINESS OF CLS PRECLUDES HER FROM OBTAINING ACCESS TO CLS PROTECTED INFORMATION

An independent ground for CLS' objection to Alice's designation of Tyson-Quah is that she has been and remains in a potentially adverse and competitive posture to CLS, due to both her recent request that CLS license her patent, and her pending patent applications. The risk of misuse of CLS' Protected Information, were she to have access under the Protective Order in this case, is far too great to permit such access.

Alice suggests that Tyson-Quah's patent and pending patent applications are irrelevant because, "as far as she knows," CLS does not infringe her patent claims, and because she has recently decided to auction her patent portfolio. Alice's arguments are misguided.

Tyson-Quah previously thought that her patent was close enough to CLS' business that CLS should take a license "as an adjunct to or improvement on the current CLS System." (See Tyson-Quah Aff., ¶ 16). Her statement that she "does not believe that the CLS System currently in use, which involves central clearing of obligations, infringes her *patent*" (Alice's Memo, p.4 and Tyson-Quah Aff., ¶ 17; emphasis added), misses the point. Ms. Tyson-Quah continues to prosecute patents purportedly involving the same technology as her issued patent, and she retains the ability to amend the claims in these applications to attempt to cover aspects of the CLS System.[6] Simply put, if Ms. Tyson-Quah is given access to CLS confidential information, there is an unacceptable risk to CLS that she may use that information to modify the coverage of her patent claims to the detriment of CLS.

---

received confidential information from *CLS*, or eliminate the conflict of interest presented by her proposed relationship with Alice in this litigation.

[6] A Patent Office list of Tyson-Quah's patent applications is attached hereto as Exhibit C.

31719282.DOC                                     4

Alice also incorrectly suggests that Tyson-Quah's patent and pending patent applications do not present a problem, because of "Ms. Tyson-Quah's decision in July 2008 to auction all her patents and applications. That auction will occur on October 29-30, 2008...." (See Alice's Memo, p.4.) The auction has not yet been held, it will not occur until at least the end of October (after she would have seen CLS' confidential information), and it may not be successful.

Moreover, even if Tyson-Quah were to successfully "auction" her patent portfolio, she would still be legally obligated, as the inventor, to assist the as yet unknown purchaser in the continued prosecution of the pending patent applications. She only states that, if the auction is successful, she "will no longer have any *financial interest* in this patent portfolio after October 30, 2008." (Tyson-Quah Aff., ¶ 19.) Her statement that she "understand[s]" that she may not use any confidential information that she received from this case "in connection with the prosecution of [her] applications" (*Id.*, ¶ 20), only underscores the fact that her involvement in the prosecution of those applications will continue.

For these reasons, including her manifest conflict of interest and adverse patent position, Ms. Tyson-Quah should not be given access to CLS' confidential information in this litigation. Alice should be required to look for and retain an expert that is not tainted.

Dated: September 3, 2008

Respectfully submitted,

/s/

David O. Bickart (Bar # 355313)
KAYE SCHOLER LLP
901 Fifteenth Street, N.W.
Washington, DC 20005-2327
(202) 682-3503

William A. Tanenbaum (WT-9960)
Steven J. Glassman (SG-1616)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022-3598
(212) 836-8000

Counsel for CLS Bank and CLS Services U.K.

# EXHIBIT A



# KTQ Consulting Ltd

KTQ Consulting Ltd is a specialist consultancy on global infrastructure for trading, clearing, payments, netting, settlement and collateralization in wholesale financial markets. KTQC works with banks and technology suppliers developing new technology solutions to ensure that they will achieve objectives for participation, liquidity, risk management, regulatory acceptance, technology transformation and other critical success factors.

Our principal consultant, Kathleen Tyson-Quah, has been innovating and supporting financial infrastructure using web-based technologies for more than 10 years. Prior to founding KTQC, she worked for Cedel (now Clearstream), the Securities and Investments Board (now the FSA) and the Federal Reserve Bank of New York. Our consultants are all professionals with significant experience designing and managing complex financial infrastructure projects.

The consultancy aims to make best use of web-based technologies and financial messaging standards in solution design to reduce the barriers to integration across the wide range of in-house applications, trading, payment and settlement systems which must interface efficiently for cost-effective operations.

Recent projects have included:

- Advising a global IT outsource services supplier on ASP/BSP architectures for financial transaction processing
- Bid process support for a global Tier 1 bank IT outsourcing aimed at rapid transformation and rationalisation of diverse legacy infrastructure and applications
- Workshop for a global IT services provider on evolving standards and infrastructure and the implications for banking technology
- Workshop for a Tier 1 bank IT department on industry data interchange standards and messaging for straight-through processing of derivatives transactions
- Adivising a global IT provider on solution design for the Global Straight Through Processing Association transaction flow manager
- Bid process support and functional solution design for CLS Bank, including implications for participant risk management, credit management, correspondent banking arrangements, liquidity management and residual domestic payments processing
- Advising a global foreign exchange trading system on alternatives for participant risk management
- Advising a global Tier 1 investment bank on trading systems and trade process rationalisation in commoditised markets
- Advising a global market data services supplier on strategic opportunities for integration of market data and trade processing services

**Please also see Granularity Ltd for projects in international payments and settlements infrastructure supported by our consulting team.**

Contact: ktq( at )ktqc.com or telephone +44 1923 859 566

# EXHIBIT B

# KAYE SCHOLER LLP

Steven J. Glassman
212 836-8651
Fax 212 836-6708
sglassman@kayescholer.com

425 Park Avenue
New York, New York 10022-3598
212 836-8000
Fax 212 836-8689
www.kayescholer.com

August 22, 2008

**VIA ELECTRONIC MAIL**

Stanley E. Fisher, Esq.
Williams & Connolly LLP
725 12th Street, NW
Washington, DC 20005

   Re: CLS Bank International v. Alice Corp.
      07-CV-0974 (RMC)

Dear Stan:

   I am responding to your email of August 15, 2008 to Stephen Elliott, in which you seek, on behalf of Alice Corp., to designate Kathleen Tyson-Quah as an expert to receive Highly Confidential and Confidential – Notice Required information under the Protective Order entered May 23, 2008.

