**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CLS BANK INTERNATIONAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-CV-00974-RMC |
| | ) | |
| ALICE CORPORATION PTY. LTD., | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |
| | ) | |
| ALICE CORPORATION PTY. LTD., | ) | |
| | ) | |
| Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CLS BANK INTERNATIONAL, | ) | |
| | ) | |
| Counterclaim-Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CLS SERVICES LTD., | ) | |
| | ) | |
| Counterclaim-Defendant. | ) | |
| ——————————————— | ) | |

**ALICE CORPORATION PTY. LTD.'S REPLY MEMORANDUM**
**IN SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**
**AS TO PATENT-ELIGIBILITY**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................ 4

I.      THE SYSTEM CLAIMS OF THE '720 PATENT ARE PATENT-ELIGIBLE ................ 4

        A.      Before and After *Bilski*, Computer Systems Are Patent-Eligible "Machines." ...... 5

        B.      Alice Does Not Inappropriately Analyze Machines and Processes Differently ... 10

II.     THE METHOD CLAIMS OF THE '510 PATENT ARE PATENT-ELIGIBLE. ........... 14

        A.      The Claims of the '510 Patent Are "Tied to a Particular Machine." ................... 15

                1.      The "Meaningful Limit" Requirement Is Irrelevant Because Alice Does
                        Not Claim a Mathematical Algorithm. .................................................... 16

                2.      The "Electronically Adjusting" Limitation is "Meaningful." ................... 21

                3.      AT&T and Arrhythmia Continue to Demonstrate, Post-*Bilski*, that Alice's
                        Machine Is "Particular" Enough. ............................................................. 23

        B.      The Claims of the '510 Patent "Transform an Article." ....................................... 24

CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arrhythmia Research Tech., Inc. v. Corazonix Corp.*, 958 F.2d 1053 (Fed. Cir. 1992)......7, 23, 24

*AT&T Corp. v. Excel Commc'ns, Inc.*, 172 F.3d 1352 (Fed. Cir. 1999) ........................6, 7, 23, 24

*Cybersource Corp. v. Retail Decisions, Inc.*, No. C 04-03268 MHP, 2009 WL 815448
   (N.D. Cal. Mar. 27, 2009)...................................................................12, 13, 21, 25

*Diamond v. Diehr*, 450 U.S. 175 (1981)..............................................................13, 19

*Gottschalk v. Benson*, 409 U.S. 63, 70 (1972)..................................................... *passim*

*In re Abele*, 684 F.2d 902 (C.C.P.A. 1982) ..............................................................6, 25

*In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994) (en banc) .................................7, 9, 14, 20

*In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) (en banc)........................................ *passim*

*In re Comiskey*, 499 F.3d 1365 (Fed. Cir. 2007), *vacated*, 2009 U.S. App. LEXIS 400
   (Fed. Cir. Jan. 13, 2009) (order) (en banc) ...............................................7, 8, 9, 24

*In re Comiskey*, 554 F.3d 967 (Fed. Cir. 2009) ........................................7, 8, 9, 23, 24

*In re Ferguson*, 558 F.3d 1359 (Fed. Cir. 2009).........................................................9

*In re Grams*, 888 F.2d 835 (Fed. Cir. 1989) ..............................................................6

*In re Meyer*, 688 F.2d 789 (C.C.P.A. 1982) ..............................................................6

*In re Schrader*, 22 F.3d 290 (Fed. Cir. 1994) ......................................................6, 22

*Parker v. Flook*, 437 U.S. 584 (1978)............................................................. *passim*

*Preminger v. Sec'y of Veterans Affairs*, 517 F.3d 1299 (Fed. Cir. 2008)......................8

*State Street Bank & Trust Co. v. Signature Fin. Group, Inc.*, 149 F.3d 1368 (Fed. Cir.
   1998) ..................................................................................................... *passim*

## FEDERAL STATUTES

35 U.S.C. § 101................................................................................... *passim*

35 U.S.C. § 103.............................................................................................8

## INTRODUCTION

CLS asks this Court to become the first court *ever* to hold that a claim to a computer system is invalid under 35 U.S.C. § 101, on the grounds that the claimed computer is not a "particular machine." CLS's premise is that *In re Bilski* erased decades of Federal Circuit precedent, including the court's prior holdings that computer systems are patent-eligible "machines"—*i.e.*, that, as a threshold matter, they are the type of thing that can be patented (whether or not, in a particular case, they are novel and non-obvious enough to merit a patent). CLS vastly overstates the impact of *Bilski*, as both the *Bilski* opinion itself and subsequent Federal Circuit decisions illustrate.

*Bilski* held that purely abstract processes, unanchored to a "machine or transformation," cannot be patented. But in announcing that the "machine-or-transformation" test was definitive, *Bilski* did not change the well-settled law that a computer system is patent-eligible. So are processes implemented using a computer system, even when the computer system implements a business method. Thus, while *Bilski* rejected various prior articulations of the test for patent-eligibility—none of which Alice relies on—it reaffirmed the patent-eligibility determinations of the Federal Circuit's prior cases and took pains to explain how its test was consistent with them.

As the Court is aware, this case involves three separate patents; one to computer systems and two to methods. The parties' approaches to addressing these patents speak volumes. In both its opening brief and its reply, CLS begins with the two method patents, argues against their validity, and then tries to bootstrap that argument into a finding that the computer system patent also falls. Alice, by contrast, addresses the patents in the opposite order. That is no accident.

The system claims of the '720 patent do not present a close case. They claim a patent-eligible "machine," one of the four enumerated categories of patent-eligible inventions in 35

U.S.C. § 101.  *Bilski* does nothing to undermine the validity of the '720 patent's claims.  Indeed, *Bilski* did not address the patent-eligibility of "machines," but rather dealt with "processes," a separate statutory category.  But even if the Court were to apply the "machine-or-transformation" test of *Bilski* as CLS suggests, the claims of the '720 patent easily satisfy it.  A claim to a machine, like Alice's claims to computer systems, is obviously "tied to a particular machine"—the claim itself is to a particular machine configured to perform particular functions.

CLS does not engage Alice's system claims on their terms.  Rather, CLS assumes that Alice's **method** claims are not tied to a particular machine, and then reasons that Alice's **system** claims, which CLS posits implement the method claims, therefore must be ineligible as well. But in doing so, CLS ignores the express limitations of Alice's system claims, pretending that they are simply abstract process claims rewritten in system form.  To the contrary, the system claims require multiple structural elements of a machine such as a "data processing system," a "computer," and a "data storage unit."  Claims of this sort easily pass muster under *Bilski*, even assuming that it applies.

