**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CLS BANK INTERNATIONAL,               )
                                      )
              Plaintiff,              )
                                      )
       v.                             )          Case No. 07-CV-00974-RMC
                                      )
ALICE CORPORATION PTY. LTD.,          )
                                      )
              Defendant.              )
_____  )
                                      )
ALICE CORPORATION PTY. LTD.,          )
                                      )
              Counterclaim-Plaintiff, )
                                      )
       v.                             )
                                      )
CLS BANK INTERNATIONAL,               )
                                      )
              Counterclaim-Defendant, )
                                      )
              and                     )
                                      )
CLS SERVICES LTD.,                    )
                                      )
              Counterclaim-Defendant. )
_____  )

**ALICE CORPORATION PTY. LTD.'S REPLY MEMORANDUM
IN SUPPORT OF ITS RENEWED CROSS-MOTION FOR PARTIAL SUMMARY
<u>JUDGMENT AS TO PATENT-ELIGIBILITY</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 4

I.      THE COMPUTER SYSTEM CLAIMS OF THE '375 PATENT AND '720 PATENT
        ARE PATENT ELIGIBLE. ..................................................................................... 4

        A.      Before and After Bilski, Computer Systems Are Patent-Eligible "Machines." ..... 4

        B.      The Patent Eligibility of Alice's Claims Does Not Depend on Whether They
                Implement an "Underlying" Abstract Method......................................................... 9

II.     THE COMPUTER PROGRAM PRODUCT CLAIMS OF THE '375 PATENT ARE TO
        TANGIBLE PRODUCTS AND THUS PATENT ELIGIBLE. ...................................... 14

III.    THE METHOD CLAIMS OF THE '510 PATENT ARE "TIED TO A PARTICULAR
        MACHINE" AND THUS PATENT-ELIGIBLE. .......................................................... 15

        A.      The "Meaningful Limit" Requirement Is Irrelevant Because Alice Does Not
                Claim a Mathematical Algorithm. ......................................................................... 16

        B.      "Electronically" Is a "Meaningful" Limitation..................................................... 19

        C.      AT&T and Arrhythmia Continue to Demonstrate, Post-Bilski, that Alice's
                Machine Is "Particular" Enough. .......................................................................... 21

IV.     PROPERLY CONSTRUED, THE METHOD CLAIMS OF THE '479 PATENT ARE
        ALSO "TIED TO A PARTICULAR MACHINE" AND PATENT-ELIGIBLE. ............. 22

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aquatex Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374 (Fed. Cir. 2005) ........................23, 24

*Arrhythmia Research Tech., Inc. v. Corazonix Corp.*, 958 F.2d 1053 (Fed. Cir. 1992)............7, 21

*\*AT&T Corp. v. Excel Commc'ns, Inc.*, 172 F.3d 1352 (Fed. Cir. 1999) ................................7, 21

*\*Bilski v. Kappos*, 130 S. Ct. 3218 (2010)........................................................................... passim

*Burr v. Duryee*, 68 U.S. 531 (1864)................................................................................................12

*Cybersource Corp. v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068 (N.D. Cal. 2009) ................13

*\*Diamond v. Diehr*, 450 U.S. 175 (1981)........................................................................... passim

*Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127 (1948) ...............................................11

*Gottschalk v. Benson*, 409 U.S. 63 (1972)................................................................11, 16, 17, 18

*In re Abele*, 684 F.2d 902 (C.C.P.A. 1982) ....................................................................................6

*In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994) (en banc) ......................................................7, 15, 18

*In re Beauregard*, 53 F.3d 1583 (Fed. Cir. 1995) .......................................................................14

*\*In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) (en banc)....................................................... passim

*In re Comiskey*, 499 F.3d 1365 (Fed. Cir. 2007), *vacated*, 2009 U.S. App. LEXIS 400
  (Fed. Cir. Jan. 13, 2009) (order) (en banc) .............................................................................7

*\*In re Comiskey*, 554 F.3d 967 (Fed. Cir. 2009) ....................................................................6, 7, 21

*In re Ferguson*, 558 F.3d 1359 (Fed. Cir. 2009)..........................................................................8

*In re Grams*, 888 F.2d 835 (Fed. Cir. 1989) ................................................................................6

*In re Lowry*, 32 F.3d 1579 (Fed. Cir. 1994)................................................................................14

*In re Meyer*, 688 F.2d 789 (C.C.P.A. 1982) ................................................................................6

*In re Nuijten*, 500 F.3d 1346 (Fed. Cir. 2007) ............................................................................9

*In re Schrader*, 22 F.3d 290 (Fed. Cir. 1994) .............................................................................6

*\*In re Iwahashi*, 888 F.2d 1370 (Fed. Cir. 1989) .......................................................................13

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) .....................................................22

*Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473 (Fed. Cir. 1998) ..............................22

*Nystrom v. Trex Co.*, 424 F.3d 1136 (Fed. Cir. 2005) ......................................................23, 24, 25

*Parker v. Flook*, 437 U.S. 584 (1978).................................................................................. passim

*Preminger v. Sec'y of Veterans Affairs*, 517 F.3d 1299 (Fed. Cir. 2008).......................................7

*SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319 (Fed. Cir. 2010)....................................19

*\*State Street Bank & Trust Co. v. Signature Fin. Group, Inc.*, 149 F.3d 1368 (Fed. Cir. 1998) ...................................................................................................................................4, 13

*\*In re Warmerdam*, 33 F.3d 1354 (Fed. Cir. 1994) ......................................................................13

## FEDERAL STATUTES

*35 U.S.C. § 101 ............................................................................................................ passim

35 U.S.C. § 102 ....................................................................................................................2

35 U.S.C. § 103 .................................................................................................................2, 7

35 U.S.C. § 271(a) ..............................................................................................................11

## OTHER AUTHORITIES

*Interim Examination Instructions for Evaluating Subject Matter Eligibility Under 35 U.S.C. § 101* (Aug. 24, 2009) (Ex. 4) ........................................................................ passim

*Interim Guidance for Determining Subject Matter Eligibility for Process Claims in View of Bilski v. Kappos,* 75 Fed. Reg. 43,922 (July 27, 2010) (Ex. 5) ................................... passim

*Interim Examination Instructions for Evaluating Subject Matter Eligibility Under 35 U.S.C. § 101*, U.S. Patent and Trademark Office (Aug. 2009) (Ex. 8) .......................... passim

## <u>INTRODUCTION</u>

Not one of Alice's claims is directed to an unpatentable abstract idea.  Alice's computer system and product claims are patent eligible "machines" or "manufactures," and properly construed, its method claims are patent eligible "processes" "tied to a particular machine."

CLS asks this Court to become the first court ***ever*** to hold that a claim to a computer system is invalid under 35 U.S.C. § 101 on the grounds that the claimed computer is not a "particular machine" but is instead nothing more than an abstract idea.  CLS's argument rests on the premise that *Bilski v. Kappos* erased decades of precedent, including cases holding that computer systems programmed to perform certain tasks are patent-eligible "machines"—*i.e.*, that, as a threshold matter, they are the type of invention that can be patented (whether or not, in a particular case, they are novel and non-obvious enough to merit a patent).