   We hereby object, on behalf of CLS, to the foregoing designation. CLS' objection to Ms. Tyson-Quah having access to CLS' Protected Information is based on a number of important facts and issues which were not disclosed on Ms. Tyson-Quah's CV that you submitted to us.

   Ms. Tyson-Quah has previously worked both directly on the CLS project, and for an IBM team which bid for and obtained substantial work from CLS in connection with the design and operation of the CLS System. We have reason to believe that she obtained CLS confidential information in the course of this work, and is under obligations of confidentiality to CLS and/or IBM in this regard.

   Indeed, Ms. Tyson-Quah's CV states that she is the Founder and sole director of KTQ Consulting Ltd., and the website for KTQ Consulting Ltd. (www.ktqc.com) explicitly states:

> "Recent projects have included:
> - Bid process support and functional solution design for CLS Bank, including implications for participant risk management, credit management, correspondent banking arrangements, liquidity management and residual domestic payments processing."

31713277.DOC

NEW YORK CHICAGO LOS ANGELES WASHINGTON, D.C. WEST PALM BEACH FRANKFURT LONDON SHANGHAI

# KAYE SCHOLER LLP

Stanley Fisher, Esq.                                      2                                     August 22, 2008

        In light of the foregoing, the designation of Ms. Tyson-Quah as an expert for Alice presents a clear conflict of interest. We are surprised that this information was not disclosed on her CV, and that Alice has instead sought to designate her as an expert adverse to CLS in this litigation.

        In addition to the foregoing, Ms. Tyson-Quah has been and remains in a potentially adverse and competitive posture to CLS, due to her recent suggestions that CLS license one of her own patents, and due to her pending patent applications. For these additional reasons, Ms. Tyson-Quah cannot be permitted to have access to CLS' Protected Information. The risk of misuse of such information by Ms. Tyson-Quah is far too great to permit such disclosure. In this connection, you should be aware that in 2006, Ms. Tyson-Quah, in her role as Chief Executive of Granularity Ltd. which she founded, approached CLS and suggested that CLS take a license to her US Patent No. 7,283,977, which suggestion was rejected by CLS. Ms. Tyson-Quah also has at least four (4) patent applications currently pending which relate to the processing of foreign exchange and other payments-based transactions, and it would thus be inappropriate for her to now be provided access to CLS' Protected Information.

        While it is unfortunate that CLS must object to Alice's proposed designation of Ms. Tyson-Quah as an expert to receive CLS' Protected Information, surely Alice can obtain an expert in settlement and payment systems who has not worked for CLS or for IBM on a CLS project, who has not suggested that CLS license her patent, and who is not prosecuting patents in this area.

        In accordance with ¶ 20 of the Protective Order, and in view of our objection, no disclosure of Protected Information may be made to Ms. Tyson-Quah unless Alice seeks and obtains a contrary order of the Court. We hope that, in light of our objection and the foregoing discussion, Alice will not burden the Court with such an application.

                                                 Sincerely,

                                                 Steven J. Glassman

SJG/cag
cc:    Stephen J. Elliott, Esq.
        William A. Tanenbaum, Esq.

# EXHIBIT C

# US PATENT & TRADEMARK OFFICE
## PATENT APPLICATION FULL TEXT AND IMAGE DATABASE

[Help] [Home] [Boolean] [Manual] [Number] [PTDLs]
[Bottom] [View Shopping Cart]

*Searching PGPUB Production Database...*

**Results of Search in PGPUB Production Database for:**
**IN/tyson-quah**: 5 applications.
*Hits 1 through 5 out of 5*

[Jump To]

[Refine Search] IN/tyson-quah

| PUB. APP. NO. | Title |
|---|---|
| 1 20050015329 | System for reducing payment risk, liquidity risk and systematic risk in a system wherein a payment bank host application has a filter process module for processing payments instructions, and wherein a payment bank host application applies payments risk data as input parameters to said filter process module for automated evaluation of payments instructions with respect to accounts of users such that payments instructions breaching input parameters to said filter process module are rejected back to a payments processing queue for later re-evaluation in the absence of an override instruction |
| 2 20040236687 | System for reducing payments risk, liquidity risk and systemic risk associated with payments-based transactions wherein a filter process module in each payment bank host application is integrated with payments processing such that payments instructions are filtered for compliance using suspend payments instructions and payments risk parameters |
| 3 20040236677 | Computer-implemented method of reducing risk in a payment-based transaction wherein payment is made from an account holder to a counterparty using a payment bank system oprated by a payment bank and wherein a payment authorizing instruction is returned to payment queue for later re-evaluation in the event that the amount of payment authorized by said payment authorizing instruction exceeds the available balance |
| 4 20040230510 | Computer-implemented method of reducing risk in a payment-based transaction wherein payment is made from an account holder to a counterparty using a payment bank system employing a risk filter routine that determines whether to selectively reject payment based upon at least one user-supplied risk parameter including a clean payment limit |
| 5 20020152156 | Method of and system for mitigating risk associated with settling of foreign exchange and other payments-based transactions |

[Top] [View Shopping Cart]

| Help | Home | Boolean | Manual | Number | PTDLs |