The method claims of the '479 and '510 patents present closer questions.  To understand why these claims are properly limited to computer implementations, the Court must construe a number of claim terms—an exercise best conducted in a later phase of this litigation, with the aid of expert testimony and a *Markman* hearing.  Therefore, Alice did not cross-move for summary judgment on the '479 patent during this preliminary phase.[1]

The '510 patent, however, is amenable to summary judgment in Alice's favor (even without considering other issues of claim construction) because the term "electronically" ties the

---

[1] Accordingly, the '479 patent is outside the scope of this reply memorandum, and Alice will not argue it further here.

method to a particular machine, even without construction of all the other claim terms. There is no serious dispute about what the term "electronically" means. Nor does CLS dispute that the term "electronically" limits at least three of four steps of the '510 claims to being carried out by an electronic machine. Rather, the parties' disagreement is about whether that is enough. CLS contends that the claims of the '510 patent are not tied to a sufficiently "particular" machine under *Bilski* because "electronically" does not "impose meaningful limits on the claim's scope." CLS Repl.[2] at 13. CLS misunderstands the law.

There is no freestanding requirement that a claim term impose a "meaningful limit" on a claim's scope. Rather, this concept arises only in a very narrow and specific circumstance. If a party's claim is to what the courts have termed a "fundamental principle"—such as gravity or the Pythagorean theorem—then the courts examine whether the use of a machine or transformation of an article imposes a "meaningful limit" on the claim to determine if the claim satisfies § 101. That is because, while one cannot obtain a patent on a fundamental principle itself, one can patent a process that makes use of a fundamental principle in a given way. Alice's claims here, however, do not claim a fundamental principle. The question of whether "electronically" imposes a "meaningful limit" on Alice's claims is thus completely irrelevant.

Alice is also entitled to summary judgment as to the '510 patent for a second, independent reason: it is uncontested that "electronically adjusting" an account effects a physical transformation of an electronic storage medium. This satisfies the "transformation" prong of *Bilski*.

---

[2] CLS's opening memorandum, Alice's opposition/cross-motion, and CLS's reply brief will be referred to herein as CLS Mem., Alice Mem., and CLS Repl., respectively.

CLS's arguments as to both the '720 and '510 patents revolve around two themes: first, that *Bilski* dramatically shrank the scope of patent-eligible subject matter, and second, that after *Bilski*, all claims involving mathematics or business methods must be "meaningfully limited" to remain patent-eligible. Because neither of these ideas is supported by *Bilski* or any other precedent, CLS's invalidity theories should be rejected.

## ARGUMENT

## I.  THE SYSTEM CLAIMS OF THE '720 PATENT ARE PATENT-ELIGIBLE.

CLS does not and cannot seriously dispute that prior to *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) (en banc), computer systems, such as the one claimed in the '720 patent, were patent-eligible subject matter, including computer systems that are configured to perform the steps of a business method (as in both this case and *State Street Bank & Trust Co. v. Signature Financial Group, Inc.*, 149 F.3d 1368 (Fed. Cir. 1998)). Rather, a recurring theme of CLS's brief is that *Bilski* somehow changed everything.

In support of this theme, CLS makes two basic arguments as to Alice's system claims. First, it argues that because *Bilski* rejected the § 101 tests applied by a number of prior Federal Circuit cases, including *State Street*, *Bilski* "eliminated the precedential value of these decisions on the issue of subject matter patentability." CLS Repl. at 23. But CLS exaggerates the effects of *Bilski* far beyond—and ultimately inconsistently with—the holding of the opinion itself and the more recent precedents. Second—relying, ironically, on the very cases of which *Bilski* allegedly "eliminated the precedential value"—CLS argues that the purportedly-sweeping change in § 101 doctrine applies equally to both processes and machines. CLS Repl. at 25–28. Under *Bilski*, CLS argues, Alice's method and system claims are equally unpatentable. Here, CLS has the principle right; the scope of § 101 is the same for processes and for machines.

Rather, CLS gets the facts wrong: it compares a system claim that explicitly recites a "data processing system," a "computer," and a "data storage unit" to method claims that do not.

> **A.     Before and After *Bilski*, Computer Systems Are Patent-Eligible "Machines."**

CLS argues that the Federal Circuit precedents that have upheld computer system claims indistinguishable from Alice's depended on whether the claimed machine "produces a useful, concrete, and tangible result," a test that *Bilski* rejected.  CLS Rep. at 22–23.  CLS further argues that because that test was rejected, those decisions no longer support Alice's contention that its computer systems are patent-eligible "machines."  But CLS's argument has three fatal flaws.

*First*, CLS overlooks the fact that ***Alice does not rely on the "useful, concrete, and tangible result" test***.  Alice cites that test nowhere in its opening brief.  The idea that Alice relies on the § 101 *analysis* that the Federal Circuit said, in *Bilski*, "should no longer be relied on," 545 F.3d at 960 & n.19, is a straw man.  Rather, Alice relies on the *holding* of those cases: that the computer systems at issue, which in *State Street*'s case were indistinguishable from Alice's claimed systems, are patent-eligible.  *See* Alice Mem. at 13–14, 21–22 (explaining the similarities between the claims in *State Street* and the claims of the '720 patent).

*Second*, CLS overlooks the fact that ***the Bilski court was careful to harmonize the "machine or transformation test" with existing precedent***.  The contrast between CLS's "*Bilski* changed everything" theme and the language of *Bilski* itself is striking.  CLS describes every relevant pre-*Bilski* case as "abrogated" and rejects all references to "pre-*Bilski* law."  *E.g.*, CLS Repl. at 23–24.  But the *Bilski* court used no such language.  Rather, it took pains to emphasize that the "machine-or-transformation" test was imposed by the Supreme Court in *Gottschalk v. Benson*—years before any of the cases that CLS now claims were "abrogated."  *See Bilski*, 545 F.3d at 954 (stating that "[t]he Supreme Court . . . enunciated a definitive test" and citing *Benson*, 409 U.S. 63, 70 (1972)).  The *Bilski* court then walked through its own precedents since

*Benson*, "turn[ing] to how [its] case law elaborates on the § 101 analysis set forth by the Supreme Court." *Id.* at 961. In each instance, it analyzed how the "machine-or-transformation" test explained and was consistent with its prior holdings. *E.g.*, *id.* at 961–65 (citing, explaining under the "machine-or-transformation" test, and reaffirming *In re Abele*, 684 F.2d 902 (C.C.P.A. 1982); *In re Meyer*, 688 F.2d 789 (C.C.P.A. 1982); *In re Grams*, 888 F.2d 835 (Fed. Cir. 1989); and *In re Schrader*, 22 F.3d 290 (Fed. Cir. 1994)).