Put simply, *Bilski* does nothing to undermine the validity of Alice's computer system claims.  Far from "wishing away" *Bilski*, as CLS alleges, Alice has consistently applied *Bilski* to answer the question that *Bilski* sets out to resolve—how to determine when a claim to a "process" is patent-eligible.  *Bilski* simply does not address the patent eligibility of "machines" at all, much less call into question the many decisions upholding the patent eligibility of computer systems.  Perhaps the clearest rejection of CLS's position comes from the PTO, which has published "examination guidelines" explaining that business method claims performed with the use of computer systems remain patent-eligible after *Bilski*.  Consistent with its guidelines, the PTO continues to issue patents on computers and storage media programmed to implement business methods, as well as patents on business methods performed using computer systems.

The computer system claims of the '375 patent and '720 patent, therefore, do not present a close case.  As CLS admits, these patents claim patent-eligible "machines"—one of the four

enumerated categories of patent-eligible inventions in 35 U.S.C. § 101.  Accordingly, they are

patent-eligible unless CLS can demonstrate that the claims fall within one of the three exceptions

that the Supreme Court has recognized: "laws of nature, physical phenomena, and abstract

ideas."  CLS asserts that Alice's computer system claims cover nothing more than an abstract

idea.  Of course, CLS cannot and does not allege that a computer is itself an abstract idea.  It is a

tangible device.  Alice's computer systems have multiple tangible components such as a "data

processing system," a "computer," and a "data storage unit."

     Instead, CLS's argument is that Alice has merely "redrafted" a claim to an unpatentable

abstract method into a claim to a computer system configured to implement that method.  Thus,

CLS alleges, the resulting computer systems are ineligible for patent protection even though they

are concrete and tangible machines.  But CLS is mistaken that there is no difference in patent

eligibility between a claim to an abstract idea, on the one hand, and a claim to a computer that is

programmed to practically implement the idea, on the other.  Even if CLS were correct in

characterizing the "underlying" business method that Alice's computer systems are programmed

to perform as abstractions—which in fact they are not—that does not turn the computers

themselves into abstractions.

     Without any programming whatsoever, a computer is patent-eligible under § 101.

Decades ago the computer was patented.  Today, the computer *per se*, without any improved

hardware or particular software programming, is not a new and non-obvious invention under 35

U.S.C. §§ 102 and 103, but it is still eligible subject matter.  Here, Alice's computer system

claims "as a whole" are drawn to novel and non-obvious improvements over prior computers—

to special purpose computers programmed to carry out a particular business method in a certain

way.  The fact that Alice's programming implements a business method does not make its claims

to computer systems any less patent-eligible.  Moreover, contrary to CLS's arguments, Alice's

system claims do not cover every practical use of any abstract idea—they cover a particular

configuration of software and hardware that implements the idea in a specified way.

Alice's "computer program product" claims—claims 39–41 of the '375 patent—are

similarly patent-eligible because they, too, are tangible real-world products.  The patent makes

clear that the "computer readable storage medium" is a tangible disk, tape, drive, or other

memory device which is a structural limitation of the claim.  A computer program product like a

disk is a tangible embodiment that is not abstract.  It qualifies as a "manufacture" under Federal

Circuit case law and the PTO examination guidelines, which provide a claim indistinguishable

from Alice's as the textbook example of a "computer program product" claim that is patent-

eligible.  Ex. 8 at 10.

The method claims of the '510 and '479 patents are also patent-eligible.  CLS concedes,

for purposes of this motion, that the use of the term "electronically" in the '510 patent requires

the use of a computer, which therefore satisfies the "machine" prong of the *Bilski* test.  CLS

Repl. at 15 n.9.  Claims 33 and 34 of the '479 patent are amenable to summary judgment in

Alice's favor because the "shadow . . . record" and "transaction" required by these claims can

only be implemented electronically.  In other words, properly interpreted, these terms mandate

use of a programmed computer and data storage unit, tying the methods to a particular machine.[1]

CLS does not seriously engage the claim construction issues on which its arguments

about Alice's method claims depend.  Rather, its arguments revolve around two other themes:

first, that *Bilski* overruled decades of precedent from the Federal Circuit and the PTO holding

---

[1] To avoid a *Markman* hearing, CLS told the Court it would assume claim construction positions
favorable to Alice.  Ex. 6, 8/6/10 Status Conference Tr. 12:22–25.

such methods patent-eligible (*Bilski* did no such thing); and second, that after *Bilski*, all claims involving such methods must be "meaningfully limited" to remain patent-eligible and Alice's claims are not.  But the "meaningful limit" doctrine only applies if a party's claim is to what the courts have termed a "fundamental principle," such as a mathematical formula.  In that narrow circumstance, courts examine whether use of a machine imposes a "meaningful limit" on the claim to determine if the claim satisfies § 101.  Alice does not claim a mathematical formula like the *Benson* and *Flook* cases cited by CLS, but instead a business method.  Therefore, the question of whether Alice's method claims are "meaningfully limited" is irrelevant.  Moreover, even to the extent that the "meaningful limit" doctrine is relevant to the implementation of a business method, the use of a computer in Alice's method claims—which require all the claimed steps to be performed electronically—constitutes a "meaningful limit" because it does not "preempt" every practical use of any abstract business method.

For these reasons, Alice is entitled to summary judgment that all of its asserted patent claims are drawn to eligible subject matter under 35 U.S.C. § 101.

## ARGUMENT

### I. THE COMPUTER SYSTEM CLAIMS OF THE '375 PATENT AND '720 PATENT ARE PATENT ELIGIBLE.

#### A. Before and After *Bilski*, Computer Systems Are Patent-Eligible "Machines."

CLS does not and cannot seriously dispute that prior to *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) (en banc) ("*Bilski I*"), computer systems were patent-eligible subject matter, including computer systems that are configured to perform the steps of a business method (as in both this case and *State Street Bank & Trust Co. v. Signature Fin. Group, Inc.*, 149 F.3d 1368 (Fed. Cir. 1998)).  Rather, CLS argues that the precedents that have upheld computer system claims indistinguishable from Alice's depended on two tests that are no longer good law: whether the

claimed machine "produces a useful, concrete, and tangible result," and the so-called "*Freeman-Walter*" test (which depended on whether (1) a claim was to an algorithm, and (2) whether that algorithm was applied to physical objects or process steps). CLS Repl. at 2, 32-33. CLS further argues that because these tests were rejected, the Federal Circuit's pre-*Bilski* decisions no longer support Alice's contention that its computer systems are patent-eligible "machines." Thus, CLS accuses Alice of "wishing away *Bilski*." *Id.* at 2. CLS's argument has three fatal flaws.