Far from discarding pre-*Bilski* law, the Federal Circuit described its pre-*Bilski* precedents as containing "a wealth of detailed guidance and helpful examples on how to determine the patent-eligibility of process claims." *Bilski*, 545 F.3d at 958. *Bilski* reaffirmed and reanalyzed these precedents under the test it held to be "definitive." *See id.* at 954. In each instance, claims that were formerly patent-eligible remained so, and claims that were ineligible remained ineligible. What changed was the articulation of the test. For example, literally applied, the "useful, concrete, and tangible result" test would embrace claims that were never patent-eligible under Supreme Court precedent and had never been upheld by the Federal Circuit. The test was thus "insufficient." *Id.* at 959. Accordingly, the court held that "***those portions*** of our opinions in *State Street* and *AT&T* relying ***solely*** on a 'useful, concrete and tangible result' analysis should no longer be relied on." *Id.* at 960 n.19 (emphases added).

The fact that the Federal Circuit did not re-analyze cases such as *State Street* involving machines is explained by the simple observation that the claims in *Bilski* did not involve a machine, nor the "machine" prong of the "machine-or-transformation" test, at all. *Bilski*, 545 F.3d at 962 ("Applicants themselves admit that the language of claim 1 does not limit any process step to any specific machine or apparatus."); *id.* at 951 n.2 (recognizing that "machine" claims were not at issue); *id.* at 959 n.18 (recognizing that "[i]n *State Street* . . . we addressed a

6

claim drawn not to a process but to a *machine*").  Indeed, the court specifically saved this re-analysis of "machine" claims for "future cases."  *See id* at 962.  This is not, as CLS contends, CLS Repl. at 27, because *only* future cases, and not past ones, have precedential value, but because claims involving a "machine" were not at issue in *Bilski*, so any discussion of them would be dicta.  *See* 545 F.3d at 962 (saving for "future cases" "issues specific to the machine implementation part of the test" because they "are not before us today").  CLS asks this court to conclude that although *Bilski* harmonized the "transformation" prong of its analysis—the only prong at issue in *Bilski*—with existing law, it radically narrowed the scope of patent-eligible subject matter as to the "machine" prong, which was *not* at issue and which the court specifically declined to discuss.  Needless to say, this position is without merit.

> *Third*, **CLS's argument is inconsistent with the Federal Circuit's own post-Bilski cases**.

In *In re Comiskey*, 554 F.3d 967, 978–79 & n.14 (Fed. Cir. 2009) (*Comiskey II*), the Federal Circuit reinstated, with only minor revisions, a panel opinion regarding § 101 that it had issued before *Bilski* and that the en banc court subsequently vacated.  *See In re Comiskey*, 499 F.3d 1365 (Fed. Cir. 2007) (*Comiskey I*), *vacated*, 2009 U.S. App. LEXIS 400 (Fed. Cir. Jan. 13, 2009) (order) (en banc).  *Comiskey II*, in language unchanged from *Comiskey I*, favorably cited many of the cases that Alice relies upon and that CLS dismisses as "abrogated" and "pre-*Bilski*," including *State Street*, *AT&T Corp. v. Excel Communications, Inc.*, 172 F.3d 1352 (Fed. Cir. 1999), *In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994) (en banc), and *Arrhythmia Research Technology, Inc. v. Corazonix Corp.*, 958 F.2d 1053 (Fed. Cir. 1992).

CLS argues that the portions of *Comiskey II*—the opinion issued after *Bilski*—that were **not** "revised by the court in light of *Bilski* when it issued its second opinion" somehow represent "*pre*-Bilski law" and should be ignored.  CLS Repl. at 17.  But this is nonsense, for two reasons.

First, and most fundamentally, *Comiskey II*—as a whole, not just its revised portions—was entered as a post-*Bilski* opinion of the court.  It is therefore binding circuit precedent, regardless of what portions were revisions and what portions were reinstatements of a prior vacated opinion.  *See Preminger v. Sec'y of Veterans Affairs*, 517 F.3d 1299, 1309 (Fed. Cir. 2008) (stating that a "precedential decision on a point of law by a panel of this court is binding precedent and cannot be overruled or avoided unless or until the court sits *en banc*").  Second, *Comiskey II*'s few revisions to *Comiskey I* provide no reason to believe that *Comiskey I* was inconsistent with *Bilski* in any event.  Indeed, *Comiskey I* applied the "machine-or-transformation" test and was favorably discussed in *Bilski*.  *Bilski*, 545 F.3d at 960–61.  The primary change between *Comiskey I* and *Comiskey II* was the deletion of the former's holding that certain claims were obvious under 35 U.S.C. § 103; most of *Comiskey I*'s discussion of § 101 was reissued after *Bilski* without modification.[3]  The fact that the § 101 discussion was left essentially intact only emphasizes that *Bilski* did ***not*** cause major changes in the scope of § 101.  There is simply no merit to CLS's contention that any part of *Comiskey II* has been abrogated or can be ignored.

---

[3] The claims that were treated differently in *Comiskey I* and *Comiskey II* were claims styled as "system" claims that, unlike Alice's, did not recite a "computer," a "data storage unit," or any other hardware:  they recited only a "system" comprising a number of "module[s]."  *Comiskey II*, 554 F.3d at 971 n.3.  *Comiskey I* stated that these claims were statutory subject matter, but affirmed the PTO's determination that they were obvious under § 103.  *Comiskey I*, 499 F.3d at 1379–81.  *Comiskey II* avoided the thorny § 103 question, and instead remanded the claims to the PTO for consideration under § 101.  *Comiskey II*, 554 F.3d at 981.  It is likely that this decision had little to do with *Bilski*.  Because the Federal Circuit raised the issue of § 101 sua sponte, the PTO had never considered the § 101 issue at all, and the § 101 briefing directed by the Federal Circuit addressed the "system" claims only in passing.  Because the appellant was entitled to a remand (so he could amend his method claims) anyway, the court remanded the "system" claims to the PTO to consider § 101 for the first time.  Nothing in this procedural history or in *Comiskey II* indicates that Comiskey's system claims were not patent-eligible or that *Bilski* changed the relevant § 101 standards.