**First**, **Alice does not rely on the "useful, concrete, and tangible result" or Freeman-Walter tests**. Alice cites those tests nowhere. The idea that Alice relies on approaches to a § 101 analysis that, after *Bilski*, "should no longer be relied on," 545 F.3d at 959 n.17 & 960 n.19, is a straw man. Nothing in either *Bilski I* or the Supreme Court's *Bilski* decision undermines the *holding* of the Federal Circuit's earlier cases that the computer systems at issue in those cases are patent-eligible. In *State Street*'s case, the computer systems were indistinguishable from Alice's claimed systems. *See* Alice Mem. at 17–18.

**Second**, **the Federal Circuit in Bilski was careful to harmonize the "machine or transformation test" with existing precedent, and the Supreme Court did not narrow the scope of what is patent-eligible**. CLS describes every relevant pre-*Bilski I* case as "abrogated" and rejects all references to "pre-*Bilski* law." *E.g.*, CLS Repl. at 32–34. But both the Federal Circuit and the Supreme Court emphasized that *Bilski* was about what constitutes a patent-eligible "process." *Bilski v. Kappos*, 130 S. Ct. 3218, 3227 (2010) ("*Bilski II*"); *Bilski I*, 545 F.3d at 954. There is simply no indication in either *Bilski* opinion that any prior precedent regarding the patent-eligibility of a machine would have come out differently if decided today.

Far from discarding pre-*Bilski* law, the Federal Circuit in *Bilski I* described its pre-*Bilski* precedents as containing "a wealth of detailed guidance and helpful examples on how to

determine the patent-eligibility of process claims." *Bilski I*, 545 F.3d at 958. *Bilski I* reaffirmed and reanalyzed these precedents under the test it held to be "definitive." *See id.* at 954. In each instance, the Federal Circuit explained why claims that were formerly patent-eligible remained so, and claims that were ineligible remained ineligible. *See, e.g., id.* at 962–63 (citing, explaining under the "machine-or-transformation" test, and reaffirming *In re Abele*, 684 F.2d 902 (C.C.P.A. 1982); *In re Meyer*, 688 F.2d 789 (C.C.P.A. 1982); *In re Grams*, 888 F.2d 835 (Fed. Cir. 1989); and *In re Schrader*, 22 F.3d 290 (Fed. Cir. 1994)).

Absolutely nothing in the Supreme Court's opinion in *Bilski II* suggests that the Federal Circuit's decision in *Bilski I* was too broad or that any patent claims that were patent-eligible following *Bilski I* should now be considered ineligible subject matter. To the contrary, the Supreme Court **expanded** the category of "processes" that could be patent-eligible beyond those that meet the "machine or transformation" test, but did not disagree with the Federal Circuit's harmonization with the holdings of prior cases. *Bilski II*, 130 S.Ct. at 3227. In other words, the Court loosened the standard for patent eligibility of processes beyond that set by the Federal Circuit in *Bilski I*. Thus, if the Federal Circuit did not overrule the holdings of its prior precedents like *State Street*, the Supreme Court certainly did not. And with respect to *State Street* in particular, Justice Stevens, writing for four Justices, harmonized the holding of *State Street*, explaining that "*State Street* dealt with whether a piece of software could be patented and addressed only claims directed at machines, not processes." *Id.* at 3248 n.40.

**Third, CLS's argument is inconsistent with the Federal Circuit's own post-Bilski cases.** In *In re Comiskey*, 554 F.3d 967 (Fed. Cir. 2009) ("*Comiskey II*"), the Federal Circuit reinstated, with only minor revisions, a pre-*Bilski I* panel opinion after the *en banc* court sent the case back to the panel for reconsideration after *Bilski I*. *See In re Comiskey*, 499 F.3d 1365 (Fed. Cir.

2007) ("*Comiskey I*"), *vacated*, 2009 U.S. App. LEXIS 400 (Fed. Cir. Jan. 13, 2009) (order) (en banc). *Comiskey II*, in language unchanged from *Comiskey I*, favorably cited many of the cases that Alice relies upon and that CLS dismisses as "abrogated" and "pre-*Bilski*," including *State Street*, *AT&T Corp. v. Excel Commc'ns, Inc.*, 172 F.3d 1352 (Fed. Cir. 1999), *In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994) (en banc), and *Arrhythmia Research Tech., Inc. v. Corazonix Corp.*, 958 F.2d 1053 (Fed. Cir. 1992). *See Comiskey II*, 554 F.3d at 978-79 & n.14; *Comiskey I*, 499 F.3d at 1376-77 & n.14.

CLS argues that the portions of *Comiskey II*—the opinion issued after *Bilski I*—that were not "revised by the court in light of *Bilski* when it issued its second opinion" somehow represent "pre-Bilski law" and should be ignored. CLS Repl. at 26, 34. But this argument lacks merit. *Comiskey II*—as a whole, not just its revised portions—was entered as a post-*Bilski* opinion of the court. It is therefore binding circuit precedent, regardless of what portions were revisions and what portions were reinstatements of a prior vacated opinion. *See Preminger v. Sec'y of Veterans Affairs*, 517 F.3d 1299, 1309 (Fed. Cir. 2008). Moreover, contrary to CLS's arguments, *Comiskey II*'s few revisions to *Comiskey I* provide no reason to believe that anything in *Comiskey I* has been abrogated or can be ignored.[2]

*Ferguson* also supports Alice's position. In *In re Ferguson*, 558 F.3d 1359 (Fed. Cir. 2009)—like *Comiskey II*, a binding, post-*Bilski I* panel opinion—the Federal Circuit considered

---

[2] The primary change between *Comiskey I* and *Comiskey II* was the deletion of the former's holding that certain claims were obvious under 35 U.S.C. § 103. *Comiskey II*, 554 F.3d at 971 n.3. Because the appellant was entitled to a remand (so he could amend certain other claims) anyway and the PTO had never considered the question of the claims' eligibility under § 101, the court remanded Comiskey's "system" claims—which, though styled as "systems," did not clearly require the use of a computer—for consideration under § 101 in the first instance. *Id.* at 981. Nothing in this history or in *Comiskey II* indicates that Comiskey's system claims were not patent-eligible or that *Bilski I* changed the § 101 standards. And indeed, the PTO is still issuing computer system claims.

and rejected claims to an abstract method (which failed the "machine-or-transformation" test) as well as to a "paradigm."  Consistently with *Bilski I*, the *Ferguson* court recognized that *State Street*'s "useful, concrete and tangible result" test for patent-eligibility is "inadequate."  *In re Ferguson*, 558 F.3d at 1364 & n.3.  *Ferguson*'s method claims, like those in *Comiskey* and *Bilski* (but unlike Alice's) were directed ***only*** to "organizing business or legal relationships" without the aid of any computer technology, and clearly failed the "machine-or-transformation" test.  *Id.* In reaching its conclusion that Ferguson's claims were ineligible, the court emphasized that *State Street*, unlike *Comiskey*, *Bilski*, or *Ferguson*, but ***like*** the '375 and '720 patents, involved a "***machine***."  *Id.* at 1365.  And *State Street*'s machine, according to the *Ferguson* court, was and is "patent-eligible."  *Id.*  This is the state of the law governing machine claims after *Bilski*.