*In re Ferguson* also supports Alice's position.  In *Ferguson*—like *Comiskey II*, a binding, post-*Bilski* panel opinion—the Federal Circuit considered and rejected claims to an abstract method (which failed the "machine-or-transformation" test) as well as to a "paradigm." Consistently with *Bilski*, the *Ferguson* court recognized that *State Street Bank*'s "useful, concrete and tangible result" test for patent-eligibility is "inadequate."  *In re Ferguson*, 558 F.3d 1359, 1364 & n.3 (Fed. Cir. 2009).  *Ferguson*'s method claims, like those in *Comiskey* and *Bilski* (but unlike Alice's) were directed *only* to "organizing business or legal relationships" without the aid of any computer technology, and clearly failed the "machine-or-transformation" test—but, arguably, they would survive a "useful, concrete and tangible result" test if that were the correct and complete test.  *Id.* at 7.  In reaching its conclusion that Ferguson's claims were ineligible, the court emphasized that *State Street*, unlike *Comiskey*, *Bilski*, or *Ferguson*, but *like* the '720 patent, involved a "*machine*."[4]  *Id.* at 1365.  And *State Street*'s machine, according to the *Ferguson* court, was and is "patent-eligible."  *Id*.  This is the current state of Federal Circuit law after *Bilski*.

For these reasons, CLS's contention that *Bilski* rewrote the law of patent-eligibility, and rendered ineligible computer system claims like those in *State Street* and the '720 patent, is incorrect.  *Bilski* jettisoned certain prior formulations of a § 101 test, including the one in *State Street*, that were incomplete or unilluminating.  But *Bilski* did not overrule a single prior opinion in the sense that a patent claim upheld by a prior opinion would now be invalid.  Nor did *Bilski*

---

[4] Under *Bilski* and *Ferguson*, the way in which the "useful, concrete and tangible result" test is "inadequate" is that it allows abstract, non-machine claims.  A claim that is to a drawn to a machine *and* meets the "useful, concrete and tangible result" test will be drawn to a "particular machine" under *Bilski*.  This is because the configuration of a machine to yield a particular result ensures that the machine is "particular."  *See Ferguson*, 558 F.3d at 1365; *Alappat*, 33 F.3d at 1545; *cf. Benson*, 409 U.S. at 64 (finding ineligible claims that are not "limited to . . . any particular end use"); *see also supra* at 6.

9

impose any new particularity requirement on machine claims—it did not consider them at all.

As explained in Alice's opening brief, and not seriously challenged by CLS's reply, the claims of

the '720 patent are indistinguishable for § 101 purposes from the claims in *State Street*.[5] Just as

*Ferguson* made clear that the claims in *State Street* are still patent-eligible after *Bilski*, the claims

at issue here were patent-eligible before *Bilski*, and they remain patent-eligible today.

### B. Alice Does Not Inappropriately Analyze Machines and Processes Differently.

CLS next argues that the "particular machine" test is applicable to system claims, and

that Alice's system claims fail this test because they are "merely process claims redrafted to

recite a 'computer.'" CLS Repl. at 25–28. But contrary to CLS's assertions, Alice does not

dispute that the same principles apply to the patent-eligibility of "process" and "machine"

claims—if a patent claims only a fundamental principle or other ineligible category, it is invalid

no matter what form the claim takes. Alice Mem. at 22–23; *Benson*, 409 U.S. at 67–68. The

central problem with CLS's argument is that a process claim and a machine claim will only rise

or fall together if one is, in fact, a mere redrafting of the other—that is, if they have the same

limitations. CLS's method and system claims do not.

---

[5] In its reply, CLS fails to engage Alice's argument as to why Alice's claims are indistinguishable from those in *State Street*. CLS merely reiterates its argument that *State Street* involved "means plus function" claims. CLS Repl. at 24 n.12. But as argued in Alice's opening brief, CLS's argument ignores the fact that although a "means plus function" claim incorporates limitations from the patent specification by reference rather than reciting them explicitly in the claims, the *State Street* court specifically identified what hardware limitations were incorporated by reference and thus claimed. Alice Mem. at 21–22 (citing *State Street*, 149 F.3d at 1371–72). Those hardware limitations—a "personal computer including a CPU," a "data disk," and "arithmetic logic circuit[s]" configured to perform method steps—are indistinguishable from the express claim limitations of the '720 patent. *Id.* The technical details of how these limitations were drafted are irrelevant. Thus, even if CLS somehow were correct that "*Bilski* limited *State Street* to its facts," CLS Repl. at 24 n.12, this case presents materially indistinguishable facts.

The fallacy of CLS's argument becomes clearer if the claims of the '720 patent are compared to a hypothetical method claim that describes the same invention in "process" form. For example, the actual, "machine"-form claim 68 of the '720 patent reads as follows:

> 68. A **data processing system** to enable the exchange of an obligation between parties, the system comprising:
> **a data storage unit** having stored therein
> (a) information about a first account for a first party, independent from a second account maintained by a first exchange institution,
> (b) information about a third account for a second party, independent from a fourth account maintained by a second exchange institution; and
> **a computer, coupled to said data storage unit**, that is configured to
> (a) receive a transaction;
> (b) **electronically adjust** said first account and said third account in order to effect an exchange obligation arising from said transaction between said first party and said second party after ensuring that said first party and/or said second party have adequate value in said first account and/or said third account, respectively; and
> (c) generate an instruction . . . .

"[M]erely . . . redraft[ing]" this claim in the form of a process claim might yield something like the following hypothetical claim:

> [*nonexistent*]. A **method** for enabling the exchange of an obligation between parties using a **data processing system** comprising **a data storage unit** and **a computer, coupled to said data storage unit**, wherein:
> (a) **said computer** receives a transaction;
> (b) **said computer** **electronically adjusts**
> (1) a first account for a first party, independent from a second account maintained by a first exchange institution, and
> (2) a third account for a second party, independent from a fourth account maintained by a second exchange institution,
> where information about said first account and said third account is stored in **said data storage unit**, in order to effect an exchange obligation arising from said transaction between said first party and said second party after ensuring that said first party and/or said second party have adequate value in said first account and/or said third account, respectively; and
> (c) **said computer** generates an instruction . . . .

No one could seriously contend that this (nonexistent) method claim is not "tied to a particular machine." Every step of the method is performed by a specific machine component that is

recited in the claims.  It is similarly clear that the actual machine claims of the '720 patent are

patent-eligible.  It is simply not true that the system claims of the '720 patent are "mere

redraftings" of Alice's other patents; the '510 and '479 patents do not explicitly recite all the

same machine components in their claims (though as a matter of claim construction, which CLS

disputes, they should be interpreted to include similar limitations).  That the '510 and '479

claims are still patent-eligible, *see* Alice Mem. at 26–37, underscores that this is not a close case

as to the system claims of the '720 patent.