The PTO thus continues to issue patents with claims to computer systems programmed to implement business methods post-*Bilski*—indeed, ***Alice's '375 patent was issued on May 25, 2010, eighteen months after the Federal Circuit's decision in Bilski I***.  As discussed above, nothing in *Bilski II* suggests that these or any other claims that were patent-eligible under *Bilski I* ceased to be so under *Bilski II*.  And the PTO examination instructions recognize that claims which require computing components programmed to perform functions remain patent-eligible after *Bilski I*.  Ex. 8 at 9 (illustration that a "microprocessor" "programmed to evaluate search results" using a "mathematical formula" is patent "eligible").  And after *Bilski II*, the PTO left entirely unchanged its guidance regarding "machine" claims, so the post-*Bilski I* guidelines continue to reflect the PTO's approach after *Bilski II*.  Ex. 5 at 43,924.  Recognizing that the PTO's actions in issuing new patents on computer systems dooms its argument here, CLS asserts that "[i]t is this Court, not the PTO, that must determine the meaning of § 101 in light of *Bilski*."

CLS Repl. at 38 n.19.  Alice agrees with that statement; however, CLS has not given the Court any valid reason to depart from the PTO's informed views.

      **B.**     **The Patent Eligibility of Alice's Claims Does Not Depend on Whether They Implement an "Underlying" Abstract Method.**

Alice has argued above and in its opening brief that the fact that Alice claims a "computer" and "data storage unit"—concrete "machine" components programmed to perform particular business methods—is dispositive of patent eligibility in this case because computer systems are not "abstract."  In response, CLS accuses Alice of ignoring the Supreme Court's statements that the "abstract idea" exception to patent eligibility applies to all four categories of statutory subject matter—"machines," "processes," "manufactures," and "compositions of matter."  CLS Repl. at 30.  In other words, whether a claim falls into the "abstract idea" exception to patent eligibility does not depend on the statutory category in which the claim is drafted.  Thus, CLS argues, the fact that computer systems are concrete "machines" does not put them into a "protected category" in which an "abstract idea" analysis is not necessary.  *Id.*  But this is a straw man; Alice argues no such thing.

The reason no court has ever invalidated a claim to a computer system is not that computers or machines are somehow *per se* immune from an analysis of whether they claim an "abstract idea."  The reason is practical rather than legal.  A "process" claim may be drawn to nothing more than an algorithm or similarly abstract principle while still superficially meeting the definition of "process."  Unlike "process" claims, "machine" claims must have some concrete components in order to be machines.  *In re Nuijten*, 500 F.3d 1346, 1355 (Fed. Cir. 2007).  Thus, they seldom have the effect of covering an abstract principle; it is difficult to use clever draftsmanship to disguise a claim to an abstraction as a machine.  The PTO's own example claims are illustrative.  The PTO's sole example of an unpatentable "machine" claim

reads as follows: "What is claimed is a machine that operates in accordance with F=ma."  Ex. 4 at 4.  Such a claim would be a "machine" but would, in effect, cover Newton's Second Law of Motion, a fundamental principle of physics—but it is implausibly broad, and totally devoid of any structural limitations.  A claim to a computer system, in contrast, inherently limits the claim to a specific implementation that uses specified hardware components.  *Id.*; *see Diamond v. Diehr*, 450 U.S. 175, 187-88 (1981) (distinguishing "***application of***" an abstract idea from the abstract idea itself (emphasis added)).

Thus, CLS is simply wrong to assert that Alice "utterly ignores" binding Supreme Court precedent saying that "machines" may be ineligible under § 101.  CLS Repl. at 30.  Alice's position is consistent with all the Supreme Court cases CLS cites—*Benson*, *Flook*, *Diehr*, and *Bilski*.[3]  ***Not one of these cases invalidated or even considered claims to a "machine."***  Indeed, CLS points to no case in which ***any*** "machine," never mind a computer system like Alice's, has ever been invalidated under § 101.

CLS's argument that Alice's claims are really just "redrafted" claims to abstractions overlooks the fact that a claim requiring a computer system is narrower in scope than a claim that covers any use of an abstract method.  Alice's claims are, by their terms, limited to a computer system with multiple structural elements: a "data processing system," a "computer," and a "data storage unit," and even a "communications controller," or input "device."  A machine claim of this nature possessing these structural elements is not itself abstract.

---

[3] The admonition in *Flook* that patent eligibility does not "depend simply on the draftman's art" was not even related to redrafting claims so they fell within a different statutory category—the Supreme Court was rejecting an argument that a bald statement in the claim regarding how an abstract process could be used was sufficient to render the process patent-eligible.  *Parker v. Flook*, 437 U.S. 584, 593 (1978).

As CLS acknowledges, the only way such a claim could, as a matter of law, fail to be patent-eligible is if it "really" claimed an abstract idea—that is, it covered, or "preempted," "all practical uses" of the idea. *Gottschalk v. Benson*, 409 U.S. 63, 71-72 (1972). Alice's claims do not do so. CLS mischaracterizes Alice's invention as an abstract "two-sided escrow" method for "exchanging obligations." But no matter the characterization, Alice does not stop the public from "exchanging obligations" via "two-sided escrow" or otherwise. The public can exchange obligations all it wants, using any sequence of method steps, so long as it does not use the specific programmed computer system that Alice claims. That is, the public cannot make, use, offer to sell, sell, or import a computer that has the specific computing components that Alice claims and is configured to perform all of the steps of the method that Alice claims. *See* 35 U.S.C. § 271(a). This does not "preempt" any method, much less the concept of "two-sided escrow." *See Diehr*, 450 U.S. at 187.

Taken to its logical conclusion, CLS's argument implies that a claim is unpatentable any time it implements an abstract idea such as a business method. But this is incorrect, for two reasons. First, the doctrine that a claim may not "preempt" an abstract idea is concerned with keeping people from obtaining a *de facto* monopoly on fundamental principles of science or mathematics that should be "free to all men and reserved exclusively to none." *Diehr*, 450 U.S. at 185 (quoting *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948)). There is no authority for the proposition that a patent claim cannot "preempt" every use of a business method. *See also infra* Part III.A (discussing the fact that the requirement that a machine impose a "meaningful limit" on a method claim has only ever been applied to mathematical algorithms). Second, even where "fundamental truths" are at stake, a claim "is not unpatentable simply because it contains a law of nature or a mathematical algorithm." *Parker v. Flook*, 437 U.S. 584,

589-90 (1978).  The fact that there may be an abstract idea somewhere in a claim does not matter

to its patentability.  The dispositive question is whether the claim "as a whole" is patenting an

abstract idea.  CLS's focus on the "underlying" business method—rather than on the claim "as a

whole," including all its "computer" limitations—is legally incorrect.