CLS faults Alice for failing to apply *Bilski*'s "particular machine" test to machine claims,

but as the above example illustrates, applying such a test to a claim that is *drawn to a machine* is

an essentially trivial exercise.[6]  Alice's "particular machine" is the system Alice claims.  In

contrast, a method claim that is *not* "tied to a particular machine" would be difficult or

impossible to rewrite as a "machine" claim without adding claim limitations, even if the

preamble of the claim, or a step representing "insignificant extra-solution activity," recited a

machine.

For example, post-*Bilski*, a district court invalidated claims to "[a] method for verifying

the validity of a credit card transaction over the Internet."  *Cybersource Corp. v. Retail

Decisions, Inc.*, No. C 04-03268 MHP, 2009 WL 815448, at *1 (N.D. Cal. Mar. 27, 2009).  No

step of this method recited or required the use of a machine.  *Id.* at *5.  Under these

circumstances, the preamble's recitation of "the Internet" merely limited an otherwise-

unpatentable claim to a general field of use, a limitation that courts (pre- and post-*Bilski*) have

---

[6] Nothing in *Bilski* suggests that the "machine-or-transformation" test can or should be applied to
any of the other three categories of statutory subject matter besides "process[es]."  After *Bilski*, a
coffee mug is still a patent-eligible "manufacture," and aspirin is still a patent-eligible
"composition of matter," even though neither involves a machine or a transformation.

consistently held to be insufficient to confer patent-eligibility.[7]  *See Parker v. Flook*, 437 U.S.
584, 594–97 (1978); *see also* Alice Mem. at 31–33 (explaining "field-of-use" doctrine).
Importantly, *Cybersource* did not involve an analogous system claim.  It could not have involved
such a claim, as it would be impossible to redraft its method claim as a claim to a computer
system without adding limitations.  Any system claim would necessarily recite one or more
system components, and would contain a new requirement that at least one of those components
be configured to carry out the steps of the method.  Such a requirement would have "tied" the
claims to the newly-claimed "particular machine."  *Cf. Cybersource*, 2009 WL 815448, at *5
(observing that method claim at issue "does not recite the use of a processor or computer at all"
and "[a] specific machine is n[ot] necessary for the method").

*    *    *

In its opening brief, Alice made four separate arguments as to why the computer system
of the '720 patent is clearly patent-eligible.  First, Federal Circuit precedent has consistently
upheld claims to computer systems.  Alice Mem. at 13–16 (citing, inter alia, *State Street Bank*).
Second, the claims of the '720 patent do not claim any fundamental principle such as
electromagnetism or the Pythagorean theorem, and thus do not give rise to any concern about
whether the claimed computer system is a sufficiently "meaningful limit" to avoid "preempting"
the principle.  Alice Mem. at 17–19 (citing *Benson*, *Flook*, and *Diamond v. Diehr*, 450 U.S. 175,
187 (1981)).  Third, the Federal Circuit has already resolved the question of whether a computer

---

[7] The *Cybersource* court held the claim to be unpatentable for the additional reason that it
construed "the Internet" to refer to an abstraction, rather than to any particular hardware.
*Cybersource*, 2009 WL 815448, at *6 (noting that the Internet remains the Internet "despite the
addition or subtraction of any particular piece of hardware").  This additional holding does not
change the analysis.  Indeed, it only serves to distinguish *Cybersource* from this case, as there is
no claim construction dispute in this case about whether "data storage unit," "computer,"
"electronically," etc., refer to abstractions rather than hardware.

13

system programmed to perform certain tasks is a "particular machine," and has concluded that it is. Alice Mem. at 19–22 (citing, inter alia, *In re Alappat*, 33 F.3d 1526, 1545 (Fed. Cir. 1994) (en banc)). Fourth, as discussed above, Alice's method and system claims have different limitations and must be analyzed independently. Alice Mem. at 22–25; *see supra* Part I.B.

Of these arguments, CLS engages only the first and the last in its discussion of the '720 patent, and only then by means of its "*Bilski* changed everything" theme. As to the first, it dismisses all the precedents as "abrogated." As to the last, it argues only that *Bilski* created a brand-new, stringent "particularity" requirement that the addition of explicit "data processing system," "computer," "data storage unit," "coupled," and "configured" limitations to the '720 patent fails to meet. But as discussed above, CLS offers no support for the idea that *Bilski* somehow overrules the Federal Circuit's precedents upholding claims to computer systems themselves, when *Bilski* did not address inventions involving machines at all (whether claimed in "process" or "machine" form). Still less does CLS explain where in *Bilski* it finds a new and unprecedented "particularity" requirement.

Accordingly, the '720 patent is patent-eligible; it does not even present a close case. Alice is therefore entitled to summary judgment as to the '720 patent.

## II.     THE METHOD CLAIMS OF THE '510 PATENT ARE PATENT-ELIGIBLE.

Alice is also entitled to summary judgment on the '510 patent, which requires in every claim that a record or account be "electronically adjusted."[8] This limitation meets both prongs of the *Bilski* "machine-or-transformation" test: the claims are "tied to a particular machine," and they "transform an article."

---

[8] Because the '720 patent shares this limitation, the arguments in this section also provide additional support for the patent-eligibility of the claims of the '720 patent.

## A.    The Claims of the '510 Patent Are "Tied to a Particular Machine."

If the primary theme of CLS's reply as to the '720 patent is "*Bilski* changed everything," its arguments as to the '510 patent focus on a second theme: "Alice claims a mathematical algorithm without meaningfully limiting its claim." This is a shift from CLS's opening brief. Although CLS has never disputed that a method performed "electronically" requires the use of a machine, CLS originally focused on an argument that the "electronically" limitation of the '510 patent "does not tie [the claims] to a *particular* machine." CLS Mem. at 22–23. In response, Alice showed that *Bilski* did not impose a new particularity requirement, that Alice's "electronic" machine is in any event "particular," and that Federal Circuit precedent compels the conclusion that a method implemented by an "electronic" machine is patent-eligible. Alice Mem. at 27–30. CLS does not engage these arguments. Instead, CLS reiterates its erroneous arguments that all pre-*Bilski* case law has been "abrogated." CLS Repl. at 15–19. And, for the first time, CLS equates two unrelated concepts by merging the "particular machine" discussion with *Bilski*'s statement that the use of a machine "must impose meaningful limits on the claim's scope." *Id.* at 13 (quoting *Bilski*, 545 F.3d at 961). *But see Bilski*, 545 F.3d at 961 (noting that "meaningful limit" doctrine applies to *both* prongs of "machine-or-transformation" test).