*Diehr* is illustrative.  That case involved a claim to a process for curing rubber that used a

computer and the Arrhenius mathematical equation as one of its steps.  450 U.S. at 178.  In

arguing against the patent eligibility of that claim, the PTO attempted, like CLS here, to dissect

the claim and focus on the one step that contained the mathematical formula, which, when

considered by itself, was unpatentable.  *Id.* at 188.  The Supreme Court rejected that approach,

explaining that "[i]t is inappropriate to dissect the claims."  *Id.*  Likewise, it is inappropriate to

dissect Alice's computer system claims and focus on some "underlying" concept separate and

apart from Alice's claims "as a whole" which are to a patent-eligible "machine."  "A machine is

a ***concrete thing***, consisting of parts, or of certain devices and combination of devices."  *Burr v.*

*Duryee*, 68 U.S. 531, 570 (1863) (emphasis added).  In responding to Alice's counterstatement

of material facts, CLS has conceded that Alice's computer system claims are exactly that—a

machine consisting of parts.  CLS Resp. SMF ¶¶ 5-6.

CLS also faults Alice for failing to apply *Bilski*'s "particular machine" test to machine

claims.  CLS Repl. at 35.  But applying a test created to evaluate "process" claims to a claim that

is ***drawn to a machine*** is an essentially trivial exercise.[4]  Under Federal Circuit precedent, a

computer system programmed to perform functions, like that recited in Alice' claims, is a special

---

[4] Nothing in *Bilski* suggests that the "machine-or-transformation" test can or should be applied to
any of the other three categories of statutory subject matter besides "process[es]."  After *Bilski*, a
coffee mug is still a patent-eligible "manufacture," and aspirin is still a patent-eligible
"composition of matter," even though neither involves a machine or a transformation.

purpose computer which is a "particular machine."  *See* Alice Mem. at 18 (citing, *e.g.*, *Alappat*).

The PTO examination guidelines explain this concept:

> For computer implemented processes, the "machine" is often disclosed as a general purpose computer.  In these cases, the general purpose computer may be sufficiently "particular" when programmed to perform the process steps.  Such programming creates a new machine because a general purpose computer, in effect, becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from program software.

Ex. 4 at 6; *see also* Ex. 8 at 9 (a "microprocessor" "programmed to evaluate search results" using a "mathematical formula" is patent "eligible").  Put simply, claims which recite a computer programmed to carry out a method are sufficiently "tied to a particular machine" to be patent-eligible.  *See* Alice Mem. at 17 (citing, *e.g.*, *State Street*, *Warmerdam*, *Iwahashi*).

For this reason, even if CLS were correct that Alice had "skillfully redraft[ed] its method claims as claims to a machine," CLS Repl. at 35, both the system claims and corresponding method claims would be patent-eligible.  Both types of claims would require the use of the same "particular" computer components, and both claims would be "tied to a particular machine."[5]

Accordingly, the computer system claims of the '375 and '720 patent are patent-eligible and do not present a close case.

---

[5] Conversely, a "process" that fails the "machine-or-transformation" test because it is *not* "tied to a particular machine" would be difficult to rewrite as a "machine" claim without adding claim limitations.  To take but one example, the unpatentable method claim in *Cybersource Corp. v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068, 1070-71 (N.D. Cal. 2009) was drawn to a method of verifying credit card transactions that, the court held, did not have to be carried out by a computer.  Any computer system version of this claim would necessarily recite computing components, and would require that those components be configured to carry out the steps of the method, thus satisfying the requirement to "tie[]" the claims to the newly-claimed "particular machine."  *Cf. id.* at 1076 (method claim at issue "does not recite the use of a processor or computer at all" and "[a] specific machine is n[ot] necessary for the method").

## II. THE COMPUTER PROGRAM PRODUCT CLAIMS OF THE '375 PATENT ARE TO TANGIBLE PRODUCTS AND THUS PATENT ELIGIBLE.

Alice is also entitled to summary judgment on claims 39–41 of the '375 patent, which are claims to "computer program product[s]" comprising a "computer readable storage medium." These claims are limited to tangible, real-world products that qualify as "manufactures" or "machines" under § 101, as explained in Alice's opening brief.  Alice Mem. at 25–28 (citing, *In re Beauregard*, 53 F.3d 1583, 1584 (Fed. Cir. 1995); *In re Lowry*, 32 F.3d 1579, 1583–84 (Fed. Cir. 1994)).  *See* Ex. 4 at 4 (upholding example "claim to a non-transitory, tangible computer readable storage medium").  In its examination instructions, the PTO provides an example of a computer program product claim—which, unlike Alice's claims, expressly recites a "mathematical formula"—that is still patent-eligible:

> Claim 3.   A non-transitory computer-readable storage medium with an executable program stored thereon, wherein the program instructs a microprocessor to perform the following steps:
> - sorting results of a search into groups based on a first characteristic;
> - ranking the results based on a second characteristic using a mathematical formula [f]; and
> - comparing the ranked results to a predetermined list of desired results to evaluate the success of the search.

Ex. 8 at 10.  The PTO's issuance of the computer program product claims 39–41 of Alice's '375 patent eighteen months after *Bilski I* was entirely consistent with this guideline.

CLS argues that Alice's claims "lack[] any structural limitations or any indication that the claim is limited to a tangible medium," which would make Alice's computer product claims unpatentable.  CLS Repl. at 40 n.20.  But CLS entirely ignores the fact that Alice's claims require a "computer program product"—*e.g.*, a disk—that is a tangible embodiment.  The patent makes clear that the "storage medi[um]" on which the software code is saved is a "disk drive, and the like," '375 patent, 8:13–22, which is how Alice's expert interprets the claim terms.  Ex. 1

14

at ¶ 55.  While CLS claims to accept Alice's claim constructions for purposes of this motion, it in fact attempts to construe Alice's claims—without citing any support in the patent—to cover intangible embodiments such as a "signal" or a "carrier wave."  CLS Repl. at 40 n.20.  Because CLS's claim construction arguments are wrong and a claim to a tangible "computer program product" is eligible for patent protection under § 101, Alice is entitled to summary judgment.

## III.   THE METHOD CLAIMS OF THE '510 PATENT ARE "TIED TO A PARTICULAR MACHINE" AND THUS PATENT-ELIGIBLE.

Alice is also entitled to summary judgment on the '510 patent, which requires in every claim that the business method be "electronically" implemented.  CLS concedes that a method performed "electronically" requires the use of a computer.  CLS Repl. at 15 n.9.  But it argues that the "electronically" limitation of the '510 patent does not tie the claims to "a *particular* machine," and that the computer required by Alice's claims does not "*meaningfully limit*" the claim.  But the computer required by Alice's claims has been particularized by the programming necessary to perform the stated method.  *Alappat*, 33 F.3d at 1545; *see also* Ex. 8 at 15 (Examination Instructions) (illustration that "microprocessor" used to implement "method of evaluating search results" "requires a particular programmed microprocessor"); *id.* at 16 ("electronically downloading" "inherently requires a programmed microprocessor" which ties claim to "particular machine").[6]  And there is no freestanding requirement that a limitation be "meaningful" for a claim to be patent-eligible.  Rather, the "meaningful limit" doctrine flows from the prohibition on claiming "fundamental principle[s]" (such as mathematical algorithms) and from the requirement that courts must look to the claim "as a whole" when determining

_____

[6] The examination instructions remain pertinent after *Bilski II*.  *See* Ex. 5, 75 Fed. Reg. at 43,925 (re-adopting analysis supporting examination instructions after *Bilski II*).

whether a claim is to a fundamental principle, *Flook*, 437 U.S. at 594.  Because Alice's claims recite no mathematical formula or other fundamental principle, this doctrine is inapposite.