CLS misconstrues the "meaningful limit" doctrine. There is no freestanding requirement that a limitation be "meaningful" for a claim to be patent-eligible. Rather, the "meaningful limit" doctrine follows from the prohibition on claiming "fundamental principle[s]" such as mathematical algorithms, and from the requirement that in determining whether a claim is to a fundamental principle, courts must look to the claim "as a whole." *Flook*, 437 U.S. at 594. A claim that wholly "preempts" a fundamental principle—*i.e.*, covers "substantially all practical uses of that fundamental principle," in any context—will be unpatentable. *See Bilski*, 545 F.3d at 954. And even if a claim does not *literally* preempt a fundamental principle, if the claim *as a*

*whole* is still essentially a claim to the principle, its limitations will not be considered "meaningful" and the claim will still be unpatentable.  The two exceptional situations in which this may occur are if the limitation is (1) a mere statement that it will be used in a particular field, *see* Alice Mem. at 31–33 (discussing "field-of-use" doctrine), or (2) a tacked-on step that merely gathers data or records a solution, *see* Alice Mem. at 33–35 (discussing "insignificant extra-solution activity").

    The important point—which CLS completely ignores—is that the "meaningful limit" analysis ***only*** applies when the claim is to a mathematical algorithm or other fundamental principle.  The entire purpose of the "meaningful limit" doctrine is to determine ***whether the claim, as a whole, is to a fundamental principle even after a machine (or transformation) limitation is added***.  *See Bilski*, 545 F.3d at 952–53, 961.  In this case, Alice does not, contrary to CLS's repeated suggestion, claim a mathematical algorithm.  It is therefore irrelevant whether the claims' use of a machine imposes a "meaningful limit."[9]  Moreover, even assuming the "meaningful limit" analysis somehow applied to Alice's claims, they do not present either of the exceptional situations in which a claim limitation may fail to be "meaningful" even though it requires a machine: the "electronically" limitation is neither a "field-of-use" limitation nor "insignificant extra-solution activity."

    1.    **The "Meaningful Limit" Requirement Is Irrelevant Because Alice Does Not Claim a Mathematical Algorithm.**

    It is no accident that CLS repeatedly tries to emphasize the mathematical aspects of Alice's claims or that it argues that "the patented methods are directed to a mathematical algorithm."  CLS Repl. at 5.  This is because the requirement that a machine limitation impose a

---

[9] CLS does not argue that they are to a law of nature or natural phenomenon, the other two types of "fundamental principles."  *Bilski*, 545 F.3d at 952 n.5.

"meaningful limit" on the claim's scope only arises in cases like *Gottschalk v. Benson*, where the claim, taken as a whole, is directed to a method of calculating something. *See Bilski*, 545 F.3d at 961–62 (citing *Benson*, 409 U.S. at 70). In order to prevail, CLS has to show that ***even though they are implemented using a machine***, Alice's methods are to a fundamental principle. In other words, CLS must show that despite the undisputed limitations to an electronic machine, the "electronic" limitation is not "meaningful" because Alice's claims ***as a whole*** are directed to a pure mathematical algorithm. *See Flook*, 437 U.S. at 594.

The unpatentable mathematical algorithm claims to which CLS attempts to analogize Alice's methods involved steps that were directed ***solely*** to solving a mathematical problem. For example, in *Benson*, the Court considered a "data processing method for converting binary coded decimal number representations into binary number representations" comprising five purely mathematical steps:

> (1) testing each binary digit position '1' . . . ;
>
> (2) if a binary '0' is detected, repeating step (1) for the next least significant binary digit position . . . ;
>
> (3) if a binary '1' is detected, adding a binary '1' at the (i + 1)th and (i + 3)th least significant binary digit positions of the next lesser significant decimal digit representation . . . ;
>
> (4) . . . repeating steps (1) through (3) for the next lesser significant decimal digit representation . . . ; and
>
> (5) repeating steps (1) through (4) until the second least significant decimal digit representation has been so processed.

*Benson*, 409 U.S. at 74 (quotation marks omitted).[10] Similarly, the claim in *Flook* was to "[a] method for updating the value of at least one alarm limit . . . wherein said alarm limit has a

---

[10] *Benson* involved two independent claims with equivalent mathematical steps. The quoted claim 13 is illustrative.

current value of $B_0 + K$ . . . ," comprising:

> (1) Determining the present value of [a] process variable, said present value being defined as PVL;
>
> (2) Determining a new alarm base $B_1$ using the following equation:
> $B_1 = B_0(1.0 - F) + PVL(F)$ . . . ;
>
> (3) Determining an updated alarm limit which is defined as $B_1 + K$ ; and thereafter
>
> (4) Adjusting said alarm limit to said updated alarm limit value.

*Flook*, 437 U.S at 596–97 (quotation marks omitted).  In *Benson*, the method was not limited to

any particular purpose at all.  409 U.S. at 68.  In *Flook*, the only limitation to a particular

application was a recitation in the preamble of the claim that the algorithm was to be used "in a

process comprising the catalytic chemical conversion of hydrocarbons."  437 U.S. at 596

(quotation marks omitted).  But the Supreme Court held that this mere recitation did not salvage

the claim because the use of alarm limits in that field was "well known" and the claim "simply

provide[d] a new and presumably better method for calculating alarm limit values."  *Id.* at 594–

95.  Thus, in both cases the claims themselves were directed *only* to a mathematical algorithm.

Alice's claims, in contrast, are directed to achieving a particular purpose.  They do not

disclose, much less are they limited to, a method for performing a calculation.  As CLS

recognizes, Alice's claims make use of a mathematical algorithm in, at most, one step, which

requires a comparison between two values:  "determin[ing] . . . whether the transaction to be

settled will reduce the value of the parties' 'accounts' or 'shadow records' below a threshold

value."  CLS Repl. at 5.  Alice does not claim any particular algorithm for making this

determination; no formula or calculation is recited in the claims.  Indeed, a skilled person could

conceive many algorithms that would work to solve this comparison step, and none of them

would be preempted generally by Alice's claims.  Both *Benson* and *Flook*, in contrast, described

mathematical processes or methods for performing a calculation that the patent was attempting to preempt generally. *Flook*, 437 U.S. at 594–95; *Benson*, 409 U.S. at 74. At most, Alice's methods implicitly use an algorithm to accomplish the described method. But that does nothing to aid CLS. *Flook* makes clear that "a process is not unpatentable simply because it *contains* a . . . mathematical algorithm," which is the most that could be said about Alice's claims. *Id.* at 590 (emphasis added).