>   **A.     The "Meaningful Limit" Requirement Is Irrelevant Because Alice Does Not Claim a Mathematical Algorithm.**

It is no accident that CLS argues that Alice's claims "involve a mathematical algorithm." CLS Repl. at 14 n.8.  This is because the requirement that a machine limitation impose a "meaningful limit" on the claim's scope only arises in cases like *Benson*, where the claim, taken as a whole, is directed to a method of calculating something.  *See Bilski I*, 545 F.3d at 961–62 (citing *Benson*, 409 U.S. at 70).  In order to prevail, CLS has to show that ***even though they are implemented using a machine***, Alice's methods claim a fundamental principle.  In other words, CLS must show that despite the undisputed limitations to an electronic machine, the "electronic" limitation is not "meaningful" because Alice's claims ***as a whole*** are directed to a pure mathematical algorithm.  *See Flook*, 437 U.S. at 594.

The unpatentable mathematical algorithm claims to which CLS has analogized Alice's methods, CLS Repl. at 14 n.8, involved steps that were directed ***solely*** to solving a mathematical problem.  For example, in *Benson*, the Court considered a "data processing method for converting binary coded decimal number representations into binary number representations" comprising five purely mathematical steps.  *See Benson*, 409 U.S. at 74 (for example, step 3 stated "if a binary '1' is detected, adding a binary '1' at the $(i + 1)$th and $(i + 3)$th least significant binary digit positions of the next lesser significant decimal digit representation").  Similarly, the claim in *Flook* was to "[a] method for updating the value of at least one alarm limit" by following a series of mathematical steps that calculated the new value.  *Flook*, 437 U.S. at 596–97.  The Supreme Court invalidated the claim because it "simply provide[d] a new and presumably better method for ***calculating*** alarm limit values."  *Id.* at 594–95 (emphasis added).

16

Thus, in both cases the claims themselves were directed **only** to a mathematical algorithm.

Alice's claims, in contrast, as a whole, are directed to a practical computer implementation of a business method, not a mathematical algorithm. They do not disclose, much less are they limited to, a method for performing a calculation. As CLS recognizes, Alice's claims make use of a mathematical algorithm in, at most, one step, which requires "ensuring that said first party and said second party have adequate value in said first account and said third account." '510 patent, claim 68; CLS Repl. at 14 n.8. Alice does not claim any particular algorithm for making this determination; no formula or calculation is recited there. One could conceive of many algorithms that would solve this "ensuring" step, and none of them would be preempted generally by Alice's claims.

Moreover, this one purportedly mathematical step is merely a precondition to performing the step that accomplishes the stated purpose of Alice's method—"electronically adjusting said [accounts] **in order to effect the exchange obligation**." '510 patent, claim 68 (emphasis added). The mathematical step is only one of a number of steps in the method, the rest of which are non-mathematical and accomplish a non-mathematical purpose. In contrast, in both *Benson* and *Flook*, the entire method was a way to solve a mathematical algorithm. The claim therefore amounted to an attempt to patent the algorithm generally. *Flook*, 437 U.S. at 594–95; *Benson*, 409 U.S. at 74.

CLS attempts to inflate the importance of the one purported mathematical step in Alice's claims by categorizing all the other steps of Alice's methods as "gathering data" or "'post-solution' activity" that cannot confer patent-eligibility on the claim as a whole. CLS Repl. at 21–23. But by CLS's logic, **any** method that uses a mathematical algorithm would be unpatentable, because all the steps leading to the performance of the algorithm would constitute "gathering

data" to be used in the algorithm, and any steps affected by the results of the algorithm would be "'post-solution' activity."  Such an analysis flies in the face of clear Supreme Court precedent that "a process is not unpatentable simply because it *contains* a . . . mathematical algorithm," which is the most that could be said about Alice's claims.  *Flook*, 437 U.S. at 590 (emphasis added).  Alice's claims are patent eligible because the claims "as a whole" are directed to a computer implemented business method that achieves a particular purpose, rather than to a mathematical algorithm.  *Diehr*, 450 U.S. at 185–88; *Alappat*, 33 F.3d at 1543 ("It is . . . not necessary to determine whether a claim contains, as merely a part of the whole, any mathematical subject matter which standing alone would not be entitled to patent protection.").

For these reasons, CLS is mistaken when it argues that whether Alice's method claims are patent-eligible depends on "whether 'in practical effect' the claim preempts every 'practical application' of the method."  CLS Repl. at 13.  ***There is no general requirement that a claim cover fewer than all "practical applications" of a method.***  Most commercially-viable patents preempt every practical application of the inventions that they claim.  The prohibition on claims that preempt every practical application of a method, which arises from *Benson*, applies only to claims, like those in *Benson*, that are drawn to ***a fundamental principle***.  The concern, as *Benson* makes clear, is with claims that "[are] so abstract and sweeping as to cover" every practical use, ***for any purpose***, of a mathematical algorithm or law of nature.  *See Benson*, 409 U.S. at 68.  Such claims are essentially drawn to the mathematical algorithm itself.

By contrast, Alice is not claiming every practical use of any algorithm.  Alice claims the particular steps of an electronic method for exchanging obligations in a particular way—a concrete application of computer technology to the solution of a specific business problem.  To the extent Alice's claims make use of any mathematical algorithm to compare account values,

18

that algorithm can be used in myriad other contexts; its use is not limited at all except to Alice's

particular electronic implementation of this business method.

### B.   "Electronically" Is a "Meaningful" Limitation.

As discussed above, the requirement that the use of a machine impose a "meaningful

limit" does not apply to Alice's "electronically" limitation because the claim as a whole is not to

a mathematical algorithm.   Even if the requirement somehow did apply, however, it is

undisputed that Alice's method claims are limited to a particular machine implementation and do

not literally preempt any fundamental principle.   *See* CLS Repl. at 13.   The public remains free

to perform all of Alice's method steps, so long as they do not do so in the particular manner

required by the claims.[7]

---

[7] CLS also argues that Alice fails to meet the definition of "meaningful limit" articulated by *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319 (Fed. Cir. 2010).   CLS Repl. at 16–18. Specifically, CLS asserts that *SiRF* forecloses patent eligibility when a method could in principle be performed without a machine—even if the method as claimed is limited to a machine implementation—and emphasizes that Alice's method "could be performed by humans."   CLS misinterprets *SiRF*, which *upheld* the validity of a process claim.