The fallacy of CLS's position is compounded by the fact that the comparison step in question, though undisputedly required, is merely a precondition to performing the step that accomplishes the stated purpose of Alice's method—"electronically adjusting said [accounts] ***in order to effect the exchange obligation***." '510 patent, claim 68 (emphasis added). Both the preamble to the claim and the specification make clear that the purpose of this claim is to effect the exchange obligation. *See, e.g.*, '510 patent, Abstract. The mathematical step is merely a tool to make sure that there are sufficient funds in the accounts to accomplish the purpose of exchanging the obligations. In order to cast Alice's method as "a mathematical algorithm," CLS attempts to categorize all the steps of Alice's methods as "gathering . . . data" or "'post solution' activity" that do not affect the patent-eligibility of the claim as a whole. CLS Repl. at 5 n.4. But CLS is arguing backwards from its own desired conclusion. By CLS's logic, *any* method that uses a mathematical algorithm would be unpatentable, because all the steps leading to the performance of the algorithm would constitute "gathering data" to be used in the algorithm, and any steps affected by the results of the algorithm would be "'post solution' activity." Such an analysis flies in the face of clear Supreme Court precedent that a method may be patentable even though it makes use of a mathematical algorithm, so long as the claim "as a whole" is directed to a process for achieving a particular purpose rather than to the algorithm. *Diehr*, 450 U.S. at 185–

88; *see also Flook*, 437 U.S. at 590, 593; *Alappat*, 33 F.3d at 1543 ("It is . . . not necessary to

determine whether a claim contains, as merely a part of the whole, any mathematical subject

matter which standing alone would not be entitled to patent protection.").

      For these reasons, CLS is mistaken when it argues that whether Alice's method claims

are patent-eligible depends on "whether 'in practical effect' the claim preempts every 'practical

application' of the method."  CLS Repl. at 13.  ***There is no general requirement that a claim***

***cover fewer than all "practical applications" of a method.***  Indeed, ***most*** commercially-viable

patents preempt every practical application of the inventions that they claim—that is the purpose

of patent protection.  Rather, the prohibition on claims that preempt every practical application of

a method, which arises from *Benson*, applies only to claims, like those in *Benson*, that are drawn

to ***a fundamental principle***.  The concern, as *Benson* makes clear, is with claims that attempt to

cover every practical use, *for any purpose*, of a mathematical algorithm or law of nature.  *See*

*Benson*, 409 U.S. at 68 (observing that "[h]ere the 'process' claim is so abstract and sweeping as

to cover both known and unknown uses" of the method).  In contrast, Alice is not claiming every

practical use of any algorithm.  Rather, Alice claims all practical uses of the particular steps of a

method for exchanging obligations in a particular way—a concrete application of computer

technology to the solution of a specific business problem.  *See id.* at 67 (endorsing patent-

eligibility of "application" of fundamental principle to "new and useful end" (quotation marks

omitted)); *see also Bilski*, 545 F.3d at 960 (reaffirming that business methods are patent-eligible

if they meet the "machine-or-transformation" test).  The only purportedly mathematical step that

CLS identifies in Alice's claim is a comparison between two numbers (the value of a party's

account and a "threshold value," *see* CLS Repl. at 5), and such a comparison could have

applicability in any number of contexts not covered by Alice's claims.

## 2. The "Electronically Adjusting" Limitation is "Meaningful."

As discussed above, the requirement that the use of a machine impose a "meaningful limit" does not apply to Alice's "electronically adjusting" limitation because the claim as a whole is not to a mathematical algorithm. Even if the requirement somehow did apply, however, it is undisputed that Alice's method claims are limited to a machine and do not literally preempt any fundamental principle. *See* CLS Repl. at 13–14. Thus, "electronically adjusting" would fail to be "meaningful" only if it were a "field-of-use" limitation or if it represented "insignificant extra-solution activity." *See Bilski*, 545 F.3d at 957, 961. It is neither.

*First*, CLS argues that Alice's claims are "'limited' to obligations that are to be exchanged electronically," and this limitation is broader than "field-of-use" limitations that have been rejected by courts. CLS Repl. at 19–20 (citing *Cybersource*, 2009 WL 815448, at *9). CLS misses the point. Even if the "field-of-use" doctrine were applicable, "electronically" is not a "field-of-use" limitation at all. It describes *how* accounts are to be adjusted—that is, what the method is—which says nothing about the field in which the method is to be used. Thus, the "electronically" limitation is not a "field-of-use" limitation in the sense used in the case law, whether or not it incidentally limits the claim to the (somewhat artificial) field of "obligations exchanged electronically." Put another way, the limitation does not simply state that the method is to be used in a particular field; rather, it specifies how the method (which is already limited to exchanging obligations) is to be performed—*i.e.*, by an electronic machine.

*Second*, **"electronically adjusting" is not insignificant extra-solution activity**. This argument is a reprise of the argument that CLS first used in an effort to show that Alice's methods are merely mathematical algorithms: CLS argues that "electronically adjusting" accounts is "merely insignificant post-solution activity." CLS Repl. at 20–21. But as discussed above, because Alice's claim as a whole is not to a mathematical algorithm, the doctrine does not

apply—there is no "solution" to record.  Even if it did apply, CLS cannot simply label parts of Alice's method as "algorithm" and "post-solution activity" however it finds convenient.  To the contrary, the Alice's claims explicitly label "electronically adjusting" as the step that "effect[s] the exchange obligation," which the preamble makes clear is the entire purpose of the claim. '510 patent, claim 68; *see supra* Part II.A.1.  The "electronically adjusting" limitation is no mere recordation step.  *See* Alice Mem. at 33–35; *cf. In re Schrader*, 22 F.3d 290, 294 (Fed. Cir. 1994) (finding mere recordation step where result of algorithm for calculating winning bid was "enter[ed]" in a "record").

Thus, CLS mischaracterizes Alice's argument about "post-solution activity."  It is not Alice's position, as CLS claims, that the reason why "electronically adjusting" is not post-solution activity is that electronic adjustment of an account or record is required by the method. CLS Repl. at 21 (citing cases that find insignificant post-solution activity even though a recordation step is required by the claims).  The reason is that it does not merely record the result of a calculation of how accounts should be adjusted.  To the contrary, the "electronically adjusting" step is what accomplishes the stated purpose of the method—to exchange obligations.

CLS's arguments about how "critical" a limitation "electronically" is misapprehend what it means for a limitation to be "insignificant."  *See id.*  It is true, as CLS observes, that "electronically" was added to the claims during prosecution.  *Id*. at 12, 21.  But Alice's method claims have *always* been directed to a computer-based implementation; Alice merely added "electronically," at the examiner's request, to make this explicit.  *See* CLS Ex. 5, Amend. and Reply Under 37 C.F.R. § 1.111, at 22 (Oct. 31, 2003).  Moreover, whether a limitation was originally in the claim or is important to the patentee has no relevance to whether it is "insignificant."  Rather, the inquiry is about what the claim as a whole, including the limitation,

22

covers: is it essentially just an algorithm with some insignificant added activity (and thus invalid), or is it a method for accomplishing some task that uses an algorithm (and thus patent-eligible)?  *See Bilski*, 545 F.3d at 957.  Here, the claim is not directed to an algorithm at all. Whether the word "electronically" was added to the claims during prosecution or is a "critical limitation" is thus simply inapposite.