*SiRF* involved a claim to a mathematical method of calculating the location of a GPS receiver that made no sense without reference to the GPS receiver (as the thing whose location was calculated).   *SiRF* distinguished the method at issue from a hypothetical claim in which the purpose of the machine was simply to speed up a mathematical calculation in one of the process steps, which, without the machine, could theoretically be performed by hand.   *Id.*   The point of this distinction is the same as the "insignificant extra-solution activity" doctrine.   *See supra* Part III.A.   The role of the machine must not merely be an incidental improvement in the efficiency of a single step of an otherwise mathematical claim.   Rather, if the method is mathematical in nature, the claim, as a whole, must be directed to a machine implementation of the algorithm.   In other words, a machine must play a "significant part," not of the "underlying" abstract method, but in "permitting the *claimed* method to be performed."   *SiRF*, 601 F.3d at 1333 (emphasis added).   This has nothing to do with whether any "underlying" method could, in principle, be performed by a human without a machine (and without infringing the claim).

Alice's claims, like those the validity of which was upheld in *SiRF*, require the use of a machine in every step.   The machine itself interacts with the two counterparties to the exchange of obligations.   The method *as claimed* does not merely recite an incidental use of a machine to

Moreover, CLS is simply mistaken that the use of a machine in Alice's methods is "post-solution activity."  CLS Repl. at 20–21.  Because Alice's claim as a whole is not to a mathematical algorithm, but to an electronically implemented business method, the doctrine does not apply—there is no "solution" to a mathematical problem to record.  Furthermore, Alice contends that under a proper claim construction, the entire method must be performed electronically.  *See infra* Part IV.  Thus, even if there were a mathematical algorithm being "solved," the computer is required pre-solution, as part of the solution, and post-solution.  But if CLS were correct that Alice's claims only require one step of the method to be implemented using a computer, the claims would still be patent-eligible.  This is because that one step— "electronically adjusting"—is the step that "effect[s] the exchange obligation," which the preamble makes clear is central to the purpose of the claim.  '510 patent, claim 68; *see supra* Part III.A.  The "electronically adjusting" step therefore cannot be characterized as "post-solution" or otherwise incidental to the claim "as a whole."  *Compare* Ex. 8 at 15 (Claim 5) ("step of comparing is central to the method invented" and is not "insignificant extra-solution activity") *with* Ex. 8 at 16 (Claim 6) ("downloading step is not central to the purpose of the method invented" and is "insignificant extra-solution activity").

CLS's arguments about the supposed unimportance of the "electronically" limitation also misapprehend what it means for a limitation to be "insignificant" rather than "meaningful."  *See id.*  It is true, as CLS observes, that "electronically" was added to the claims during prosecution.  CLS Repl. at 22.  But Alice's method claims have **always** been directed to a computer-based implementation.  *See infra* Part IV (explaining that "shadow . . . record" requires electronic

---

perform a calculation (if there is a calculation in Alice's claim, it is a minor part of the claim).  Rather, the machine plays a "significant part" in implementing the claimed business method.  *Id.*

implementation).  Alice merely added "electronically" to make this explicit.  *See* CLS Ex. 6, Amend. and Reply Under 37 C.F.R. § 1.111, at 22 (Oct. 31, 2003).  Moreover, whether a limitation was originally in the claim or is important to the patentee has no relevance to whether it is "insignificant."  Rather, the inquiry is about what the claim as a whole, including the limitation, covers—whether the step or steps that are implemented by machine are "central to the method."  Ex. 8 at 16.  CLS concedes that "electronically adjusting"—the "central" step of Alice's method—requires a machine.  Thus, even if CLS were correct that only that one step must be performed electronically, the method as a whole would be "tied to a particular machine" and thus patent eligible.

CLS also argues that steps of the methods in *Bilski* and *Comiskey*, which were held unpatentable, are akin to the "electronically adjusting" step that Alice points to.  CLS Repl. at 23. But the method steps that CLS cites from these cases are irrelevant because, unlike the steps of Alice's method, there was no argument in either of these cases that any step was performed electronically or using a machine.  *Bilski II*, 130 S. Ct. at 3229–30; *Bilski I*, 545 F.3d at 962; *Comiskey II*, 554 F.3d at 981.  That—not the fact that the cited steps were "post-solution"—is why they did not confer patent-eligibility on the claims.  Here, the entirety of Alice's business methods are implemented electronically, with the use of a computer and data storage unit, which makes this entire "post-solution activity" discussion irrelevant.

## C.   *AT&T* and *Arrhythmia* Continue to Demonstrate, Post-*Bilski*, that Alice's Machine Is "Particular" Enough.

The conclusion that a method is patent-eligible when it is implemented electronically is not a new one.  *See AT&T Corp.*, 172 F.3d at 1361.  As it does with Alice's system claims, however, CLS attempts to dismiss all pre-*Bilski* precedents as having been "abrogated" by *Bilski.* CLS Repl. at 23–28; *see supra* Part I.A.  In particular, CLS dismisses *AT&T* and *Arrhythmia*,

958 F.2d at 1053, as having relied on § 101 analyses that *Bilski* overruled.  But, again, Alice does

not rely on § 101 tests that "should no longer be relied on."  *See Bilski I*, 545 F.3d at 959–60 &

nn.17, 19.  Rather, Alice cites *AT&T* and *Arrhythmia* because the methods they discussed were,

and are still, patent-eligible.  Alice Mem. at 42–44; *see Comiskey II*, 554 F.3d at 979 n.14

(reaffirming *AT&T* and *Arrhythmia*).  CLS has not explained, and cannot explain, how the

methods of *AT&T* and *Arrhythmia* are tied to "particular" enough machines to survive *Bilski*,

while Alice's methods somehow fail.

Moreover, CLS's argument that *AT&T* and *Arrhythmia* have not been reaffirmed post-

*Bilski* is erroneous.  As discussed above, *see supra* Part I.A, CLS relies on the unprecedented

theory that because the relevant portions of *Comiskey II* were not revised when the decision was

re-entered after *Bilski*, they represent only "pre-*Bilski* law."  CLS Repl. at 24.  But, of course,

this is wrong—if anything, the fact that the decision was re-entered after *Bilski I* with only minor

revisions only shows that the "pre-*Bilski*" law applied by *Comiskey I* did not differ markedly

from the "post-*Bilski*" law of *Comiskey II.*

## IV.   PROPERLY CONSTRUED, THE METHOD CLAIMS OF THE '479 PATENT ARE ALSO "TIED TO A PARTICULAR MACHINE" AND PATENT-ELIGIBLE.