CLS also argues that steps of the methods in *Bilski* and *Comiskey*, which were held unpatentable, are akin to the "electronically adjusting" step that Alice points to.  CLS Repl. 21–22.  But the method steps that CLS cites from these cases are simply irrelevant because, unlike the steps of Alice's method, there was no argument in either of these cases that any step was performed electronically or using a machine.  *Bilski*, 545 F.3d at 962; *Comiskey II*, 554 F.3d at 981.  That—not the fact that the cited steps were "post-solution"—is why they did not confer patent-eligibility on the claims.

### 3.    AT&T and Arrhythmia Continue to Demonstrate, Post-*Bilski*, that Alice's Machine Is "Particular" Enough.

The conclusion that a method is patent-eligible when it is implemented electronically is not a new one.  *See AT&T Corp. v. Excel Commc'ns, Inc.*, 172 F.3d at 1361.  As it does with Alice's system claims, however, CLS attempts to dismiss all pre-*Bilski* precedents as having been "abrogated" by *Bilski*.  CLS Repl. at 15–19; *see supra* Part I.A.  In particular, CLS dismisses *AT&T* and *Arrhythmia Research Technology, Inc. v. Corazonix Corp.*, 958 F.2d at 1053, as having relied on § 101 analyses that *Bilski* overruled.  But, again, Alice does not rely on § 101 tests that "should no longer be relied on."  *See Bilski*, 545 F.3d at 959–60 & nn.17, 19. Rather, the import of *AT&T* and *Arrhythmia* is that the methods they discussed remain patent-eligible post-*Bilski*.  Alice Mem. at 27–28; *see Comiskey II*, 554 F.3d at 979 n.14 (reaffirming *AT&T* and *Arrhythmia*).  CLS has not explained, and cannot explain, how the methods of *AT&T*

and *Arrhythmia* are tied to "particular" enough machines to survive *Bilski*, while Alice's methods somehow fail.

Moreover, CLS's argument that *AT&T* and *Arrhythmia* have not been reaffirmed post-*Bilski* is erroneous. As discussed above, *see supra* Part I.A, CLS relies on the unprecedented theory that because the relevant portions of *Comiskey II* were not revised when the decision was re-entered after *Bilski*, they represent only "*pre*-Bilski law." CLS Repl. at 17. But, of course, this is wrong—if anything, the fact that the decision was re-entered after *Bilski* with only minor revisions only shows that the "pre-*Bilski*" law applied by *Comiskey I* did not differ markedly from the "post-*Bilski*" law of *Comiskey II*.

### B.  The Claims of the '510 Patent "Transform an Article."

As discussed in Alice's opening brief, the claims of the '510 patent satisfy the "machine-or-transformation" test of *Bilski* under its second prong, too: they electronically transform a data storage medium, which is sufficient for them to independently meet the "transformation" prong of the test. Alice Mem. at 36. CLS mischaracterizes Alice's "transformation" argument in two basic ways.

*First*, CLS argues that the *Bilski* court rejected a "physical steps" test for patent-eligible subject matter, and claims that Alice's transformation argument merely resurrects this test. CLS Repl. at 10, 11–12. But Alice does not argue that merely performing a step "electronically" meets the "transformation" test.[11] Rather, one *result* of Alice's method is that an electronic data storage unit—on which "accounts" are electronically "maintained"—has changed electromagnetic state. CITE This does not merely reflect the recordation of a result or the

---

[11] It *does* meet the "machine" test insofar as an "electronic" step requires an "electronic" machine.

storing of data as "necessarily occurs in any manipulation of such data." CLS Repl. at 13. To the contrary, the claimed exchange of obligations occurs, and is reflected physically, when accounts are "electronically adjusted." The "adjustment" step specifically claims a physical transformation as the result of the method, which is what *Bilski* requires. *Bilski*, 545 F.3d at 962–64.

*Second*, CLS argues that unlike in *Abele*, Alice's data do not represent a physical object. Repl. at 10–11. But Alice has never made the argument that they do. Under *Abele*, as reaffirmed by *Bilski*, a transformation of *abstract* data can meet the "transformation" prong if the data represent something physical. *Bilski*, 545 F.3d at 962–63 (citing *Abele*, 684 F.2d at 908–09); *cf. Cybersource*, 2009 WL 815448, at *4 (holding that transformation of data representing credit card accounts—without any claimed physical effects of that transformation—does not meet *Bilski*'s "transformation" prong because credit card accounts are not physical (quotation marks omitted)). But Alice does not rely on the transformation of "data" in the abstract. Rather, Alice relies on the fact that, as implemented in a method requiring "electronic adjustment" of accounts, changes to data correspond physically to an electronic change in a storage medium.

Accordingly, Alice is entitled to summary judgment that the claims of the '510 patent (and of the '720 patent, which also requires that adjustments be performed "electronically") are patent-eligible, for the additional and independent reason that they meet the "transformation" prong of *Bilski*.

## CONCLUSION

For the foregoing reasons, Alice's Cross-Motion for Partial Summary Judgment that all claims of the '510 and '720 patents are directed to patent-eligible subject matter should be granted.

Dated:  May 19, 2009                    Respectfully submitted,

                                        WILLIAMS & CONNOLLY LLP


                                        ___/s/ David M. Krinsky_____
                                        Paul Martin Wolff (D.C. Bar No. 90217)
                                        Bruce R. Genderson (D.C. Bar No. 961367)
                                        Ryan T. Scarborough (D.C. Bar No. 466956)
                                        M. Jesse Carlson (D.C. Bar No. 490196)
                                        Stanley E. Fisher (D.C. Bar No. 498540)
                                        David M. Krinsky (D.C. Bar No. 978190)

                                        725 Twelfth Street, N.W.
                                        Washington, DC  20005
                                        Telephone: (202) 434-5000
                                        Facsimile: (202) 434-5029

                                        *Counsel for Defendant / Counterclaim-Plaintiff*
                                        *Alice Corporation Pty. Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of May, 2009, a copy of DEFENDANT ALICE CORPORATION PTY. LTD.'S REPLY MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PATENT-ELIGIBILITY, was served upon the following by electronic means through ECF:

Steven J. Glassman
Stephen J. Elliott
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022


        /s/ David M. Krinsky
        David M. Krinsky