Claims 33 and 34 of the '479 patent do not recite the term "electronically," but are

nonetheless amenable to summary judgment in Alice's favor.  The patent expressly relates to the

technical field of "electrical computers and data processing systems," '479 patent, 1:7, and "[i]t

is the person of ordinary skill in the field of the invention through whose eyes the claims are

construed."  *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998).[8]

---

[8] For this reason, CLS's attack on Alice's reliance on uncontested expert testimony regarding
how one of ordinary skill in the art would interpret claims 33 and 34 of the '479 patent, CLS
Repl. at 8, is entirely misplaced.  Expert testimony is properly considered in claim construction
matters.  *See, e.g.*, *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996).  In any

A person of ordinary skill in the relevant art "would unquestionably understand the terms 'shadow credit record' and 'shadow debit record'" in claims 33 and 34 "to require the electronic storage of data files in a data storage unit," as Alice's expert Paul Ginsberg has opined.  Ex. 1 at ¶ 32.  Similarly, the term "transaction" relates to and would be understood to require the use of electronic data processing systems.  *Id.*  In other words, these terms, properly construed, tie the methods recited in claims 33 and 34 to a particular machine just as the term "electronically" does in the '510 patent.  Alice Mem. at 32 n.15; *see also* Ex. 1 at ¶¶ 28–32.

CLS contends that "Alice improperly relies on the specification . . . to wrongly *import [electronic] characteristics of the described preferred embodiment as a limitation on the claims*."  CLS Repl. at 8.  But even if one ignores the plain meaning of "record" and "transaction" in the relevant art to imply electronic records in a data processing system, Alice's interpretation of the claims in light of the specification is correct under Federal Circuit law. Where, as here, the specification and prosecution history of a patent consistently reference a claim term and the context shows that the definition of the term is limited, it is improper to construe that claim term more broadly.  *Nystrom v. Trex Co.*, 424 F.3d 1136, 1142-45 (Fed. Cir. 2005); *Aquatex Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1380-81 (Fed. Cir. 2005).

For example, *Nystrom* concerned a patent on materials for building exterior floors, such as decks, and a dispositive issue in the case involved whether the term "board" was limited to wooden boards, or could also include plastic ones.  424 F.3d at 1143.  "The claims at issue d[id] not include any language describing the [term] 'board' as cut from a log or necessarily being made from wood."  *Id.*  However, "[a]n examination of the term 'board' in the context of the

---

event, whether conveyed through the testimony of an expert or not, the specification and prosecution history of the '479 patent support Alice's interpretation of these claims.

written description and prosecution history of the [patent] leads to the conclusion that the term 'board' must be limited to wood cut from a log." *Id.* "The written description and prosecution history consistently use the term 'board' to refer to wood decking materials cut from a log." *Id.* at 1145; *see also Aquatex*, 419 F.3d at 1380-82 (while "limitations from the specification must not be imported into the claims, based upon the teachings of the specification, one of ordinary skill in the [art] would understand that [the claimed] 'fiberfill batting material' is made of synthetic or polyester fibers.").

Here, similarly, the '479 patent consistently uses the term "shadow . . . records" to refer to **electronic** records maintained in a data storage unit by a computer programmed with application ("APP") software to execute a "transaction." *E.g.*, '479 patent, 24:65–25:2 ("debiting/crediting, on a real-time basis, the relevant **shadow records** (in the **data file** PAYACC SHADOW)" (emphasis added)).[9] Furthermore, the prosecution history consistently uses the term "shadow . . . records" to refer to records maintained electronically by a computer system. *See* Ex. 9 at 14 (distinguishing prior art as failing to disclose "a system using such records" and discussing "loading" the records, a concept that makes no sense unless the "records" are electronic data). Such discussions illustrate that "shadow" records are electronic records. *See Nystrom*, 424 F.3d at 1142–45; *Aquatex Indus.*, 419 F.3d at 1380–82.

---

[9] *See also* '479 patent, 21:7-8 ("creating *transactions* in the payment *shadow file* (PAYACC SHADOW)"); 25:15-17 ("balance of each PAYACC *SHADOW file* account record should be equivalent to the true, but usually unknown, time-of-day balance of the actual account"); 25:67–26:1 ("applicable CONTRACT APP updates/confirms its stakeholder shadow balances"); 26: 9-12 ("debits and credits to INVENTCO stakeholder shadow accounts are effected on a real-time basis [by] the CONTRACT APP"); 51:21-23 ("primary data-files, PAYACC SHADOW and PAYACC FINAL are updated with this information"); 60:26-28 ("PAYACC Payment accounts for all registered stakeholders (inc. balances and previous *SHADOW transactions*), are stored in this master file"); 53:41-44 (process concludes with "the transfer of the final contents of the PAYACC *SHADOW data-file* to the data-file, PAYACC FINAL" and "the electronic transmission of the contents of PAYACC FINAL").

CLS asserts "the existence of specific computer-related language in unasserted claims of the '479 patent [like claim 12] . . . only confirms that claims 33 and 34 do *not* require electronic implementation or a computer."  CLS Repl. at 9.  But the presence of computer-related language in other claims—particularly where that language is not the only difference between those claims and claims 33 and 34—does not mean that the term "shadow . . . record" in claims 33 and 34 does not require a computer.  *See, e.g.*, *Nystrom*, 424 F.3d at 1143 ("Different terms or phrases in separate claims may be construed to cover the same subject matter where the written description and prosecution history indicate that such a reading of the terms or phrases is proper.").  Indeed, claim 12's reference to "the data storage means of the data processing apparatus being configured to include a shadow credit record and a shadow debit record for each stakeholder" is further evidence that "shadow . . . record," as used consistently in the '479 patent, refers to electronic records in a computer system.

Because Alice's construction is correct as a matter of law, Alice is entitled to summary judgment.  These claims are patent-eligible under § 101 for the same reasons as the method claims of the '510 patent explained *supra* Part III.

## <u>CONCLUSION</u>

For the foregoing reasons, Alice's Cross-Motion for Partial Summary Judgment that all claims of the '375, '720 and '510 patents and claims 33 and 34 of the '479 patent are directed to patent-eligible subject matter should be granted.

Dated:  October 22, 2010          Respectfully submitted,

                                  WILLIAMS & CONNOLLY LLP


                                  _____/s/ Stanley E. Fisher_____
                                  Paul Martin Wolff (D.C. Bar No. 90217)
                                  Bruce R. Genderson (D.C. Bar No. 961367)
                                  Ryan T. Scarborough (D.C. Bar No. 466956)
                                  Stanley E. Fisher (D.C. Bar No. 498540)
                                  David M. Krinsky (D.C. Bar No. 978190)

                                  725 Twelfth Street, N.W.
                                  Washington, DC  20005
                                  Telephone: (202) 434-5000
                                  Facsimile: (202) 434-5029

                                  *Counsel for Defendant / Counterclaim-Plaintiff
                                  Alice Corporation Pty. Ltd.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 22th day of October, 2010, a copy of DEFENDANT ALICE

CORPORATION PTY. LTD.'S REPLY MEMORANDUM IN SUPPORT OF ITS RENEWED

CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PATENT-ELIGIBILITY,

was served upon the following by electronic means through ECF:


Steven J. Glassman
Stephen J. Elliott
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022


                              /s/ Stanley E. Fisher
                              Stanley E. Fisher